P27WaleC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4           v.                          24 Cr. 676 (VEC)

5  ALON ALEXANDER,
   OREN ALEXANDER and
6  TAL ALEXANDER,

7           Defendants.
                                        Conference
8  ------------------------------x

9                                       New York, N.Y.
                                        February 7, 2025
10                                      10:45 a.m.

11 Before:

12
                   HON. VALERIE E. CAPRONI ,
13
                                        District Judge
14
                          APPEARANCES
15
   DANIELLE R. SASSOON
16      United States Attorney for the
        Southern District of New York
17 BY:  ELIZABETH A. ESPINOSA
        KAIYA M.A. ARROYO
18      ANDREW W. JONES
        Assistant United States Attorneys
19
   BLACK SREBNICK, P.A.
20      Attorney for Defendant A. Alexander
   BY:  HOWARD M. SREBNICK
21
   RICHARD KLUGH
22 JENNIFER WILSON
        Attorneys for Defendant O. Alexander
23
   WALDEN MACHT HARAN & WILLIAMS, LLP
24      Attorneys for Defendant T. Alexander
   BY:  MILTON L. WILLIAMS
25      ALEXANDER V. KAHN
        DEANNA PAUL

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

P27WaleC

```
 1                  (Case called; appearances noted)
 2                  THE COURT:  Good morning.
 3                  Everybody other than the lawyers sit down.
 4                  OK.  This is addressed to the Alexander gentlemen.
 5                  Messrs. Alexander, Congress, in its infinite wisdom,
 6     has said that the first time I see criminal defendants I need
 7     to remind the government of its obligation under the
 8     Constitution.  So let me take care of that, and then we'll turn
 9     to your arraignment and other business of the day.
10                  I direct the prosecution to comply with its
11     obligation, under Brady v. Maryland and its progeny, to
12     disclose to the defendants all information, whether admissible
13     or not, that is favorable to the defendant, material either to
14     guilt or to punishment and known to the prosecution.
15                  Possible consequences for noncompliance may include
16     dismissal of individual charges or the entire case, exclusion
17     of evidence and professional discipline or court sanctions on
18     the attorneys responsible.
19                  I will be entering a written order more fully
20     describing this obligation and the possible consequences of
21     failing to meet it, and I direct the prosecution to review and
22     to comply with that order.
23                  Ms. Espinosa, do you confirm that you understand your
24     obligations and have and will fulfill them?
25                  MS. ESPINOSA:  Yes, your Honor.
```

P27WaleC

1          THE COURT:  OK.  Next step is the arraignment.

2          To the defense attorneys, have your clients all seen

3    and read the indictment?

4          MR. SREBNICK:  Yes, your Honor.

5          MR. KLUGH:  Yes, your Honor.

6          MR. WILLIAMS:  Yes, your Honor.

7          THE COURT:  Have you discussed the indictment with

8    them?

9          MR. SREBNICK:  I have, your Honor.

10          MR. KLUGH:  Yes, your Honor.

11          MR. WILLIAMS:  Yes, your Honor.

12          THE COURT:  All right.

13          Mr. Alexander, have you read the indictment?

14          DEFENDANT A. ALEXANDER:  Yes, your Honor.

15          THE COURT:  Have you read the indictment?

16          DEFENDANT O. ALEXANDER:  Yes.

17          THE COURT:  Have you read the indictment?

18          DEFENDANT T. ALEXANDER:  Yes, your Honor.

19          THE COURT:  Have you discussed it with your attorney?

20          DEFENDANT A. ALEXANDER:  Yes, your Honor.

21          THE COURT:  Have you discussed it with your attorney?

22          DEFENDANT O. ALEXANDER:  Yes.

23          THE COURT:  Have you discussed it with your attorney?

24          DEFENDANT T. ALEXANDER:  Yes.

25          THE COURT:  All right.

P27WaleC

1          All of you are charged with conspiracy to engage in

2     sex trafficking.  You're also all charged with sex trafficking

3     by force, fraud or coercion.

4          Tal Alexander -- that's you -- you're also charged in

5     a single count by yourself of sex trafficking by force, fraud

6     or coercion.

7          Do you all understand what you're being charged with?

8          DEFENDANT A. ALEXANDER:  Yes, your Honor.

9          DEFENDANT O. ALEXANDER:  Yes.

10         DEFENDANT T. ALEXANDER:  Yes, your Honor.

11         THE COURT:  OK.

12         Do you waive a public reading of the indictment?

13         DEFENDANT A. ALEXANDER:  Yes, your Honor.

14         DEFENDANT O. ALEXANDER:  Yes.

15         DEFENDANT T. ALEXANDER:  Yes, your Honor.

16         THE COURT:  All right.

17         How does your client plead; guilty or not guilty?

18         MR. SREBNICK:  Not guilty, your Honor.

19         MR. KLUGH:  Not guilty, your Honor.

20         MR. WILLIAMS:  Not guilty, your Honor.

21         THE COURT:  OK.

22         I received a letter from the government, dated January

23    24, 2025, asking me to enter a protective order.  I got a

24    defense response shortly before I came to court this morning

25    from Oren and Alon Alexander opposing it.

P27WaleC

```
 1              Before I deal with this at all, have the government
 2      and the defense attorneys sat down and had a meeting about the
 3      protective order?
 4              Ms. Espinosa.
 5              MS. ESPINOSA:  Yes, your Honor.
 6              We had a telephone call about the protective order on
 7      Wednesday, in which we discussed a number of issues.  We were
 8      unable to come to an agreement on a particular issue that we
 9      discussed at that call, and then, of course, the opposition was
10      filed this morning.
11              THE COURT:  Was that call with all three defense
12      attorneys?
13              MS. ESPINOSA:  It was, your Honor, and defense --
14              THE COURT:  What was the open issue?
15              MS. ESPINOSA:  -- counsel should feel free to add
16      anything they think that I'm leaving out, but the issue we were
17      primarily focused on on that call was the provision in
18      paragraph 6(c), I believe it is.
19              Give me one moment and I will have it in front of me.
20              Yes, it's 6(c), which is regarding when a prospective
21      witness who is being shown sealed discovery material would need
22      to agree to the terms of the protective order and sign the
23      terms of the protective order.
24              We had also discussed during that call the defendants'
25      own use of material that originally came from the defendants
```

P27WaleC

| | |
|---|---|
| 1 | and the application of the protective order to that. |
| 2 | THE COURT:  OK.  I'm sorry.  What was the issue |
| 3 | with -- you said 6(c)? |
| 4 | MS. ESPINOSA:  6(c), yes, your Honor. |
| 5 | THE COURT:  C, as in cat. |
| 6 | MS. ESPINOSA:  C, as in cat, yes.  At the bottom of |
| 7 | page 3 -- page 6 of the PDF, page, I believe, 3 of the |
| 8 | protective order. |
| 9 | THE COURT:  What were the -- |
| 10 | MS. ESPINOSA:  Defense counsels' objection was that it |
| 11 | would place too much of a burden, would be too onerous on them |
| 12 | when meeting with prospective witnesses.  And to the extent |
| 13 | they wish to elaborate on that, I would, of course, allow them |
| 14 | to do that. |
| 15 | THE COURT:  OK. |
| 16 | Who wants to be heard? |
| 17 | MR. SREBNICK:  Judge, this is by way of introduction. |
| 18 | As to Alon Alexander, the materials that the |
| 19 | government proposes to turn over in discovery, in large |
| 20 | measure, come from the Alexanders themselves, seized by the |
| 21 | government at the time of the arrest.  Those materials include, |
| 22 | as we've alerted the government, matters that had been gathered |
| 23 | by their civil lawyers in response to publicly filed lawsuits |
| 24 | against the Alexanders mirroring the allegations in the |
| 25 | criminal indictment. |

P27WaleC

```
 1              Our concern is that the Alexanders should not be

 2     limited in using their own materials to prepare for trial, both

 3     in the civil cases, which have not been stayed -- some have

 4     been dismissed already -- and in the criminal case.  To the

 5     extent that the government is proposing to turn over as part of

 6     Rule 16 discovery material the government independently

 7     assembled from third parties, we have no objection to the

 8     implementation of the protective order as a starting point, at

 9     which point if there becomes a burden on us to use the

10     government-assembled materials, we could come before the

11     Court -- I think the government agrees -- so that we could

12     discuss -- for example, the government's proposed protective

13     order would require that we obtain signatures from anyone we

14     meet that that third person acknowledged the existence and the

15     obligations under the order, the protective order.

16              We're concerned that that --

17              THE COURT:  I don't read it that way.  I read it as

18     only if you're providing that person with sealed materials, not

19     anyone you meet.

20              MR. SREBNICK:  Anyone we would show the document to or

21     hand the document to before we can, I think, give them the

22     document.  If I'm wrong, great.

23              THE COURT:  No, no.  But that's not what you said.

24     You said anyone the defense met would have to sign on to the

25     protective order.  That's not accurate.
```

P27WaleC

```
 1              MR. SREBNICK:  What I meant to say is showing them,
 2    handing them the documents that the government has turned over
 3    to us as part of Rule 16.
 4              We think that would likely discourage people from
 5    talking to us if they need to sign documents as part of any
 6    interview they have with us.  If the government's not requiring
 7    that, maybe I misunderstood what they're asking for.  And Mr.
 8    Klugh will address it further.
 9              Our concern is -- we certainly have no objection
10    alerting people to the existence of a protective order, anyone
11    we meet; it's going to be a publicly filed document -- but
12    obtaining signatures from third parties that we interview, with
13    whom we'd like to engage in investigation, we believe that that
14    impedes our ability to investigate and obtain exculpatory
15    information on behalf of the defendants.
16              THE COURT:  Ms. Espinosa.
17              That's your only real objection.
18              MR. SREBNICK:  And a reminder that part of the
19    materials that were obtained from the defendants, we've
20    asserted privilege over them.  I believe a taint team from the
21    government has been appointed.  We need to explore with that
22    taint team what materials the taint team intends to turn over
23    to the prosecution team.  Those materials should be under no
24    restriction at all.
25              The government prosecutors, the trial team should not
```

P27WaleC

1    even have access to those materials.  They were compiled in

2    connection with anticipation of civil litigation over

3    allegations mirroring those in the criminal indictment.

4              THE COURT:  If they're not turned over to these

5    prosecutors, they're not going to be turned over as 6(c)

6    material.

7              MR. SREBNICK:  That's my hope.

8              THE COURT:  That then becomes sort of a moot point.

9              MR. SREBNICK:  I hope so.

10             THE COURT:  Presumably you have all that material.  If

11   it's not covered under this protective order, it's covered

12   under whatever order you may have been provided as part of the

13   civil litigation if there was some protective order.

14             MR. SREBNICK:  They were taken from Alon Alexander.

15   We haven't gotten them back yet.  So the government presumably

16   turn them over.

17             THE COURT:  That's the only copy?  Presumably their

18   lawyers have them.

19             MR. SREBNICK:  There could be other copies, but

20   anything that was taken from Alon Alexander's home upon his

21   arrest, that he was compiling, the lawyers may not have them.

22             THE COURT:  That he was compiling.  OK.

23             Ms. Espinosa.

24             MS. ESPINOSA:  Your Honor, a couple of things.

25             Just as to paragraph 6(c), that does not require -- it

P27WaleC

1    only requires that individuals that the defense meet with sign

2    the protective order if they are being shown sealed disclosure

3    material.  It does not require a signature if they are being

4    shown disclosure material that is not designated sealed.

5         THE COURT:  Give me an example of what would be sealed

6    discovery material.

7         MS. ESPINOSA:  Sealed discovery material would be

8    material that could allow the identification of victims or

9    witnesses primarily.  So it may be communications between a

10   defendant and a victim, for example, or potentially photographs

11   that could lead to the identification of a particular victim or

12   witness.

13        It is not all material writ large.  It is material

14   that implicates the privacy interests and safety interests of a

15   particular individual who's not a party to the case.

16        THE COURT:  OK.  I'm baffled by why this is going to

17   be such a burden on the defense or why it makes sense for me to

18   rule on this before you've gotten the material, you understand

19   what it is, and if you run into problems, then you can actually

20   articulate what the problem is.  I have a real hard time

21   dealing with these things in the abstract, because I don't know

22   exactly what's being turned over, what you've got, what you

23   don't have, what you need the 6(c) material for.

24        On that, who else wants to be heard?

25        MR. WILLIAMS:  If I may be heard briefly, your Honor?

P27WaleC

```
 1              THE COURT:  Yes.
 2              MR. WILLIAMS:  I just spoke to Ms. Espinosa this
 3    morning and Mr. Jones, along with my colleague Deanna Paul.
 4    There's one aspect that we're trying to work through with them
 5    that I think we might be able to do something on.  They're
 6    conferring within the office, so it's still an outstanding, I
 7    guess, issue that we're trying to resolve.
 8              THE COURT:  OK, all of which sounds like it's
 9    premature for me to be dealing with it.  My sincere desire is
10    for lawyers, working in good faith, professionally and
11    collegially, to work out these issues before you.  There's
12    nothing magical about a protective order.  They're entered all
13    the time.
14              I understand, whoever wrote the letter, the notion
15    that you can't just engage in automatic -- there needs to be a
16    protective order.  It seems self-evident that this case is
17    going to be the type of case that a protective order is needed
18    and is appropriate for.  So try to work this out professionally
19    and collegially between you.  If you can't, then bring it to me
20    with the dispute narrowly tailored to what is actually at
21    issue.  OK?
22              All right.  With that, Ms. Espinosa, what is the
23    discovery in this case going to be?  Tell me about the volume
24    and when you're ready to produce, etc.
25              MS. ESPINOSA:  Absolutely, your Honor.
```

P27WaleC

1          So, there's a substantial amount of discovery in this

2     case, and I would say the most significant volume is the

3     electronically stored information that we have seized.  That

4     includes a number of different types of material.

5          We have obtained an iCloud account for each of the

6     defendants.

7          We've obtained Instagram accounts for each of the

8     defendants, Facebook accounts for each of the defendants,

9     dating application accounts for Alon Alexander and Oren

10    Alexander.

11         We seized a number of cell phones at the time of

12    arrest, one from each defendant.  Alon Alexander's cell phone

13    has been extracted to date.

14         At this time Oren and Tal Alexander's cell phones have

15    not yet been extracted.  We'll continue to attempt to do so,

16    and we will advise if we are able to.

17         We've also seized a number of electronic devices in

18    the course of searching the premises associated with each

19    defendant on the day of arrest, and those devices include

20    laptop computers, an iPad, hard drives and thumb drives and SD

21    cards, so quite a number of electronic storage devices; a

22    Motorola cell phone and a number of other electronic devices of

23    that nature, I believe an Apple watch and things like that.

24         We have extracted eight of those devices to date; the

25    FBI has extracted eight of those devices.  There are 19

P27WaleC

1     remaining to be extracted.  We are prioritizing with the FBI

2     getting those devices extracted and intend to prioritize items

3     like hard drives and SD cards that are relatively easy

4     typically to extract and will be able to produce on a rolling

5     basis.

6          Larger items or items with more difficult levels of

7     encryption take longer to extract, so we are working with the

8     FBI to get a reasonable estimate on how long those will take,

9     and we'll, of course, advise the Court.  And we'll ensure

10    there's appropriate prioritization and resources dedicated to

11    doing this as efficiently as possible.

12         We intend to make productions on a rolling basis.  So

13    that is effectively the ESI that we have seized in this case.

14         THE COURT:  Can you give me a sense of how many

15    terabytes we're talking about?

16         MS. ESPINOSA:  So, as to what we've extracted so far,

17    we've requested a ten-terabyte hard drive from each defendant

18    to begin loading our first production of ESI.

19         I don't yet have an estimate on the unextracted

20    devices, but I expect -- particularly computers tend to be

21    large, and hard drives can often be very large these days.  So

22    there may be additional terabytes of data, but I,

23    unfortunately, can't give a firm number.  But the ten terabytes

24    will include the iClouds, the Instagram accounts, the Facebook

25    accounts, the dating applications, Alon Alexander's cell phone

P27WaleC

```
 1    and the extracted hard drives to date.

 2              THE COURT:  OK.

 3              MS. ESPINOSA:  And that will be, I think, with the

 4    exception of the computers and any additional hard drives, the

 5    bulk, a substantial amount of the ESI.

 6              THE COURT:  I heard you say you're working with the

 7    FBI to get an estimate of how long the rest of this is going to

 8    take.  Do you have a ballpark?

 9              MS. ESPINOSA:  So, I think that we should be able to

10    get a number of particularly the hard drives and thumb drives

11    and SD cards rolled out over the next couple of weeks.  It may

12    take a month or two on the larger devices, but I'm happy to

13    update the Court as soon as I have a more firm example, or firm

14    timeline.

15              THE COURT:  And what's your other discovery.

16              MS. ESPINOSA:  So, we also have cell phone location

17    data for each defendant, pen register data.  We have records.

18              THE COURT:  How long did you have pens up?

19              MS. ESPINOSA:  The pens were up, I believe, for -- the

20    pens themselves may have been a month or two.  The pen and

21    pings, the cell phone location warrants were obtained in

22    advance of the arrest, so perhaps a shorter period of time.

23              THE COURT:  Not much.

24              MS. ESPINOSA:  A couple of weeks or a month, perhaps.

25              THE COURT:  OK.
```

P27WaleC

1          MS. ESPINOSA:  We also have records from the searches

2     of the premises associated with each defendant.  So that

3     includes photos and videos taken while agents were executing

4     the search warrants and photos of the items seized; some

5     physical items that were seized, like documents and physical

6     photographs, obviously the devices that I've already described

7     that were seized during those searches.

8          It's also my understanding that teams at the FBI and

9     the task force officers assisting wore body-worn cameras during

10    these searches, and we are producing that material as well.

11    That will also -- our intention is to include that on the

12    ten-terabyte hard drive that we are going to prepare for an

13    early production.

14          THE COURT:  All right.

15          MS. ESPINOSA:  We also have subpoena returns and other

16    materials provided by third parties.  So that's the typical

17    sort of materials you would gather -- bank records, travel

18    records, financial records, some communications obtained from

19    third-party custodians in the form of emails.  We are going to

20    be producing a substantial amount of that material as well in

21    our initial production.

22          And I should say, your Honor, that we will have an

23    initial production of search warrant affidavits and

24    applications, subpoena returns, third-party materials,

25    documents that we can share via our USAfx file-sharing site,

P27WaleC

1    ready to go as soon as the protective order is entered.  So

2    we'll be prepared to make that production today if a protective

3    order is entered today or whatever date it is entered.

4            The hard drives, once we receive them from counsel,

5    will take some time for us to load because of the volume of

6    material, but we intend to start making those copies as soon as

7    we receive the drives so that we can get it to them

8    efficiently.

9            Additional materials, as we continue to investigate,

10   we're continuing to obtain additional materials, and we will

11   make discovery productions on a rolling basis.

12           THE COURT:  Is there any reason for me to anticipate

13   that there's going to be a superseding indictment in this case?

14           MS. ESPINOSA:  Yes, your Honor.  We do intend to bring

15   a superseding indictment in this case charging multiple counts

16   as to additional statutory victims.  It also may impact the

17   time period of the charged conspiracy.

18           We are continuing to investigate.  We have now at this

19   point in time interviewed over 60 victims who have reported

20   being raped by at least one or sexually assaulted by at least

21   one of the Alexander brothers.  We're continuing to assess

22   which of those victims support the standalone statutory charge,

23   which are evidence of the conspiracy.  It is our goal to avoid

24   going to the grand jury again and again, and so we're

25   attempting to consolidate and go in a timely manner, but we

P27WaleC

```
 1    also intend to move efficiently because we have no interest in
 2    delaying this process unduly.  So depending on when the trial
 3    is scheduled, we will ensure we put in any superseders well in
 4    advance.
 5              THE COURT:  OK.
 6              Now I have questions for the defense attorneys.
 7              I would like to schedule this trial in the fall, but I
 8    also want to give you adequate time to prepare.  The question
 9    is do you think those two things go together?
10              I'll start with you, Mr. Srebnick.
11              MR. SREBNICK:  So, for us to be prepared for trial and
12    discharge our duty to investigate the accusing witnesses, the
13    accusers, our ability to be ready for trial depends on when the
14    government identifies who the accusers are so that we can
15    engage in an adequate investigation of each accuser, anybody
16    who knows the accusers, character witnesses regarding the
17    accusers' character for truthfulness, other witnesses who were
18    present when the alleged event occurred.
19              We all understand the allegation is one of
20    nonconsensual sexual activity, so what we would probably be
21    seeking --
22              THE COURT:  Well, in part.  I don't think that's the
23    only allegation here, but go ahead.
24              MR. SREBNICK:  That's one of the essential issues that
25    we would need to defend against, and in order to do that, we
```

P27WaleC

1    would ultimately need to know who the accuser is, who's

2    claiming that she was a subject of a nonconsensual sexual

3    encounter.  And to do that, we would normally need to know who

4    it is that's accusing and the time, place of the event so that

5    we can also interview others that were attending, let's say, a

6    party that occurred where the accuser's making that allegation.

7    So as soon as we know the government's universe of accusers, I

8    would suggest to the Court we would need months after that to

9    conclude an investigation for the defense.

10           The government previewed for us that they expect the

11   number of accusers who will testify at trial will be at least

12   ten, is what I heard them say, not 40 or 60, as I heard today.

13   But each one requires a full investigation, so what I would

14   propose is that the Court actually set a second arraignment

15   date by which the government can bring to you their superseding

16   indictment.  We will then have a better idea of what the scope

17   of the trial will look like and how much preparation needs to

18   be done.  As we sit here today, we know of only two from the

19   original superseding indictment.  But it sounds like the

20   government's going to add as many as eight more, so that we can

21   begin the investigation of those eight plus the collateral

22   witnesses that would come along with that.

23           So my proposal is your Honor pick a date that you

24   think is appropriate for the government to finalize their

25   investigation, identify the alleged victims and then we can

P27WaleC

```
 1    select a reasonable trial date based on that date.

 2                THE COURT:  I'm not going to do that.

 3                When does the government anticipate being able to

 4    identify for the defense who you anticipate to be the victims

 5    that are sort of subjects of particular criminal charges?

 6                MS. ESPINOSA:  You mean, your Honor, when would we be

 7    in a position to supersede and, therefore, have the universe of

 8    additional statutory victims?

 9                THE COURT:  Right.

10                MS. ESPINOSA:  So, we would, I think we will need at

11    least another month or two, but we are certainly willing to

12    work efficiently on that with your Honor, because we have a

13    number identified now.  But given that we are continuing to

14    identify more, we were planning to essentially time our

15    superseding schedule off a trial date to ensure that it was

16    adequately in advance of any trial.  So a fall trial, I think

17    that in a month or two, potentially three, at the outset --

18    outside, we would be in a position to do so.

19                That said, your Honor, we are continuing to hear from

20    additional victims, to identify additional victims.  I

21    certainly wouldn't want to foreclose having -- if we identify

22    an additional statutory victim in the summer, there may be

23    other issues that impact whether that is included at any trial.

24    But we certainly are not committing that we would not bring

25    additional counts on that basis.
```

P27WaleC

```
1             THE COURT:  I understand that.

2             OK.  Let's assume that you get the superseder that

3    you've been told is coming by the end of April.  Is an October

4    trial date reasonable?

5             MR. SREBNICK:  I have a scheduling conflict I would

6    like to address with the Court about late October, but in terms

7    of the time we would need, if we could just confer for a

8    moment?

9             THE COURT:  Sure.

10             MR. SREBNICK:  Judge, we've conferred among defense

11    counsel.  Given the conflict I have at the end of October, and

12    Mr. Williams has a conflict in mid-November, we were going to

13    propose December 1 as a trial date.

14             THE COURT:  I'm not going to try a case in December.

15             How long do you think this trial is going to be?

16             MS. ESPINOSA:  Your Honor, our best estimate right now

17    for a government case is at least three weeks.  To some extent,

18    given that there are three defendants, some amount of that

19    duration is outside of our direct control.

20             THE COURT:  All right.

21             MS. ESPINOSA:  Our estimate right now, and that takes

22    into account an assumed superseder, would be at least three

23    weeks for a government case.

24             MR. SREBNICK:  And when I spoke to government counsel,

25    that does not include the defense case.
```

P27WaleC

1          THE COURT:  No.  I understand that.  They can only

2     speak to their case.

3          MR. SREBNICK:  If we can preview, I think if the

4     government's case is at least three weeks, that sounds to me

5     like four, we would say probably five to six weeks of courtroom

6     time, because for every accuser we will have witnesses to

7     respond to the accusation.

8          THE COURT:  If I had a penny for every defense

9     representation of how many witness they're going to have on the

10    defense case, I would be a wealthy woman.  But I take your

11    statement for what it's worth, that there may, in fact, be a

12    defense case.

13         MR. SREBNICK:  I've only been pushed when the jury is

14    told to stay longer than they were originally.

15         THE COURT:  I try a fast case.

16         Yes, Mr. Williams.

17         MR. WILLIAMS:  Yes.

18         THE COURT:  But I've got it.  Literally, I'm thinking

19    this is going to be a month, month and a half.  That's probably

20    what we'll tell the jury.

21         MR. WILLIAMS:  Your Honor, I think in an excess of

22    caution, although we want to get to trial as soon as possible,

23    can we do early in 2026, like January?

24         THE COURT:  Maybe.

25         What are the conflicts?  And also -- this isn't to

P27WaleC

1    you; this is to the two Florida guys -- I thought there was

2    going to be New York counsel who was coming in.

3              Has that plan changed?

4              MR. SREBNICK:  I expect that there might be a

5    cocounsel coming in to join for the trial, given that there's

6    going to be a superseder and more accusers than the two in the

7    indictment, but I will be here together with or alone.

8              THE COURT:  OK.

9              Mr. Klugh.

10             MR. KLUGH:  I do anticipate trying to locate and

11   retain additional counsel from New York to assist us with the

12   trial.  We are actively and have been actively pursuing that.

13   Again, there's some potential conflict issues always in a case

14   where you don't know the victims, but we're trying to work

15   through that, your Honor.

16             THE COURT:  OK.  So there may be other lawyers.

17             Who has the conflict in October?

18             MR. SREBNICK:  I do, your Honor.

19             THE COURT:  What's your conflict?

20             MR. SREBNICK:  My brother's son is getting married in

21   Israel.  He's a soldier.  He leaves the service in September,

22   and a wedding is planned for October 26.  Our family, from many

23   places, will be traveling to Israel beginning around October 21

24   until probably November 2 or 3.

25             THE COURT:  That's a long wedding.

P27WaleC

| | |
|---|---|
| 1 | MR. SREBNICK:  It's a long way to get there.  And so |
| 2 | we have a family, a whole event there for his wedding. |
| 3 | THE COURT:  OK.  And you're planning to be back when? |
| 4 | MR. SREBNICK:  First week of November.  The wedding, |
| 5 | October 26 is a Sunday.  I imagine I'll be back at the end of |
| 6 | that week, so I'll be back by the first full week of November. |
| 7 | MR. WILLIAMS:  And your Honor -- I'm sorry. |
| 8 | THE COURT:  Hang on one second.  Let me just get a |
| 9 | calendar in front of me. |
| 10 | I'm sorry.  Say that again.  You anticipate being back |
| 11 | in the country when? |
| 12 | MR. SREBNICK:  Whatever the Monday is after the |
| 13 | October 26, a week later. |
| 14 | THE COURT:  That's November the 3rd. |
| 15 | Mr. Williams, you had a conflict as well. |
| 16 | MR. WILLIAMS:  I do.  I have an arbitration hearing, |
| 17 | but a short one, the 17th to the 21st of November.  It's not |
| 18 | that long. |
| 19 | THE COURT:  No, it's not that long.  But is it |
| 20 | actually going to go? |
| 21 | MR. WILLIAMS:  Yes.  I mean who knows?  The case is |
| 22 | civil.  It may settle.  If it does, I certainly would apprise |
| 23 | the Court, but that's the conflict right now. |
| 24 | THE COURT:  OK.  It sounds to me like realistically |
| 25 | we're not going to be able to do this in the fall.  So at the |

P27WaleC

1  cost of everybody's holiday break, your trial date will be

2  January the 5th.  You'll get some other dates, including the

3  date of the final pretrial conference, which will probably be

4  the before the Christmas break.

5          Does the government anticipate using expert witnesses?

6          MS. ESPINOSA:  Yes, your Honor.

7          THE COURT:  OK.  Does the defense anticipate using

8  expert witnesses?

9          MR. WILLIAMS:  Yes, your Honor.

10          MR. KLUGH:  It is likely, yes, your Honor.

11          THE COURT:  OK.

12          The government needs to disclose their expert

13  witnesses by June 13.

14          The defense needs to disclose their expert witnesses

15  by June 27.

16          If there are any rebuttal witnesses, they need to be

17  disclosed by July the 3rd.

18          Does the defense anticipate making pretrial motions to

19  dismiss, suppress or sever?

20          MR. KLUGH:  Yes, your Honor.

21          THE COURT:  Oh, that's right.  Your theory is that the

22  law doesn't apply.

23          MR. KLUGH:  Yes.  All of the reasons --

24          THE COURT:  OK.  That's fine.

25          MR. KLUGH:  -- address venue for some of these issues

P27WaleC

1    as well for substantive and other arguments.

2              THE COURT:  Venue.  Love venue.

3              OK.  So your pretrial motions to dismiss are due May

4    the 30th.

5              The government's response is due June 20.

6              Any replies are due June 27.

7              If we need a hearing, that will be on July 15 at 10

8    o'clock.

9              MR. WILLIAMS:  This is on the expert witness?

10             THE COURT:  No.  This is on pretrial motions.

11             MR. WILLIAMS:  OK.

12             THE COURT:  Let me know if you want to make *Daubert*

13   motions on each other's experts and I'll set a schedule at that

14   point.  If there are not going to be any challenges, then I'm

15   not going to set a schedule.

16             MR. KLUGH:  Your Honor, we will be filing a *Daubert*

17   motion on what we anticipate their expert witness to be.

18             THE COURT:  You don't even have the report.  You don't

19   have a name.  You don't have anything.

20             MR. KLUGH:  I understand, your Honor.

21             THE COURT:  That gives me a lot of confidence that

22   you've carefully considered whether you should make a motion.

23             MR. KLUGH:  If they find a bolstering expert, which we

24   have a principle objection to, then we would definitely be

25   filing a *Daubert* motion.

P27WaleC

1           MS. ESPINOSA:  Your Honor, I have given defense

2    counsel absolutely no information about what, if any, experts

3    the government will be calling at trial.

4           THE COURT:  OK.

5           MR. KLUGH:  If I'm proven wrong, the record will show

6    it.

7           THE COURT:  Indeed.

8           I'm still not going to set a schedule yet.  You have

9    to see who they're calling before you make up your mind that

10   you're going to make a motion.

11          Because we're moving the date out a little, the

12   motions *in limine* and requests to charge are due September the

13   5th.

14          Responses to the motions *in limine* are due September

15   19.

16          Have the parties thought at all about whether this

17   case is appropriate for jury questionnaires?

18          MR. SREBNICK:  I've thought about it, but I haven't

19   discussed it with opposing counsel.  But I certainly think this

20   is exactly the kind of case where a jury questionnaire would be

21   helpful.

22          THE COURT:  It may or may not be.  I am of two minds.

23          But what I'm going to ask the parties to do is to meet

24   and confer on whether they want and need a jury questionnaire,

25   and if so, let me know by September the 19th.  If you agree,

P27WaleC

```
 1   I'm likely to go along, if you agree.  If you disagree, then
 2   we'll talk about whether it's appropriate or not.
 3            I am of two minds on whether it's needed or on whether
 4   it's really even helpful in a case like this, but be that as it
 5   may.  We'll cross that bridge when we get to it.
 6            If we're not talking about needing to decide whether
 7   we're going to have a jury questionnaire, I'd like proposed
 8   voir dire questions by September the 19th.
 9            On your proposed voir dire questions, I only want
10   questions that are tailored, that would be unique to this case.
11   I have standard voir dire questions that I ask in all criminal
12   cases.  I am unlikely to change those, but to the extent there
13   are questions you specifically want asked because of the nature
14   of the charges in this case, submit your requests.
15            I'll give you a date for the final pretrial
16   conference.  That will be in the order that you get after
17   today, after I can look at a calendar.
18            All right.  I am now to the end of my agenda list.
19            Ms. Espinosa, do you have anything that you would like
20   to talk about?
21            MS. ESPINOSA:  Your Honor, I think just to clarify, on
22   the protective order, should we do more briefing on that?  Is
23   your Honor looking for anything else, or is your Honor prepared
24   to enter it?  We obviously can't begin producing discovery
25   until that is entered.
```

P27WaleC

|    |                                                                    |
|----|--------------------------------------------------------------------|
| 1  | THE COURT:  My understanding is there was one hanging              |
| 2  | chad, and at least Mr. Williams is optimistic, and I'm going to    |
| 3  | channel Mr. Williams's optimism that with one more meeting         |
| 4  | between the parties you can work that out, and therefore, you      |
| 5  | will send me an agreed-upon protective order.                      |
| 6  | MS. ESPINOSA:  Very well, your Honor.  We'll speak to              |
| 7  | them promptly.                                                     |
| 8  | THE COURT:  OK.  And I realize you're not going to                |
| 9  | give disclosure until you get a protective order.                  |
| 10 | Anything else from the government?                                 |
| 11 | MS. ESPINOSA:  Your Honor, the government moves to                 |
| 12 | exclude time until January 5.                                      |
| 13 | THE COURT:  There's no doubt that this is a complex               |
| 14 | case.  There are massive amounts of discovery.  I find that the   |
| 15 | need for additional time outweighs the defendants' and the        |
| 16 | public's time in a speedy trial, and therefore, I'm excluding     |
| 17 | time until January the 5th of next year.                          |
| 18 | Any objection to that from the defense?                           |
| 19 | MR. KLUGH:  No, your Honor.                                       |
| 20 | MR. WILLIAMS:  No, your Honor.                                    |
| 21 | MR. SREBNICK:  No, your Honor.                                    |
| 22 | THE COURT:  OK.                                                    |
| 23 | Anything else from the government?                                |
| 24 | MS. ESPINOSA:  No, your Honor.                                    |
| 25 | THE COURT:  OK.                                                    |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P27WaleC

1            Anything, Mr. Srebnick, that you want to raise?

2            MR. SREBNICK:  No, your Honor.

3            THE COURT:  Mr. Klugh.

4            MR. KLUGH:  No, your Honor.

5            THE COURT:  Mr. Williams.

6            MR. WILLIAMS:  No, your Honor.

7            THE COURT:  All right.  Thanks, everybody.  Have a

8    nice weekend, and I will see you at some point in the future.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25