UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

UNITED STATES OF AMERICA         :
                                    :

        - v. -            :       S3 24 Cr. 646 (VEC)
                                    :

ALON ALEXANDER,           :
OREN ALEXANDER, and      :
TAL ALEXANDER,            :
                                    :

           Defendants.     :
                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# OMNIBUS MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO THE DEFENDANTS' PRETRIAL MOTIONS

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

Kaiya Arroyo
Elizabeth A. Espinosa
Andrew Jones
Madison Reddick Smyser
Assistant United States Attorneys
    *Of Counsel*

# TABLE OF CONTENTS

Preliminary Statement ............................................................................................... 1

Argument .................................................................................................................... 1

I.    The Motions to Dismiss One or More Counts in the Indictment Should Be Denied.  1

   A.    The Defendants Have Failed to Allege that Any Count In the Indictment Fails State A Claim or is Procedurally Deficient ................................................................ 1

     1.    Background ............................................................................................. 1

     2.    Applicable Law ...................................................................................... 4

       i.    Sufficiency ..................................................................................... 4

       ii.    Duplicity ........................................................................................ 6

     3.    Discussion .............................................................................................. 7

       i.    Count One Properly Pleads a Single Offense of Conspiracy to Commit Sex Trafficking ................................................................... 7

       ii.    The Indictment Pleads Each Sex Trafficking Count with Sufficient Specificity 14

       iii.    Each Sex Trafficking Count Sufficiently Pleads the Elements of Sex Trafficking and Sex Trafficking Conspiracy ................................... 19

       iv.    Counts One, Three, Six, and Seven Each Fall Within the Statute of Limitations 22

       v.    Count Four Properly Pleads Inducement to Travel to Engage in Unlawful Sexual Activity ............................................................... 25

       vi.    Counts Three and Four Cannot be Dismissed Based on Arguments of Evidentiary Sufficiency at a Motion to Dismiss ........................... 27

       vii.    Count Five is Properly Pled. ......................................................... 28

   B.    The Defendants' Motion to Dismiss the Indictment as a Violation of the Tenth Amendment Should Be Denied. ....................................................................... 30

   C.    The Defendants' Motion to Dismiss the Indictment Based on Unfounded Allegations of Selective Prosecution Should Be Denied. .................................... 32

     1.    Applicable Law .................................................................................... 32

     2.    Discussion ............................................................................................ 34

       i.    The Defendants Fail to Show That Similarly Situated Individuals Were Not Prosecuted ............................................................................. 35

       ii.    The Defendants Fail to Show Discriminatory Purpose ................. 37

   D.    The Defendants' Motion to Dismiss for Lack of Venue Should Be Denied ........ 40

     1.    Background ........................................................................................... 40

     2.    Applicable Law .................................................................................... 42

3.  Discussion ............................................................................................. 43

II.  The Motions to Suppress Evidence Found During the Execution of Search Warrants
Should be Denied ............................................................................................. 47

A.  Background ............................................................................................. 47

B.  The Defendants Have Not Met the High Burden Required for a *Franks* Hearing
Based on Purported Omissions in the Warrant Affidavits .................................... 51

1.  Applicable Law ............................................................................................. 51

i.  Reviewing a Magistrate's Probable Cause Determination ........................... 51

ii.  Alleged Omissions in a Search Warrant Affidavit ................................. 52

2.  Discussion ............................................................................................. 55

i.  The Challenged Alleged Omissions Were Not Material ............................. 55

ii.  The Defendants Have Not Shown an Intent to Mislead or a Reckless Disregard
for the Truth ............................................................................................. 69

C.  The Search Warrants Were Particular and Not Overbroad .............................. 72

1.  Applicable Law ............................................................................................. 72

2.  Discussion ............................................................................................. 73

D.  The Search Warrants Were Supported by Probable Cause ............................... 76

1.  Applicable Law ............................................................................................. 76

2.  Discussion ............................................................................................. 77

i.  There was Probable Cause to Believe the Defendants Committed the Subject
Offenses ............................................................................................. 77

ii.  There was Probable Cause to Believe that Tal Alexander's iCloud and Meta
Accounts would Contain Evidence of the Subject Offenses ......................... 81

E.  The Warrant to Search Tal Alexander's Manhattan Apartment was Valid .......... 83

F.  Oren and Alon Alexander's Challenges to Other Warrants Fail ........................ 85

G.  Law Enforcement Executed the Search Warrants in Good Faith ....................... 86

1.  Applicable Law ............................................................................................. 86

2.  Discussion ............................................................................................. 87

III.  The Motion to Preclude Victims from Identifying Their Attackers in Court Should
Be Denied Without a Hearing ............................................................................. 88

A.  Applicable Law ............................................................................................. 88

B.  Discussion ............................................................................................. 90

1.  The Photo Book Procedure Was Not Unduly Suggestive ........................... 90

2.  The Victims' Pretrial Identifications Are Independently Reliable ................. 92

IV.  The Motion for Severance Should Be Denied ...................................................... 93

A.  Applicable Law ............................................................................................. 93

B.    Discussion ............................................................................................... 95

V.   The Motions for an Evidentiary Hearing Based on Violation of Attorney-Client
     Privilege Should Be Denied ................................................................... 99

A.   Background ........................................................................................... 99

B.   Applicable Law .................................................................................. 101

C.   Discussion ........................................................................................... 103

   1.   The Defendants' Request for an Evidentiary Hearing Based on Attorney-Client
        Privilege Should Be Denied............................................................ 103

   2.    The Defendants' Request to Review Grand Jury Materials Should Be Denied ...
        ......................................................................................................... 108

VI.   The Motion for A Bill of Particulars Should Be Denied .................................. 109

A.   Applicable Law .................................................................................. 109

B.   Discussion ........................................................................................... 113

VII.  The Brady Motion Should Be Denied ............................................................. 117

CONCLUSION.................................................................................................. 120

## TABLE OF AUTHORITIES

### CASES

*Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740 (C.D. Cal. 2024) ........................................... 35

*Ardolf v. Weber*, 332 F.R.D. 467 (S.D.N.Y. 2019)........................................................................ 35

*Bankman-Fried*, 680 F. Supp. 3d at 314-15................................................................................. 56

*Brady v. Maryland*, 373 U.S. 83 (1963) ..................................................................................... 131

*Bright v. United States*, Nos. 18 Cr. 56 (KPF), 23 Civ. 4524 (KPF), 2023 WL 716881 (S.D.N.Y.

    Oct. 31, 2023) ........................................................................................................................ 23

*Carpenter v. United States*, 585 U.S. 296 (2018) ........................................................................ 86

*Colton v. United States*, 306 F.2d 633 (2d Cir. 1962) ................................................................ 118

*Costello v. United States*, 350 U.S. 359 (1956) ........................................................................... 19

*Davis v. United States*, No. 09 Cr. 390 (NAM), 2021 WL 8533103 (N.D.N.Y. Sept. 29, 2021). 38

*District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) ............................................................... 90

*Eckhart v. Fox News Network, LLC*, 20-CV-5593 (RA), 2021 WL 4124616 (S.D.N.Y. Sept. 9,

    2021) ...................................................................................................................................... 35

*Fisher v. United States*, 425 U.S. 391 (1976) ............................................................................ 118

*Florida v. Harris*, 568 U.S. 237 (2013) ............................................................................... 66, 90

*Franks v. Delaware*, 438 U.S. 154 (1978)............................................................................. 66, 67

*Geiss v. Weinstein*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019) ......................................................... 35

*Giglio v. United States*, 405 U.S. 150 (1972) ...................................................................... 54, 133

*Herring v. United States*, 555 U.S. 135 (2009)......................................................................... 100

*Hickman v. Taylor*, 329 U.S. 495, 508 (1947).......................................................................... 118

*In re Grand Jury Subpoena*, 103 F.3d 234 (2d Cir. 1996) .................................................... 61, 122

*In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006) ...................................................... 119

*In re Petition of Craig*, 131 F.3d 99 (2d Cir. 1997) ..................................................................... 122

*In re Six Grand Jury Witnesses*, 979 F.2d 939 (2d Cir. 1992) ................................................... 117

*Jarrett v. Headley*, 802 F.2d 34 (2d Cir. 1986) ............................................................................ 102

*Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158 (2d Cir.

1992) ...................................................................................................................................... 118

*McCleskey v. Kemp*, 481 U.S. 279 (1987) ...................................................................................... 51

*McColley v. County of Rensselaer*, 740 F.3d 817 (2d Cir. 2014) ................................................. 72

*Neil v. Biggers*, 409 U.S. 188 (1972) ........................................................................................... 103

*Nobel v. Weinstein*, 335 F. Supp. 3d 504 (SDNY 2018) .............................................................. 35

*Perry v. New Hampshire*, 565 U.S. 228 (2012) ........................................................................... 104

*Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) .......................................................... 48

*Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001) ............................................................................ 103

*Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165 (2d Cir. 2003) ................................................ 118

*Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991) .............................................................. 66, 68

*Russell v. United States*, 369 U.S. 749 (1962) ............................................................................... 19

*San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973) .............................................................. 52

*see Illinois v. Gates*, 462 U.S. 213 (1983) ............................................................................... 65, 90

*See United States* v. *Conley*, No. 00 Cr. 0816 (DAB), 2002 WL 252766 (S.D.N.Y. Feb. 21,

2002) ...................................................................................................................................... 125

*Smith v. United States*, 568 U.S. 106, 112 (2013) ........................................................................ 94

*Stirone v. United States,* 361 U.S. 212 (1960) ............................................................................... 32

*Taylor v. United States*, 570 U.S. 301 (2016) ............................................................. 26

*Texas v. Brown*, 460 U.S. 730 (1983) ........................................................................... 65

*United States v. Aiyer*, 33 F.4th 97 (2d Cir. 2022) ...................................................... 20

*United States v. Alameh*, 341 F.3d 167 (2d Cir. 2003) ................................................ 47

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) .................................... 24, 27, 37

*United States v. Almaleh*, No. 17 Cr. 25 (ER), 2022 WL 602069 (S.D.N.Y. Feb. 28, 2022) ....... 84

*United States v. Amato*, 15 F.3d 230 (2d Cir. 1994) ................................................... 108

*United States v. Antico*, 08 Cr. 559 (CBA), 2010 WL 2425991 (E.D.N.Y. June 11, 2010) ....... 126

*United States v. Aracri*, 968 F.2d 1512 (2d Cir. 1992) .......................................... 24, 25

*United States v. Armstrong*, 517 U.S. 456 (1996) ............................................... passim

*United States v. Arroyo*, 600 F. App'x 11 (2d Cir. 2015) ........................................... 103

*United States v. Avenatti*, 433 F. Supp. 3d 552 (S.D.N.Y. 2020) .................................. 53

*United States v. Avenatti*, 559 F. Supp. 3d 274 (S.D.N.Y. 2021) ......................... 50, 119

*United States v. Awadallah*, 349 F.3d 42 (2d Cir. 2003) ............................................ 66

*United States v. Ayala*, 740 F. Supp 3d 314 (S.D.N.Y. 2024) ..................................... 67

*United States v. Bakhtiari*, 913 F.2d 1053 (2d Cir. 1990) .......................................... 65

*United States v. Bankman-Fried*, 680 F. Supp. 3d 289 (S.D.N.Y. June 27, 2023) ........... 23, 31, 57

*United States v. Barrera*, 950 F. Supp. 2d 461 (E.D.N.Y. 2013) ............................... 129

*United States v. Bass*, 536 U.S. 862 (2002) (per curiam) ........................... 48, 49, 52, 53

*United States v. Blau*, 159 F.3d 68 (2d Cir. 1998) ................................................... 117

*United States v. Bonventre*, 646 F App'x 73 (2d Cir. 2016) ...................................... 127

*United States v. Campo Flores*, No. 15 Cr. 765 (PAC), 2016 WL 5946472 (S.D.N.Y. Oct. 12, 2016) ................................................................................................ 132

*United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000) ........................................................ 66, 68

*United States v. Carrasco*, No. 22 Cr. 334 (CM), 2022 WL 17547431 (S.D.N.Y. Dec. 8, 2022) 89

*United States v. Carson*, 702 F.2d 351 (2d Cir. 1983) ........................................................ 108, 110

*United States v. Castro*, 08 Cr. 268 (NRB), 2008 WL 5062724 (S.D.N.Y. Nov. 25, 2008) ...... 126

*United States v. Catino*, 735 F.2d 718 (2d Cir. 1984) ...................................................... 56, 57, 59

*United States* v. *Cephas*, 937 F.2d 816 (2d Cir. 1991) ............................................................ 124

*United States v. Chambers*, 17 Cr. 396 (WHP), 2018 WL 1726239 (S.D.N.Y. Apr. 9, 2018) .. 129

*United States v. Chang An-Lo*, 851 F.2d 547 (2d Cir. 1988) ................................................... 110

*United States v. Chem. Found., Inc.*, 272 U.S. 1 (1926) ........................................................... 47

*United States v. Chen*, 378 F.3d 151 (2d Cir. 2004) ................................................................ 128

*United States v. Cimino*, 31 F.R.D. 277 (S.D.N.Y. 1962) ......................................................... 126

*United States v. Clark*, 638 F.3d 89 (2d Cir. 2011) ................................................... 66, 101, 102

*United States v. Clemones*, 577 F.2d 1247(5th Cir. 1978) ......................................................... 24

*United States v. Combs*, 24 Cr. 542 (AS), 2025 WL 1361728 (S.D.N.Y. May 9, 2025) ............ 78

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992) ...................................................... 103

*United States v. Connolly*, No. 16 Cr. 0370 (CM), 2019 WL 2120523 (S.D.N.Y. May 2, 2019)

........................................................................................................................................... 121

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) .............................................................. 132

*United States v. Corley*, 670 F. App'x 1 (2d Cir. 2017) ..................................................... 30, 43

*United States v. Cromitie*, No. 09 Cr. 558 (CM), 2010 WL 3025670 (S.D.N.Y. July 28, 2010) .....

........................................................................................................................................ 67, 68

*United States v. D'Amelio*, 683 F.3d 412 (2d Cir. 2012) ......................................... 18, 28, 29, 32

*United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021) ..................................................... passim

vii

*United States v. Dien*, 609 F.2d 1038 (2d Cir. 1979)............................................................ 120

*United States v. Ephron*, No. 24 Cr. 418 (MMG), 2025 WL 524027 (S.D.N.Y. Feb. 18, 2025) . 54

*United States v. Eufrasio*, 935 F.2d 553 (3d Cir. 1991)............................................................ 20

*United States v. Evans*, 476 F.3d 1176 (11th Cir. 2007). ........................................................ 26

*United States v. Faison*, 393 Fed. Appx. 754 (2d Cir. 2010)..................................................... 31

*United States v. Falso*, 544 F.3d 110 (2d Cir. 2008) ........................................................ 67, 68

*United States v. Fama*, 758 F.2d 834 (2d Cir. 1985) .......................................................... 66, 76

*United States v. Fares*, 978 F.2d 52 (2d Cir. 1992).................................................... passim

*United States v. Feng Ling Liu*, No. 12 Cr. 934 (RA), 2014 WL 101672 (S.D.N.Y. Jan. 10, 2014)

........................................................................................................................ 98, 112

*United States v. Feng*, 277 F.3d 1151 (9th Cir. 2002) .................................................... 60

*United States v. Feola*, 651 F. Supp. 1068 (S.D.N.Y. 1987)......................................... 125

*United States v. Fernandez*, 456 F.2d 638 (2d Cir. 1972) .................................... 104, 106

*United States v. Frey*, 736 F. Supp. 3d 128 (E.D.N.Y. 2024)......................................... 76

*United States v. Gallo*, No. 98 Cr. 338 (JGK), 1999 WL 9848 (S.D.N.Y. Jan. 11, 1999) ......... 131

*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013) ............................................... 87, 89

*United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016) (en banc)................................... 100

*United States v. Garcia-Pena*, No. 17 Cr. 363 (GBD), 2018 WL 6985220 (S.D.N.Y. Dec. 19, 2018) ....................................................................................................................... 51

*United States v. Garlick*, No. 22 Cr. 540 (VEC), 2023 WL 2575664 (S.D.N.Y. Mar. 20, 2023) 67

*United States v. George*, 975 F.2d 72 (2d Cir. 1992) ...................................................... 86

*United States v. Gershman*, 31 F.4th 80 (2d Cir. 2022)............................................. 102, 103, 107

*United States v. Ghanem*, 993 F.3d 1113 (9th Cir. 2021)............................................. 58

*United States v. Gibbs*, 23-cr-25 (MN), 2024 WL 1198055 (D. Del. March 20, 2024)............... 38

*United States v. Goldberg*, 756 F.2d 949 (2d Cir. 1985) ............................................. 19

*United States v. Gottlieb*, 493 F.2d 987 (2d Cir. 1974) ............................................ 124

*United States v. Greenberg*, 21 Cr. 92 (AJN), 2022 WL 827304 (S.D.N.Y. Mar. 29, 2022)....... 20

*United States v. Hall*, No. 14 Cr. 105 (VM), 2014 WL 2464943 (S.D.N.Y. 2014) .................. 104

*United States v. Harding*, 273 F. Supp. 2d 411 (S.D.N.Y. 2003)............................... 72, 78

*United States v. Helmsley*, 726 F. Supp. 929 (S.D.N.Y. 1989) ........................... 117, 121

*United States v. Hernandez*, 980 F.2d 868 (2d Cir. 1992)..................................... 18, 19

*United States v. Hommosany*, 208 F.3d 204, 2000 WL 254050 (2d Cir. 2000) .......................... 51

*United States v. Hong Vo*, 978 F. Supp. 2d 49 (D.D.C. 2013) ..................................... 58

*United States v. Jacques Dessange, Inc.*, No. 99 Cr. 1182 (DLC), 2000 WL 280050 (S.D.N.Y. Mar. 14, 2000)..................................................................................... 133

*United States* v. *Jasper*, No. 00 Cr. 0825 (PKL), 2003 WL 21709447 (S.D.N.Y. July 23, 2003) ...................................................................................................... 61, 122

*United States v. Jiminez*, No. 20 Cr. 122 (LTS), 2020 WL 7231062 (S.D.N.Y. Dec. 8, 2020) . 104

*United States v. Jones*, 43 F.4th 94 (2d Cir. 2022) ...................................................... 90

*United States v. Kazarian,* No. 10 Cr. 895(PGG), 2012 WL 1810214 (S.D.N.Y. May 18, 2012) ...................................................................................................... 124

*United States v. Kelly*, 128 F.4th 387 (2d Cir. 2025)................................................ 39, 40

*United States v. Kelly*, 19 Cr. 286 (AMD), 2020 WL 473613 (E.D.N.Y. Jan. 29, 2020).......... 126

*United States v. Kevin*, 97 Cr. 763 (JGK), 1999 WL 194749 (S.D.N.Y. Apr. 7, 1999) ............. 126

*United States v. Kidd*, 386 F. Supp. 3d 364 (S.D.N.Y. 2019) .................................... 130

*United States v. Klump*, 536 F.3d 113 (2d Cir. 2008)............................................... 66

*United States v. Kone*, No. 19 Cr. 808 (VEC), 2022 WL 1498955 (S.D.N.Y. May 11, 2022) .... 69

*United States v. Lahey*, 967 F. Supp. 2d 698 (S.D.N.Y. 2013)................................................ 68

*United States v. Lamar*, No. 14 Cr. 726 (PGG), 2015 WL 4720282 (S.D.N.Y. Aug. 7, 2015) ... 51

*United States v. Landji*, No. 18 Cr. 601 (PGG), 2021 WL 5402288 (S.D.N.Y. Nov. 18, 2021)116,

119, 120

*United States v. Lasanta*, 978 F.2d 1300 (2d Cir. 1992) ........................................................ 112

*United States v. LeCompte*, 599 F. 2d 81 (5th Cir. 1978)........................................................ 24

*United States v. Leon*, 468 U.S. 897 (1984)......................................................... 100, 101

*United States v. Leonelli*, 428 F. Supp. 880 (S.D.N.Y. 1977) .................................................... 127

*United States v. Leung*, 40 F.3d 577 (2d Cir. 1994) ...................................................... 61, 122

*United States v. Lewis*, 517 F.3d 20 (1st Cir. 2008) ........................................................ 49

*United States v. Lopez*, 514 U.S. 549 (1995).......................................................... 45

*United States v. Losada*, 674 F.2d 167 (2d Cir. 1982).............................................................. 109

*United States v. Lumiere*, 16 Cr. 483 (JSR), 2016 WL 7188149 (S.D.N.Y. Nov. 29, 2016) ..... 117

*United States v. Mahabub*, No. 13 Cr. 908(AJN), 2014 WL 4243657 (S.D.N.Y. Aug. 26, 2014)

................................................................................................................................ 125

*United States v. Mahabub*, No. 13 Cr. 908, 2014 WL 4243657 (S.D.N.Y. Aug. 26, 2014) ...... 125

*United States v. Maldonado-Rivera*, 922 F.3d 934 (2d Cir. 1990)................................... 103, 104

*United States v. Malinsky,* 19 F.R.D. 426 (S.D.N.Y. 1956) ..................................................... 130

*United States v. Marcus*, 2006 WL 8446893 (E.D.N.Y. Dec. 6, 2006)..................................... 133

*United States* v. *Marcus*, 628 F.36 36 (2d Cir. 2010)............................................... 61, 122, 123

*United States v. Maxwell*, 534 F. Supp. 3d 299 (S.D.N.Y. 2021)........................................ 31, 130

*United States v. Melendez*, No. 16 Cr. 33 (LTS), 2016 WL 4098556 (S.D.N.Y. July 28, 2016). 67

*United States v. Miller*, No. 12 Cr. 368 (PAC), 2012 WL 4791992 (S.D.N.Y. Oct. 9, 2012) ... 132

*United States v. Milton*, No. 21 Cr. 478 (ER), 2021 WL 5304328 (S.D.N.Y. Nov. 15, 2021) .... 56

*United States v. Mitlof*, 165 F. Supp. 2d 558 (S.D.N.Y. 2001).................................................. 126

*United States v. Mollica,* 849 F.2d 723 (2d Cir. 1988)......................................................... 33

*United States v. Monge*, Cr-10-863-TUC-RCC (CRP), 2011 WL 13176072 (D. Ariz. July 14, 2011) ........................................................................................................................... 112

*United States v. Monserrate*, No. 10 Cr. 965 (CM), 2011 WL 3480957 (S.D.N.Y. Aug. 4, 2011) ................................................................................................................................. 124

*United States v. Moon*, 718 F.2d 1210 (2d Cir. 1983) ...................................................... 47, 51, 52

*United States v. Moore*, 968 F.2d 216 (2d Cir. 1992)........................................................ 101

*United States v. Morales*, 280 F. Supp. 2d 262 (S.D.N.Y. 2003) ................................... 124

*United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99 (2d Cir. 2020) ........................ 104

*United States v. Murgio*, 209 F. Supp. 3d 698 (S.D.N.Y. 2016) .................................... 29

*United States v. Murray*, 618 F.2d 892 (2d Cir. 1980) .................................................. 20

*United States v. Naranjo*, 14 F.3d 145 (2d Cir. 1994).................................................... 56

*United States v. Nassimi*, No. 04 Cr. 706 (LTS), 2023 WL 3584409 (S.D.N.Y. May 22, 2023). 60

*United States v. Neill*, 952 F. Supp. 834 (D.D.C. 1997)................................................ 121

*United States v. Nejad*, 436 F. Supp. 3d 707 (S.D.N.Y. 2020)................................... 67

*United States v. Nersesian*, 824 F.2d 1294 (2d Cir. 1987) ........................................... 31

*United States v. Nichols*, 912 F.2d 598 (2d Cir. 1990) ................................................ 66

*United States v. Ohle*, 678 F. Supp. 2d 215 (S.D.N.Y. 2010) .................................... 56

*United States v. Olvis*, 97 F.3d 739 (4th Cir. 1996 ...................................................... 49

*United States v. Panza*, 750 F.2d 1141 (2d Cir. 1984) ............................................... 108

*United States v. Parnas*, No. 19 Cr. 725 (JPO), 2021 WL 2981567 (S.D.N.Y. July 14, 2021) .......

..................................................................................................................... 50, 54

*United States v. Patel*, 16 Cr. 798 (KBF), 2017 WL 3394607 (S.D.N.Y. Aug. 8, 2017) ........... 117

*United States v. Paul*, 885 F.3d 1099 (8th Cir. 2018) .................................................... 44

*United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017) 56

*United States v. Perez*, 247 F. Supp. 2d 459 (S.D.N.Y. 2003) .................................... 84

*United States v. Perez*, 575 F.3d 164 (2d Cir. 2009) .................................................. 19

*United States v. Perez*, 940 F. Supp. 540 (S.D.N.Y. 1996) ...................................... 132

*United States v. Persico*, 621 F. Supp. 842 (S.D.N.Y. 1985) .................................... 125

*United States v. Peterson*, 357 F. Supp. 2d 748 (S.D.N.Y. 2005) ................................ 56

*United States v. Pierre-Louis*, No. 16 Cr. 541 (CM), 2018 WL 4043140 (S.D.N.Y. Aug. 9, 2018)

..................................................................................................................... 124

*United States v. Pirro*, 76 F. Supp. 2d 478 (S.D.N.Y. 1999) .................................... 108

*United States v. Potamitis*, 739 F.2d 784 (2d Cir. 1984) .................................... 109, 112

*United States v. Powell*, No. 04 Cr. 885, 2006 WL 1155947 (N.D. Ill. Apr. 28, 2006) ......... 43, 44

*United States* v. *Proctor & Gamble, Co.*, 356 U.S. 677 (1958) ................................ 122

*United States v. Provoo*, 215 F.3d 531 (2d Cir. 1954 .................................................. 59

*United States v. Pulley*, 987 F.3d 370 (4th Cir. 2021) ................................................ 84

*United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013) ............................... 68, 76, 83

*United States v. Raniere*, 384 F. Supp. 3d 282 (E.D.N.Y. Apr. 29, 2019) .................... 36

*United States v. Raniere*, 55 F.4th 354 (2d Cir. 2022) ............................... 24, 28, 35, 45

*United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015) .................................... 95, 101

*United States v. Reed*, No. 11 Cr. 487 (RJS), 2012 WL 205358 (S.D.N.Y. June 6, 2012) ........ 105

*United States v. Reilly*, 76 F.3d 1271 (2d Cir. 1996) ................................................... 97

*United States v. Rigas*, 258 F. Supp. 2d 299 (S.D.N.Y. 2003) .................................... 125

*United States v. Riley*, 906 F.2d 841 (2d Cir. 1990) .................................................... 97

*United States v. Rivera*, 799 F.3d 180 (2d Cir. 2015).................................................... 76

*United States v. Rivera*, No. 19 Cr. 131 (PAE), 2019 WL 6497504 (S.D.N.Y. Dec. 3, 2019)

........................................................................................................................... passim

*United States v. Robles*, No. 04 Cr. 1036 (GEL), 2005 WL 957338 (S.D.N.Y. Apr. 22, 2005) 111

*United States v. Rodriguez,* No. 19 Cr. 779 (AKH), 2020 WL 5819503 (S.D.N.Y. Sept. 30, 2020)

............................................................................................................................... 132

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) ............................................... 90, 108

*United States v. Rowell*, 903 F.2d 899 (2d Cir. 1990) .................................................. 73

*United States v. Rumph*, No. 23 Cr. 603 (ALC), 2024 WL 4503027 (S.D.N.Y. Oct. 16, 2024).. 84

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998)................................... 106, 108, 109

*United States v. Sampson*, 898 F.3d 270 (2d Cir. 2018).................................... 19, 20, 28

*United States v. Samsonov*, No. 07 Cr. 1198(CM), 2009 WL 176721 (S.D.N.Y. Jan. 23, 2009)

........................................................................................................................ 124, 125

*United States v. Sandalo*, 70 F.4th 77 (2d Cir. 2023) ............................................. 67, 83

*United States v. Santiago*, 174 F. Supp. 2d 16 (S.D.N.Y. 2001) ................................. 109

*United States v. Sattar*, No. 02 Cr. 0395 (JGK), 2002 WL 1836755 (S.D.N.Y. Aug. 12, 2002).....

............................................................................................................................... 116

*United States v. Schulte*, 17 Cr. 548 (PAC), 2019 WL 5287994 (S.D.N.Y. Oct. 18, 2019)....... 117

*United States v. Schwimmer*, 924 F.2d 443, 447 (2d Cir. 1991)............................... 115, 120, 121

*United States v. Scully*, 108 F. Supp. 3d 59 (E.D.N.Y. 2015) ..................................... 82

*United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027 (D. Nev. 2006)...................... 117

*United States v. Sharma*, 18 Cr. 340 (LGS), 2019 WL 3802223 (S.D.N.Y. Aug. 13, 2019)...........

.................................................................................................. 116, 117, 119, 121

*United States v. Silver*, 117 F. Supp 3d 461 (S.D.N.Y. 2015)................................................. 18, 19

*United States v. Sindone*, 01 Cr. 517(MBM), 2002 WL 48604 (S.D.N.Y. Jan. 14, 2002)......... 126

*United States v. Singh*, 390 F.3d 168 (2d Cir. 2004). .................................................... 94, 96, 100

*United States v. Slatten*, 865 F.3d 767 (D.C. Cir. 2017).............................................................. 60

*United States v. Smith*, 231 F.3d 800 (11th Cir. 2000) ............................................................... 49

*United States v. Smith*, 673 F. Supp. 3d 381 (S.D.N.Y. 2023) ............................................... 50, 54

*United States v. Spinelli*, 352 F.3d 48 (2d Cir. 2003) ............................................................... 112

*United States v. Stanley*, No. 09 Cr. 141 (NGG), 2009 WL 5066864 (E.D.N.Y. Dec. 22, 2009)

.................................................................................................................................. 106

*United States v. Starks*, 24 Cr. 126 (JLR), 2024 WL 4528169 (S.D.N.Y. Oct. 18, 2024) ......... 129

*United States v. Stein*, 429 F. Supp. 2d 633 (S.D.N.Y. 2006) ...................................................... 56

*United States v. Sterritt*, 678 F. Supp. 3d 317 (E.D.N.Y. 2023)............................................... 129

*United States v. Strawberry*, 892 F. Supp. 519 (S.D.N.Y. 1995) .............................................. 124

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ...................................................... 19, 130

*United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001)...................................................... 20, 42

*United States* v. *Taylor*, 707 F. Supp. 696 (S.D.N.Y. 1989) ................................................... 125

United *States v. Tompkins*, 118 F.4th 280 (2d Cir. 2024)............................................................ 89

*United States* v. *Torres*, 901 F.2d 205 (2d Cir. 1990) ....................................................... passim

*United States v. Tourant*, No. 22 Cr. 276 (LTS), 2023 WL 5276776 (S.D.N.Y. Aug. 15, 2023)

.......................................................................................................................... 116, 119

*United States v. Travisano*, 724 F.2d 341 (2d Cir. 1983) ............................................... 90

*United States v. Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649 (S.D.N.Y. Apr. 15, 2002) ............................................................................................................... 124

*United States* v. *Trippe*, 171 F. Supp. 2d 230 (S.D.N.Y. 2001) ................................... 125

*United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989) ................................................ 111

*United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017) ............................................ 86, 87

*United States v. Velasquez*, No. 96 Cr. 126 (JFK), 1997 WL 414132 (S.D.N.Y. July 23, 1997) ................................................................................................................. 133

*United States v. Viera*, No. 14 Cr. 83 (ER), 2015 WL 171848 (S.D.N.Y. Jan. 14, 2015).......... 132

*United States v. Viera*, No. 14 Cr. 83 (ER), 2015 WL 3833797 (S.D.N.Y. June 19, 2015)......... 51

*United States v. Vilar*, No. 05 Cr. 621 (KMK), 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) ..... 67

*United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993) ............................................ 72, 90

*United States v. Wahab*, 21 Cr. 603 (VEC), 2022 WL 17581560 (S.D.N.Y. Dec. 12, 2022) ...... 25

*United States v. Walker*, 243 F. App'x 621 (2d Cir. 2007) ...................................... 118

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) ........................................... 23, 127

*United States v. Walters*, 910 F.3d 11 (2d Cir. 2018) .......................................... 20, 23

*United States v. Waqar*, 997 F.3d 481 (2d Cir. 2021) ............................................... 41

*United States v. Washington*, No. 21-CR-603 (VEC), 2023 WL 6219203 (S.D.N.Y. Sept. 22, 2023) ...................................................................................... 109, 110, 111

*United States v. Watson*, No. 23 Cr. 82 (EK), 2024 WL 1858199 (E.D.N.Y. Apr. 29, 2024) 50, 54

*United States v. Webster*, No. 3:06-cr-0096-HRH, 2007 WL 9821416, (D. Alaska Nov. 27, 2007) ................................................................................................................. 44

*United States v. Wedd*, 993 F.3d 104 (2d Cir. 2021) ............................... 20, 24, 27, 34

*United States v. Wedd*, No. 15 Cr. 616 (KBF), 2016 WL 1055737 (S.D.N.Y. Mar. 10, 2016) . 128

*United States v. Weissman*, No. 94-CR-760-CSH, 1996 WL 751386 (S.D.N.Y. Dec. 26, 1996)

.......................................................................................................................................... 116

*United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017) ...................................... 88

*United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ......... 19

*United States v. Wharton*, 320 F.3d 526 (5th Cir. 2003) ............................................ 58

*United States v. Whyte*, 630 Fed. Appx. 104 (2d Cir. 2015).................................. 19, 33

*United States v. Williams*, 504 U.S. 36 (1992) .......................................................... 27

*United States v. Wydermyer*, 51 F.3d 319 (2d Cir. 1995) ........................................... 32

*Wayte v. United States*, 470 U.S. 598 (1985)................................................. 47, 48, 52

*Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000) ........................................................... 83

*Zafiro v. United States*, 506 U.S. 534 (1993)................................... 107, 108, 109, 111

## STATUTES

18 U.S.C. § 1591 .................................................................................... 21, 35, 42, 45

18 U.S.C. § 1594 .................................................................................................... 24

18 U.S.C. § 1958 .................................................................................................... 92

18 U.S.C. § 1961 .................................................................................................... 91

18 U.S.C. § 2422 ................................................................................................ 45, 92

18 U.S.C. § 2423 .................................................................................................... 93

18 U.S.C. § 3238 .................................................................................................... 56

18 U.S.C. § 3299 .................................................................................................... 24

## OTHER AUTHORITIES

Fifth Superseding Indictment, *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y

    2022). ................................................................................................................. 31

Indictment, *United States v. Faison*, 07 Cr. 700 (SJF), (E.D.N.Y. 2007). .................................. 31

Indictment, *United States v. Kelly*, 19 Cr. 286 (AMD) (E.D.N.Y. 2019)..................................... 40

## RULES

Fed. R. Crim. P. 12 ................................................................................................ 16, 56

Fed. R. Crim. P. 6 ........................................................................................ 60, 61, 122

Fed. R. Crim. P. 7(c)(1) ..................................................................................... 18, 123

Fed. R. Crim. P. 7(f); .............................................................................................. 123

Fed. R. Crim. P. 8 ..................................................................................................... 107

Fed. R. Evid. 413 ....................................................................................................... 93

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. IV ................................................................................................ 65

U.S. Const. amend. VI ............................................................................................... 115

U.S. Const. amend. X.................................................................................................. 45

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the motions of defendants Alon, Oren, and Tal Alexander to (i) dismiss the indictment and/or individual counts of the Indictment;[1] (ii) suppress evidence seized during the execution of search warrants; (iii) prevent victims from making in-court identifications of the defendants; (iv) sever Oren Alexander's trial from his co-defendants'; (v) obtain an evidentiary hearing based on alleged violations of attorney-client privilege; (vi) compel a bill of particulars; and (vii) compel production of alleged *Brady* material. The defendants are not entitled to the relief they seek, and their motions should be denied.

## ARGUMENT

### I.    THE MOTIONS TO DISMISS ONE OR MORE COUNTS IN THE INDICTMENT SHOULD BE DENIED.

#### A.    The Defendants Have Failed to Allege that Any Count In the Indictment Fails State A Claim or is Procedurally Deficient.

#### 1.    Background

For well over a decade, Alon Alexander, Oren Alexander, and Tal Alexander, the defendants, worked together and with others to repeatedly and violently drug, sexually assault, and rape dozens of female victims.  (Indictment at ¶ 1).

On or about May 8, 2025, a grand jury in this District returned the operative Indictment in this case.  The first five pages of the Indictment include Overview and Background sections, which detail the history of the defendants' conspiracy, the object of the conspiracy, and the means and methods by which the conspiracy was carried out.  (Indictment ¶¶ 1-6). The Indictment states that, "[s]tarting in at least in or about 2009" the defendants "operated a long-running sex trafficking

---

[1] This memorandum refers to the third superseding indictment in this case (Dkt. 86) as the "Indictment."

scheme, as part of which they raped and sexually assaulted female victims to whom they had provided material benefits, including domestic and international travel to vacation destinations, luxury accommodations at high-end hotels and vacation properties, and access to other luxury experiences and events." (*Id.* at ¶ 4). It further states that the defendants "worked together and with others to carry out and facilitate their sex trafficking scheme, including on some occasions by committing forcible rapes and sexual assaults together and with others, jointly arranging domestic and international travel and accommodations, and jointly financing the scheme." (*Id.* at ¶ 2). Finally, it states that the scheme was based in at least Manhattan, New York and Miami, Florida. (*Id.*).

The Indictment charges one or more of the defendants for one count of engaging in a conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c); five counts of committing sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1); one count of committing sex trafficking by force, fraud, or coercion or of a minor, in violation of 18 U.S.C. §§ 1591(a), (b)(1), and (b)(2); two counts of inducement to travel to engage in unlawful sexual activity, in violation of 18 U.S.C. §§ 2422(a) and 2; and one count of aggravated sexual abuse by force or threat or intoxicant, in violation to 18 U.S.C. § 2241(a)(1), (b)(2), 3238, 7, and 2. (*Id.* at ¶ 7).

The defendants have filed a series of motions either to dismiss the Indictment or certain counts of the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). (Dkt. 72, 76, 97, 106). Their motions argue the following:

(1)     Count One (Conspiracy to Commit Sex Trafficking) should be dismissed for failing to allege an ongoing conspiracy, alleging multiple conspiracies, failing to allege an agreement to engage in a conspiracy, failing to allege a commercial sex act, and failing to allege interstate an interstate nexus. (Dkt. 97 at 2-12).

2

(2)     The counts relating to sex trafficking—Counts One, Two, Three, Five, Six, Seven, and Eight--(the "Sex Trafficking Counts")—should be dismissed for lack of specificity.

(3)     The Sex Trafficking Counts[2] should be dismissed because the Government will not be able to provide a causal connection between the required "receipt of anything of value" and "commercial sex act" elements of 18 U.S.C. § 1591 at trial.  (Dkt. 76 at 11-17; Dkt. 97 at 11-14).

(4)     The Sex Trafficking Counts should be dismissed for failure to allege a nexus to interstate commerce.  (Dkt. 97 at 14).

(5)     The Sex Trafficking Counts should be dismissed because the government conflates the "commercial sex act" element with the "force fraud or coercion" element. (Dkt. 97 at 15-16).

(6)     Count Four (Inducement to Travel) should be dismissed for failure to state a claim. (Dkt. 72 at 2-9).

(7)     Counts Three and Four (Sex Trafficking and Inducement of Victim-2) should be dismissed for insufficient evidence.  (Dkt. 76 at 24-27).

(8)     Count Five should be dismissed as because it fails to provide adequate notice of the alleged offense. (Dkt. 106 at 1-6).

(9)     Count Five should be dismissed as duplicitous. (Dkt. 106 at 1-3, 6-8).

While their arguments are varied, each must fail for the same reason: the validity of an indictment is tested by its allegations, not an evaluation of the adequacy of the facts.  *See United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021). Each count in the Indictment (1) contains "the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and (2) "enables [the defendants] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.*; *United States v. Silver*, 117 F. Supp 3d 461, 464 (S.D.N.Y. 2015) (Caproni, J.).  This is sufficient to survive a motion to dismiss and, accordingly, the defendants' myriad motions to dismiss should be denied.

---

[2] Dkt. 97 does not indicate which counts should be dismissed based on this claim.  The Government understands the motion to refer to Counts One, Two, Three, Five, Six, Seven, and Eight.

### 2.    Applicable Law

#### i.    Sufficiency

An indictment provides sufficient notice if it alerts the defendants to the "'core of criminality' of an offense," which encompasses "the essence of a crime, in general terms." *United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012).[3]   An indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and must, for each count, "give the official or customary citation of the . . . law that the defendant is alleged to have violated."   Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient as long as it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Dawkins*, 999 F.3d at 779.   "The purpose of this requirement is to give a defendant adequate notice of the charges to permit him to plead former jeopardy upon prosecution and to enable him to prepare a defense." *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir. 1992). "The particulars of how a defendant effected the crime falls outside" of the purview of pleadings.  *D'Amelio*, 683 F.3d at 418.

"To satisfy these requirements, an indictment need do little more than track the language of the statute charged and state the time and place (*in approximate terms*) of the alleged crime." *Id*. (emphasis added). "An indictment does *not*, however, have to specify evidence or details of how the offense was committed." *United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017) (emphasis in original). The indictment need only allege the "core of criminality" the Government intends to prove at trial.  Indeed, only in "very rare cases" must

---

[3] Unless otherwise noted, quotations omit internal quotation marks, citations, and previous alterations.

an indictment specify "how a particular element of a criminal charge will be met." *United States v. Stringer*, 730 F.3d 120, 125 (2d Cir. 2013) (limiting *Russell v. United States*, 369 U.S. 749 (1962)).  A conviction "will be sustained if the evidence indicates that the statute was violated in any of the ways charged." *United States v. Whyte*, 630 Fed. Appx. 104, 108 (2d Cir. 2015).

"A defendant challenging the sufficiency of an indictment on a motion to dismiss faces a high hurdle." *Silver*, 117 F. Supp. at 464–65.  On a motion to dismiss, the Court evaluates the indictment in its entirety, *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir. 1992), and all allegations in the indictment are assumed to be true, *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).  The law is well settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charges on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).  It is not proper to weigh the sufficiency of the evidence underlying the indictment "[u]nless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial," *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009), courts do not "weigh whether certain factual allegations … [a]re consistent with the charged violations" at this stage. *Dawkins*, 999 F.3d at 780.

Indeed, "authorizing district court judges to resolve dispositive fact-based evidentiary disputes on Rule 12(b) motions risks invading 'the inviolable function of the jury' in our criminal justice system," and further risks "upset[ting] the policy choices reflected in the criminal discovery rules" by forcing the Government "to reveal its complete case before trial" in order to "overcome such motions." *United States v. Sampson*, 898 F.3d 270, 280–81 (2d Cir. 2018).  Accordingly, "a judge cannot resolve … on a Rule 12(b) motion" any "factual dispute that is inextricably intertwined with a defendant's potential culpability," *id*. at 281, as courts "do not evaluate the adequacy of the facts to satisfy the elements of the charged offense" until "after trial."  *United*

*States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021). Nor is a motion to dismiss an appropriate vehicle to judge a case based on allegedly undisputed facts; such a procedure, which is akin to "summary judgment" is not available for "a federal criminal indictment." *United States v. Aiyer*, 33 F.4th 97, 117 (2d Cir. 2022).

Accordingly, "at the indictment stage, [courts] do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. *Dawkins*, 999 F.3d at 780. Dismissal is a "drastic remedy that should be utilized with caution and only in extreme cases." *United States v. Walters*, 910 F.3d 11, 26 (2d Cir. 2018) (internal citations omitted).

### ii. Duplicity

"In a pretrial motion to dismiss a count as duplicitous, the Court considers only the indictment 'on its face.'" *United States v. Greenberg*, 21 Cr. 92 (AJN), 2022 WL 827304 at *11 (S.D.N.Y. Mar. 29, 2022); *accord United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991) ("In determining whether a trial court erred by joining multiple defendants under Rule 8(b), we focus on the indictment, not on the proof subsequently adduced at trial."). "An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Federal Rule of Criminal Procedure 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (citing *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980). "A duplicitous indictment, which alleges several offenses in the same count, must be distinguished from 'the allegation in a single count of the commission of a crime by several means.' The latter is not duplicitous." *Id.* (citations omitted) (*quoting Murray*, 618 F.2d at 896).

3.    **Discussion**

i.    **Count One Properly Pleads a Single Offense of Conspiracy to Commit Sex Trafficking**

The Court should deny the defendants' motion to dismiss Count One of the Indictment (Sex Trafficking Conspiracy) pursuant to Federal Rule of Criminal Procedure 12(b)(6). (Dkt. 97 at 2-12). The defendants argue that the charge (1) fails to allege an ongoing conspiracy, (2) improperly alleges multiple conspiracies in a single count, (3) fails to allege an ongoing agreement to engage in the conspiracy, (4) fails to allege an interstate nexus, and (5) conflates or collapses essential elements of the Indictment. (Dkt 97 at 2-12).[4]  In so doing, however, the defendants ignore the charged statutory language. Rather, the defendants argue that the Court should dismiss Count One based on their interpretation or expectation of the Government's theory at trial. But dismissal of a charging instrument pretrial has no basis where, as here, the charged offense is facially sufficient and alleges all the necessary elements.

Count One charges the defendants with a violation of 18 U.S.C. § 1594(c), which criminalizes conspiracy to commit sex trafficking as defined in 18 U.S.C. § 1591.  Section 1591, in turn, makes it a crime to (1) "recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a person" or (2) "benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in" the same conduct, while "knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …or any combination of such means will be used to cause the person to engage in a commercial sex act … will be caused to engage in a commercial sex act."

---

[4] The defendants also allege that Count One is deficient for failure to allege a commercial sex act. (Dkt. 97 at 9-14.) This argument is addressed in Section I.A.3.iii, *infra*, as it overlaps with allegations relating to the substantive sex trafficking counts.

Specifically, the statutory language of Count One states the following:

> From at least in or about 2009, up to and including at least in or about 2021, in the Southern District of New York and elsewhere, in and affecting interstate and foreign commerce, ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, the defendants, and others known and unknown, knowingly agreed to combine, conspire, confederate and agree to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit, by any means, persons, and to benefit, financially and by receiving anything of value, from participation in a venture which has engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591( e )(2), and any combination of such means, would be used to cause the persons to engage in commercial sex acts, in violation of Title 18, United States Code, Section 159l(a)(l) and (b)(l), to wit, ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, and others known and unknown, agreed to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit female victims, including but not limited to Victim-1, Victim-2, Minor Victim-3, Victim-4, Victim-5, and Victim-6 as alleged in Counts Two, Three, Five, Seven, Eight, and Nine of this Indictment respectively, knowing and in reckless disregard of the fact that force, threats of force, fraud, and coercion, would be used to cause the female victims, including but not limited to Victim-1, Victim-2, Minor Victim-3, Victim-4, Victim-5, and Victim-6, to engage in commercial sex acts.

(Indictment ¶ 7). There is no plausible dispute that Count One "track[s] the language of the statute" and gives the defendants notice of the charges against them. *Dawkins*, 999 F.3d at 779.

In fact, the Indictment goes well beyond the requirements of Rule 7 by including detailed factual allegations about the conspiracy. The Indictment alleges that "[f]or well over a decade and at all times relevant to this Indictment… the defendants[] worked together and with others known and unknown, to repeatedly and violently drug, sexually assault, and rape dozens of female victims." (Indictment ¶ 1). The Indictment further states that, "[s]tarting in at least in or about 2009" the defendants "operated a long-running sex trafficking scheme, as part of which they raped and sexually assaulted female victims to whom they had provided material benefits, including

domestic and international travel to vacation destinations, luxury accommodations at high-end hotels and vacation properties, and access to other luxury experiences and events." (*Id*. at ¶ 4). It further states that the defendants "worked together and with others to carry out and facilitate their sex trafficking scheme, including on some occasions by committing forcible rapes and sexual assaults together and with others, jointly arranging domestic and international travel and accommodations, and jointly financing the scheme." (*Id*. at ¶ 2).

This language far surpasses what is necessary. *See, e.g.*, *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (explaining that the Second Circuit has "consistently upheld indictments that do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."); *Bright v. United States*, Nos. 18 Cr. 56 (KPF), 23 Civ. 4524 (KPF), 2023 WL 716881, at *13 (S.D.N.Y. Oct. 31, 2023). ("Count One tracks the language of the relevant statute; it contains the elements of the offense; and it sufficiently informed Bright of the charge against him. This Court would have denied a motion to dismiss the charge as frivolous."); *United States v. Bankman-Fried*, 680 F. Supp. 3d 289, 304 (S.D.N.Y. 2023) ("The defendant's motion [to dismiss] is meritless, however, because each of those counts tracks the relevant statutory language and sufficiently alleges a scheme to obtain money or property.").

Each of the defendants' specific arguments confirms that the defendants have failed to meet their heavy burden to obtain the "drastic remedy" of dismissal. *Walters*, 910 F. 3d at 26.

***First***, the defendants argue that the Indictment fails to allege a conspiracy existing on an ongoing basis because "a spread-out pattern of occasional one-night sexual encounters…lack[] the essential forward-looking nature of a conspiratorial agreement." (Dkt. 97 at 3). But Rule 7 does not require that a charging document describe the "forward-looking nature of a conspiratorial agreement" or any other feature of conspiracy. The Indictment alleges that the defendants "worked

together" in committing a pattern of criminal conduct that "include[s], but [is] not limited to" six [victims] over the course of over twelve years. (Indictment at ¶¶ 5(b), 7). This is more than sufficient. Moreover, to the extent the defendants claim their conduct is multiple conspiracies instead of a single conspiracy, this is an issue of fact for the jury. *Cf. United States v. Aracri*, 968 F.2d 1512, 1519 (2d Cir. 1992) ("Whether the government has proved a single conspiracy or has instead proved "multiple other independent conspiracies is a question of fact for a properly instructed jury.") The Indictment's language properly alleges a conspiracy and this is sufficient to defeat the defendants' motion. *See United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998); *Wedd*, 993 F.3d at 121.

Nothing in the cases cited by the defendants—*United States v. LeCompte*, 599 F. 2d 81 (5th Cir. 1978) and *United States v. Raniere*, 55 F.4th 354 (2d Cir. 2022)—suggest otherwise. *LeCompte*, an out of circuit opinion, relates to an appeal of a RICO conspiracy conviction concerning a prostitution ring in which sex trafficking was neither a substantive charge nor a predicate offense. 599 F.2d 81 (5th Cir. 1979); *see also United States v. Clemones*, 577 F.2d 1247, 1249 n. 1 (5th Cir. 1978) (identifying other charges at the underlying trial). Setting aside the dissimilarity, *LeCompte* merely affirmed the factual findings of the jury who had convicted the defendnts—it does not hold that a court may make such a determination following a motion to dismiss. *Raniere* is also silent as to what an indictment must allege regarding an ongoing conspiracy—it merely characterizes the theory that prevailed at trial. 55 F. 4th at 364-66.

**Second**, the defendants argue that Count One is duplicitous because it alleges multiple conspiracies. (Dkt. 97 at 4-5). This is a reiteration of the defendant's argument that there is no "overarching object" in the alleged conspiracy. (*Id*.). As discussed above, this argument fails because the question of whether an indictment charges single or multiple conspiracies is a question

of fact for the jury and the Indictment is properly pled. *Aracri*, 968 F.2d at 1519; *United States v. Wahab*, 21 Cr. 603 (VEC), 2022 WL 17581560 at *6-7 (S.D.N.Y. Dec. 12, 2022).

The Indictment alleges that "[f]or well over a decade … the defendants[] worked together and with others known and unknown, to repeatedly and violently drug, sexually assault, and rape dozens of female victims." (Indictment ¶ 1).  Their scheme was ongoing and included multiple instances of sex trafficking, of which some have been charged separately as substantive counts. The defendants' multiple substantive sex trafficking offenses are evidence of their ongoing and unbroken agreement to engage in these crimes.  They do not transform the defendants' single agreement to commit sex trafficking into multiple conspiracies. *Aracri*, 968 F.2d at 1519.

***Third***, the defendants argue that Count One fails to allege an agreement between the defendants.  (Dkt. 97 at 5).  This argument ignores the language in the Indictment, which alleges that the defendants worked together to accomplish their criminal objectives.  (*See* Indictment ¶ 7 ("the defendants, and others known and unknown, knowingly agreed to. . . ); ¶ 1 ("the defendants[] worked together and with others known and unknown, to repeatedly and violently drug, sexually assault, and rape dozens of female victims"); ¶ 2 (the defendants "worked together and with others to carry out and facilitate their sex trafficking scheme, including on some occasions by committing forcible rapes and sexual assaults together and with others, jointly arranging domestic and international travel and accommodations, and jointly financing the scheme.")).  As stated above, to the extent the defendants ask this Court to look outside of the four corners of the Indictment to gauge the Government's ability to prove the offenses at trial, their argument must fail.

Even if the defendants' arguments were addressed on their merits, they would similarly fail.  For one, the defendants allege omissions from the charging language that are not, in fact, required components of a sex trafficking conspiracy charge.  For example, the defendants'

11

arguments regarding the Indictment's lack of information regarding the agreement's "structure," "organization," "financial component," or "continuing enterprise," can be easily rejected because they are simply not required aspects of the agreement. In addition, contrary to the defendants' claim, a conspiracy with multiple means of achieving criminal conduct does not defeat the existence of the agreement—it only demonstrates the depth of the criminal relationship among the co-conspirators. In short, the defendants' argument that the Indictment fails to allege an agreement should be rejected.[5]

*Fourth*, the defendants argue that "[t]here is no factual allegation that would allege interstate commercial nexus."[6] (Dkt. 97 at 14). To the extent this argument relates to requirement that the Government prove the offense was in or affecting interstate or foreign commerce, this is sufficiently alleged in the Indictment. (*See* Indictment, ¶ 7 ("From at least in or about 2009, up to and including at least in or about 2021, in the Southern District of New York and elsewhere, *in and affecting interstate and foreign commerce*….") (emphasis added). In addition, while not required, the factual allegations included in the Indictment demonstrate a variety of ways that an effect on interstate or foreign commerce can be demonstrated, including the use of drugs and domestic and international travel and accommodations. (Indictment ¶ 5(d), 6; *see, e.g., Taylor v. United States*, 570 U.S. 301, 302-304 (2016); *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007).

---

[5] The defendants also argue that the Indictment is defective because the conspiracy includes an agreement to traffic "women and girls." Specifically, the defendants allege that there cannot be a conspiracy to traffic "girls" because Oren was not charged in Count Four (sex trafficking of a minor and by force, fraud, and coercion) and the Government did not specifically allege that the defendants knew the victim was a minor before they raped her. Once again, this improperly raises the Government's burden at the pleading stage.

[6] While unclear, the defendants' use of "commercial" here seems to conflate the requirements for a nexus to interstate commerce and the requirement for a commercial sex act.

**Fifth**, the defendants argue that the Indictment conflates essential elements of a violation of 18 U.S.C. § 1591.[7]  Specifically, the defendants argue that, based on their understanding of the Government's theory of the case, the Indictment (1) conflates the elements separately requiring a "commercial sex act" and "force, fraud, and coercion" and (2) conflates the elements separately requiring a "commercial sex act" and "recruit[ment], entice[ment], harbor[], transport[], provi[sion], obtain[ment], advertise[ment], maintainment[], patroniz[ation], or solicit[ation]" of a person.  (Dkt. 97 at 15-16).

Once again, the defendants ignore the language in the Indictment and focus instead on their understanding of the Government's theory of the case by making allegations about what the defendants believe the Government will attempt to prove at trial.  "Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial," a facially valid indictment is not subject to challenge based on the quality or quantity of evidence. *Alfonso*, 143 F.3d at 776; *United States v. Williams*, 504 U.S. 36, 54-55 (1992). The defendants' arguments improperly ask this Court to "weigh whether certain factual allegations … [a]re consistent with the charged violations," a request which is entirely improper at a motion to dismiss. *Dawkins*, 999 F.3d at 780. ("[A] judge cannot resolve … on a Rule 12(b) motion" any "factual dispute that is inextricably intertwined with a defendant's potential culpability).  The time to "evaluate the adequacy of the facts to satisfy the elements of the charged offense" is "after trial." *Wedd*, 993 F.3d at 12.

In any event, the defendants are incorrect about the conflation of elements, both factually and legally.  While the defendants spill much ink discussing their view that the charged conduct is

---

[7] While not explicitly stated, the Government assumes that this argument applies to Counts One through Three and Five through Eight.

not "the paradigm sex trafficking model," they point to no case in which a court has found that a rape cannot be used to both demonstrate the use of force and as the sex act being contemplated or committed. This is because they cannot. The expansive definition of "commercial sex act" in 18 U.S.C. § 1591(e) includes "any sex act," and it would be contrary to the plain language of the statute and to reason for forcible rape to be excluded from that definition. *See Raniere*, 55 F.4th at 361. Similarly, the defendants provide no authority for their argument that the "commerce involved in the sex act" must be "*separate* from the commerce in relation to the enticement." (Dkt. 97 at 16). And as with the prior argument, this too is because it would not make sense. There is no bar to the "thing of value" on account of which the sex act occurs contributing a defendant's ability to recruit, entice, harbor etc. the victim. Finally, the defendants make these arguments based only on assumptions about the Government's case. The Government need not "reveal its complete case before trial," *Sampson*, 898 F.3d at 280-81, and at trial the Government is free to rely on theories of force, fraud, or coercion, and any combination of those improper means, as well as any of the verbs listed in the Indictment addressing the first element of the offense.

For the foregoing reasons, the defendants' motion to dismiss Count One fails and should be denied.

### ii. The Indictment Pleads Each Sex Trafficking Count with Sufficient Specificity

Next, in two motions, the defendants seek to dismiss multiple counts in the Indictment that they allege provide insufficient notice regarding the charged offenses. (Dkt. 76 at 18-24; Dkt. 97 at 16-20; Dkt. 106 at 3-6). The defendants' primary complaint across their motions is that the Sex Trafficking Counts "fail to provide any particulars" about the charged offenses. (Dkt. 76 at 20). But an indictment need not describe "the particulars of how a defendant effected" each crime charged, *D'Amelio*, 683 F.3d at 418. Each sex trafficking count "track[s] the language of the

14

statute charged and state[s] the time and place (in approximate terms) of the alleged crime."
*Dawkins*, 999 F.3d at 779. "Little more" need be done to satisfy the pleading requirements. *Id.*

Here, the Indictment does much more. It dedicates five pages to an Overview and Background section outlining of the defendants' scheme to "repeatedly and violently drug, sexually assault, and rape dozens of female victims" after "using the promise of luxury experiences, travel, and accommodations to lure and entice female victims" to different locations. (Indictment at ¶ 1). The Indictment explains that, often, the defendants "drugged their victims before assaulting them, preventing them from fighting back or escaping." (*Id.*). The defendants "induce[d] other women and girls to attend events and parties … whom one or more of the defendants later sexually assaulted." (*Id.* at ¶ 5). They provided "domestic and international travel to vacation destinations, luxury accommodations at high-end hotels and vacation properties, and access to other luxury experiences and events" in order to rape and sexually assault the women to whom they provided those benefits. (*Id.* at ¶ 4). This information provides the defendants with a clear, detailed explanation of "the essence of [their] crime[s], in general terms," and thus more than sufficiently notifies the defendants of the charges against them. *D'Amelio*, 683 F.3d at 418.

To avoid grappling with the detailed description in the Overview and Background sections, the defendants argue that each count should be viewed in isolation. First, they argue that the allegations in Overview and Background sections are disconnected to the substantive sex trafficking counts. (Dkt. 76 at 21; Dkt. 97 at 16-17). Not so. The defendants must read the Indictment "to include facts which are necessarily implied by the specific allegations made." *United States v. Murgio*, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016). Each substantive count of sex trafficking falls within the sex trafficking conspiracy. The Overview and Background sections are designed to provide the defendants with notice of the conspiracy and substantive crimes

underpinning the conspiracy that the Government will prove at trial.  When read holistically, there is more than enough information to notify the defendants of the charges.

Second, the defendants argue that the allegations "stem from vaguely stated, non-criminal acts—including attending social events, traveling domestically and internationally, and meeting women at bars, nightclubs, and on dating applications" that make it "impossible to know what acts [the defendants] need[] to defendant against at trial and properly investigate."  (Dkt. 76 at 21). Again, the defendants must read the Indictment as a whole.  Each count provides an approximate date and location of the offense, and the Indictment notifies the defendants that the sex trafficking crimes occurred when the defendants raped or sexually assaulted a woman after providing her with significant material benefits—flights, trips with luxury experiences, or free accommodations. (Indictment at ¶¶ 1-6).  This is sufficient to apprise the defendants of the charges against them.[8]

The defendants say that this is still too vague—that the temporal window in each count is simply too great a period to identify the specific instance of sex trafficking charged in the Indictment.  (*See* Dkt. 76 at 20 (listing the "broad range dates" of the sex trafficking counts, including "in or about September 2016" or "in or about May 2009"; Dkt. 97 at 18 (discussing "in or about September 2016" language in Count Three); Dkt. 106 ("in or about 2009")).  But the defendants admit that "court have upheld this level of specificity" in prior cases.  (Dkt. 76 at 20). Not only has it happened in the past, "the Second Circuit routinely upholds the 'on or about'

---

[8] In this section of the argument, the defendants also argue that Count Five improperly alleges violations of both Section 1591(a)(1) and 1591(a)(2).  (*See, e.g.*, ECF 63 ¶ 8 (alleging violation of 18 U.S.C. § 1591(a)(1) and 1591(a)(2)))."  (Dkt. 76 at 21; *see also* Dkt. 106 at 3-4 (noting that Count Five is the only count to include (a)(2)'s language in the statutory recitation)). While the Government can proceed on a theory under both (a)(1) and (a)(2) in a single count, *United States v. Corley*, 670 F. App'x 1, 5 (2d Cir. 2017), it does not intend to do so here.  The Government is not proceeding on a "venture prong" theory under Count Five.

language used to describe the window of when a violation occurred." *United States v. Maxwell*, 534 F. Supp. 3d 299, 318 (S.D.N.Y. 2021) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir. 1987)) (finding that Mann Act counts alleging a period of multiple years was "specific enough" to survive a motion to dismiss).   Courts also routinely uphold indictments that reference the approximate location of the offense.   *Maxwell*, 534 F. Supp. 3d at 318; *contra* Dkt. 76 at 20 (discussing the use of "in the Southern District of New York and elsewhere"); Dkt. 97 at 18 (same); Dkt. 106 at 4 (same)).   *See also Bankman-Fried*, 680 F. Supp. at 308 (finding that a wire fraud indictment sufficiently "state[d] the time and place of the crime in approximate terms" where the allegations specified a time frame of "at least in or about June 2022 to November 2022, in the Southern District of New York and elsewhere");[9] *United States v. Faison*, 393 Fed. Appx. 754 (2d Cir. 2010) (summary order)[10] (affirming allegation of "on or about between May 1, 2007 and July 27, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere").[11]

Finally, the defendants argue that, specifically for the sex trafficking conspiracy alleged in Count One, the discovery is "too voluminous" to notify the defendants of the specific acts in furtherance of the conspiracy beyond the substantive counts in the Indictment.   (Dkt. 76 at 22).[12]

---

[9] Fifth Superseding Indictment, *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y 2022).

[10] Indictment, *United States v. Faison*, 07 Cr. 700 (SJF), (E.D.N.Y. 2007).

[11] Faced with yet another barrier created by the law of this Circuit, defendants pivot again and argue that the sex trafficking offense charged in this case is different than other sex trafficking indictments "[they] have seen."   (Dkt. 76 at 21).   But defendants cite no authority for why sex trafficking should have different pleading requirements than any other type of federal crime, and the Court should not create one here.

[12] The defendants also allege that "[t]he Government has … failed to provide the metadata associated with many of the" documents and evidence provided by witnesses "which would shed light on relevant dates."   (Dkt. 76 at 22).   This is misleading.   The Government has worked with

But "it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *United States v. Wydermyer*, 51 F.3d 319, 325 (2d Cir. 1995). The Government has provided the "core of criminality" of the defendants' conspiracy; "[t]he particulars of how a defendant effected the crime" falls outside of the Indictment's purview. *D'Amelio*, 683 F.3d at 418.

When viewed as a whole, the defendants' remaining arguments evince the pedantry of their complaints. *Compare e.g.*, (Dkt. 76 at 27 "The Indictment fails to identify when the unlawful agreement was made") *with* (Indictment ¶ 7 "(At least in or about 2009…")); (Dkt. 76 at 27 ("The indictment fails to allege what specifically the agreement entailed) *with* (Indictment ¶ 4 ("the defendants, and others known and unknown, operated a long-running sex trafficking scheme, as part of which they raped and sexually assaulted female victims to whom they had provided material benefits, including domestic and international travel to vacation destinations, luxury accommodations at high-end hotels and vacation properties, and access to other luxury experiences and events.")).

At bottom, the defendants' demands are little more than an improper request to narrow the ways in which the Government may seek to prove their case at trial. *Stirone v. United States,* 361 U.S. 212, 215-16 (1960). 18 U.S.C. § 1591 criminalizes "recruit[ing], entic[ing], harbor[ing], transport[ing], provide[ing], obtain[ing], advertis[ing], maintain[ing], patroniz[ing], or solicit[ing] by any means a person…." The Indictment alleges that the defendants engaged in multiple of these actions to lure women to locations where they were raped or sexually assaulted. The Government is entitled to present to the jury each of the ways that the defendant violated the crime, *Whyte*, 630

---

defense counsel to provide them with any requests for additional information and has provided all the information about the referenced documents and evidence that it has in its possession.

Fed. Appx. at 108, but may only do so if it pleads each manner of violation. *United States v. Mollica,* 849 F.2d 723, 729 (2d Cir. 1988).

The Indictment fairly informs the defendants of the charges in each count and will enable them to plead an acquittal or conviction for purposes of double jeopardy. *Dawkins*, 999 F.3d at 779. The defendants' motion should be denied.

### iii. Each Sex Trafficking Count Sufficiently Pleads the Elements of Sex Trafficking and Sex Trafficking Conspiracy

Over two motions, the defendants argue that the sex trafficking counts in the Indictment should be dismissed because the Government has not alleged (1) that the victims received a thing of value (Dkt. 97 at 9-14); or (2) a causal connection between the giving or receipt of a thing of value and the sex act. (*Id*.; Dkt. 73 at 11-16). For the reasons below, these arguments should fail.

As discussed at length in Section I.A.3.i, *supra*, the Government sufficiently alleged a sex trafficking conspiracy in Count One. The substantive sex trafficking counts—Two, Three, Five, Six, Seven, Eight, and Nine—similarly "contain the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Dawkins*, 999 F.3d 779. Each count also provides "time and place (in approximate terms) of the alleged crime." *Id*. Because the statutory language for each count tracks the statute, the charges are properly alleged in the Indictment and the motions must be denied.

Indeed, although there is no requirement that the Indictment specifically describe the thing of value or causal connection relied upon by the Government, here, the Indictment went even further than tracking the statutory language and provided additional facts alleging both a thing of value and a causal connection. As to the "thing of value," the Indictment repeatedly describes items constituting "anything of value" consistent with the definition of "commercial sex act" in 18

19

U.S.C. § 1591(e).  (*See e.g.,* Indictment ¶ 1 (alleging "the promise of luxury experiences, travel and accommodations"; ¶ 2 ("domestic and international and accommodations"); ¶ 4 ("material benefits, including domestic and international travel to vacation destinations, luxury accommodations at high-end hotels and vacation properties, and access to other luxury experiences and events"); ¶ 5(c) ("material items, including travel, concert tickets, and other luxury experiences").  In addition, the Indictment includes allegations demonstrating the causal connection between the sex act and the items of value provided.  (*See e.g.,* Indictment ¶ 1 (the defendants used the promise of material benefits "to lure and entice" victims to locations in order to carry out the assaults); ¶ 5(b) (the defendants "worked together and with other men to arrange events and domestic and international trips they used as bait").  To be sure, Rule 7 does not require allegations as to these specific aspects, but some examples were provided nonetheless and further weaken the defendants' claim that the Indictment is insufficiently pled.[13]

The defendants do not deny that the Indictment includes the above-referenced language and tracks the statute.  Instead, the defendants argue about what they expect the Government will be able to prove at trial.  But, as discussed above, "a judge cannot resolve … on a Rule 12(b) motion" any "factual dispute that is inextricably intertwined with a defendant's potential culpability." *Wedd*, 993 F.3d at 121.  Put simply, the issues raised by the defendants with respect the thing of value and the causal connection between the thing of value and the sex act, are issues for the jury that have no place in the defendants' motion to dismiss.

---

[13] The Government is not representing—and need not represent—that these are the only theories of items of value or causal connection upon which the Government will rely at trial.  To the contrary, the Government is merely noting that the Indictment, which the defendants allege is insufficient under Rule 7, in fact provides more than sufficient information and detail.

Even so, the defendants are incorrect in their position.  18 U.S.C. § 1591(e)(3) defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."  The Second Circuit has instructed courts to read this provision broadly.  *See Raniere*, 55 F.4th at 361 ("[W]e observe the Congress's definition of 'commercial sex act' . . . uses the word or prefix "any" three times.  Congress's repeated use of the word 'any' in its definition of 'commercial sex act' further supports an expansive understanding of the specific phrase at issue here, 'anything of value'").  In addition, there must be "a causal connection between the sexual act and the giving or receiving of anything of value." *Raniere*, 55 F.4th at 365; *see id*. (finding a casual connection between a person's position in an organization and her assigned "slaves" to engage in sexual acts with the defendant).  However, "the TVPA contains no requirement of an explicit *quid pro quo*."  *Eckhart v. Fox News Network*, *LLC*, 20-CV-5593 (RA), 2021 WL 4124616, at *9 (S.D.N.Y. Sept. 9, 2021) *see also Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 774 (C.D. Cal. 2024) (interpreting the "on account of" language in 1591(e)(3) as "impl[ying] a causal connection between the sex act and the commercial exchange" but "not requir[ing] a bargained for exchange."); *Geiss v. Weinstein*,  383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019); *Nobel v. Weinstein*, 335 F. Supp. 3d 504, 515 (SDNY 2018). Here, the Indictment alleges that the defendants gave their victims things of value (i.e., lodging and travel accommodations) to lure the victims to locations where the defendants would then sexually assault their victims. *Raniere*, 55 F.4th at 362 (a thing of value need not have a monetary or financial component). The causal connection between the free travel and accommodations and the sex is direct and explicit: the victims received the travel and accommodations from the defendants, directly enabling the defendants to assault and rape the victims.  *Ardolf v. Weber*, 332 F.R.D. 467, 478 (S.D.N.Y. 2019) ("the thing of value can be given to or received by any person, including the victim").

The out-of-circuit district court cases cited by the defendants do not resuscitate their argument. As a threshold matter, considering these cases would require the court to engage with a factual dispute between the parties about whether the Government will be able to prove a causal connection at trial, an endeavor the Court cannot engage in at this stage. Beyond that, the defendants' fail to acknowledge that while courts often must interpret statutory provisions consistently in civil and criminal cases when evidence is presented at trial, the pleading standards between civil and criminal cases vary drastically. Accordingly, to the extent the cited cases relating to motions to dismiss can be considered at all, they offer no support to the defendants' position in this motion regarding the pleading sufficiency of a criminal indictment. *See United States v. Raniere*, 384 F. Supp. 3d 282, 302 (E.D.N.Y. Apr. 29, 2019) (denying defendant's motion to dismiss RICO count and noting that the defendant "fails to acknowledge that criminal and civil pleading standards are different, even in RICO cases") (emphasis in original).

The Indictment sufficiently alleges each of the sex trafficking counts. Accordingly, the defendants' motions to dismiss these counts should be denied.

### iv. Counts One, Three, Six, and Seven Each Fall Within the Statute of Limitations

The Court should deny the defendants' motion to dismiss Counts One and Seven as falling outside of the statute of limitations, as well as Counts Three, Six, and Seven to the extent that they rely on *Pinkerton* liability.[14] (Dkt. 97 at 20-21).

With respect to Count One, the defendants argue that it does not allege any conduct past 2016. (Dkt. 97 at 20). This is false. In support of their position, the defendants rely on the fact that the most recent substantive sex trafficking offense (Count Three) occurred in 2016. Contrary

---

[14] To the extent Alon and Tal Alexander seek to join this motion with respect to Count Five (which charges Alon and Tal, but not Oren), it should be similarly rejected.

to the defendants' claims, however, the conspiracy is not limited to the substantive counts in the Indictment.  As the Indictment alleges, the defendants' conspiracy lasted "[f]rom at least in or about 2009, up to and including at least in or about 2021, in the Southern District of New York and elsewhere…" and "include[s] but [is] not limited to" the victims listed in the substantive counts.  (Indictment ¶ 7).  As discussed at length above, this is sufficient to satisfy the requirements of Federal Rule of Criminal Procedure 7(c).  *Dawkins*, 999 F.3d at 779 ("To satisfy [the requirements of Rule 7(c)], an indictment need do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") *Alfonso*, 143 F.3d at 776 ("[u]nless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial," a facially valid indictment is not subject to challenge based on the quality or quantity of evidence).

Finally, the defendants also argue, without citing a single case or developing their argument, that the Court should dismiss any other substantive sex trafficking count that includes more than one defendant to the extent that the defendants' guilt relies on *Pinkerton* liability. Without more, the Government cannot adequately respond to this argument, but notes that, pursuant to 18 U.S.C. § 3299, the sex trafficking statute (18 U.S.C. § 1591) does not impose a statute of limitation for the alleged conduct and that Pinkerton liability, to the extent relied upon at trial, would not alter that conclusion.

The defendants argue that Count Seven of the Indictment (charging sex trafficking and attempted sex trafficking of Victim-5) should be dismissed as time barred because 18 U.S.C. § 1594(a), which mandates punishment for attempt "in the same manner as a completed violation" of Section 1591, is not one of the statutes enumerated in 18 U.S.C. § 3299.  That argument should be rejected.  As an initial matter, the attempt charges in *United States v. Gibbs*, 23-cr-25 (MN),

23

2024 WL 1198055 (D. Del. March 20, 2024) were not dismissed based on any finding by the Court regarding the proper statute of limitations for attempted sex trafficking. To the contrary, they were dismissed by the Government "to simplify the pre-trial arguments and the charges at trial." *See Gibbs*, 23-cr-25, Dkt. No. 88 at 5. In fact, the Government is not aware of any court concluding that that statute of limitations for attempted sex trafficking is five years and the defendants cite to none.

The statute of limitations for attempted sex trafficking should mirror the statute of limitations for the completed crime of sex trafficking, which has no limitation. 18 U.S.C. § 3299. (offenses under Section 1591 can be "instituted at any time without limitation."). This, along with the substantial penalties imposed for violations of the statute, reflect Congress's view of the seriousness of the offense conduct. Moreover, Congress has made clear its view that attempted sex trafficking is equally serious as a completed act of sex trafficking through 18 U.S.C. § 1594(a). Section 1594(a) merely ensures that individuals who attempt sex trafficking are "punishable in the same manner" as those who complete the crime.

Comparing Section 1594(a) to Section 1594(c) is instructive. In 18 U.S.C. § 1594(c), Congress codified sex trafficking conspiracy, which requires the separate element of an agreement, as a separate crime. Accordingly, because Section 1594(c) is not enumerated in 18 U.S.C. § 3299, the Government does not dispute that the proper statute of limitations for sex trafficking conspiracy is five years. By contrast, Section 1594(a) provides an alternative theory of liability for Section 1591. Therefore, it is more appropriate to apply the statute of limitations for the underlying offense. *See Davis v. United States*, No. 09 Cr. 390 (NAM), 2021 WL 8533103, at *6 (N.D.N.Y. Sept. 29, 2021) ("In contrast with conspiracy, attempt and aiding and abetting are not distinct substantive

crimes but rather theories of liability which put the defendant on the hook for the underlying offense."), *aff'd*, No. 21-2471-PR, 2024 WL 980637 (2d Cir. Mar. 7, 2024).[15]

For the reasons set forth above, the defendants' motion to dismiss any of the sex trafficking counts as falling outside of the statute of limitations should be dismissed.

> ### v. Count Four Properly Pleads Inducement to Travel to Engage in Unlawful Sexual Activity

The defendants argue that Count Four (Inducement to Travel to Engage in Unlawful Sexual Activity, 18 US.C. § 2422(a)) should be dismissed because the Indictment does not allege a requirement "that there be pre-travel persuasion to engage in *illegal* sexual activity," which the defendants ask the Court to read into the statute. (Dkt. 72 at 6). This argument has been expressly rejected by Second Circuit precedent and the Indictment as pled is sufficient. A victim's intent is not relevant to inquiry of whether a defendant violated 18 U.S.C. § 2422(a). *United States v. Kelly*, 128 F.4th 387, 414 (2d Cir. 2025). Accordingly, this motion should be denied.

Count Four adequately pleads each element of a violation of 18 U.S.C. § 2422(a). It states that the defendants "knowingly persuaded, induced, enticed, and coerced an individual to travel in interstate and foreign commerce"; that the victim "travel[ed] from Illinois to New York"; and that the defendants acted "to engage in sexual activity for which a person can be charged with a criminal offense, and attempted, aided and abetted, and willfully caused the same." (Indictment ¶ 12). In other words, Count Four "track[s] the language of the statute charged." *Dawkins*, 999 F.3d at 779.

---

[15] Courts have found that the statute of limitations for aiding and abetting liability is that of the underlying substantive offense. *United States v. Campbell*, 426 F.2d 547, 553 (2d Cir. 1970) (holding that six-year statute of limitations for substantive offense applies to aiding and abetting under 18 U.S.C. § 2); *United States v. Rabhan*, 540 F.3d 344, 351 (5th Cir. 2008) (holding that ten-year statute of limitations for substantive offense applies to aiding and abetting under 18 U.S.C. § 2).

The defendants' argument ignores the statute's language to create a new element: that the victim must travel with the knowledge that she will engage in criminal activity. Tellingly, the defendants do not cite a single case in support of this reading. Nor can they, as it directly contradicts established precedent in this Circuit as set forth in *United States v. Kelly*, 128 F.4th 387, 414 (2d Cir. 2025). As the Second Circuit stated in *Kelly*, "to determine whether the defendant had the requisite intent under § 2422(a) … the jury need only consider whether the defendant 'intended to induce, persuade, and/or entice' the victim to travel to engage in illegal sexual conduct with him.'" 128 F.4th at 413. "The victims' intent … is not relevant" to whether the defendant intended to coerce, induce, or entice the victim to travel to engage in unlawful activity. *Id*. at 414. "Indeed, [the Circuit has] explicitly rejected an approach to § 2422 that 'moves the locus of the offense conduct from the intent and actions of the would-be persuader to the effect of his words and deeds on his would-be victim.'" *Id*.

In *Kelly*, the defendant was charged in multiple counts of coercing and inducing victims to travel and then "having unprotected sexual intercourse with [his victim] without first informing [the victim] that he had contracted herpes and obtaining her consent to sexual intercourse in [those] circumstances." (*See, e.g.*, Indictment, *United States v. Kelly*, 19 Cr. 286 (AMD) (E.D.N.Y. 2019)). The victims of Kelly's actions could not have known or consented to the charged unlawful sexual activity. Also, at least one victim (referred to as Jane) originally travelled to meet the defendant in his studio because she had been promised an audition with him to be an R&B singer. *Kelly*, 128 F.4th at 405. Like the victims in this case, the victims in *Kelly* could not have travelled with the knowledge that she would engage in the specific criminal activity. That is precisely why this Circuit has repeatedly held that the victims' intention is not an element—it only the defendants' intent that matters. *Id*. at 413-414; *see also United States v. Waqar*, 997 F.3d 481,

487-88 (2d Cir. 2021) (describing intent under § 2422(b), which uses language identical to that in § 2422(a)).

The defendants' motion improperly attempts to create an additional element that is not present in the statutory language. This Circuit has rejected their theory. Accordingly, the defendants' motion must be denied.

### vi. Counts Three and Four Cannot be Dismissed Based on Arguments of Evidentiary Sufficiency at a Motion to Dismiss

In their final argument, counsel for Tal Alexander moves to dismiss Counts Three and Four for lack of sufficient evidence. (Dkt. 76 at 24-27). Like similar arguments made above, this argument fails because a motion to dismiss is not the forum to litigate disputes of fact or the sufficiency of evidence—that is a matter for trial. *Dawkins*, 999 F.3d at 780 (Courts do not "weigh whether certain factual allegations … [a]re consistent with the charged violations" at this stage).

In a tacit acknowledgment of this fact, the defendant tries to claim that "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial" by pointing to the Indictment, the Government's detention letter and the multiple pretrial detention hearings in this case. (Dkt. 76 at 24-25.) The defendants' claim is false—the Government has described the conduct underlying Counts Three and Four only insofar it related to the question of the defendants' dangerousness or his risk of flight.[16] The question of the sufficiency of the evidence against Tal Alexander is a question for the jury, and the Court should reject the

---

[16] Notably, despite citing the Government's detention letter (Dkt. 4), Tal Alexander omits the references found within that letter that cite text messages between Tal and his co-defendants in which the three agree to share the cost of the flights for Victim-2 and Individual-1 so that they can "try to orgy [them] out." (Dkt. 4 at 4). In the thread, Tal agrees to the plan by saying "For sure," "Last weekend," and "throw it up." (*Id*.). These messages alone show that Tal "persuaded, induced, and enticed Victim-2 to travel from Illinois to New York, so [the defendants] could engage and attempt to engage in unlawful sexual activity with" the victim.

defendant's effort to have it usurp the role of the jury in the case pretrial. Accordingly, this motion should be denied.

### vii.    Count Five is Properly Pled.

In their primary motion to dismiss Count Five, the defendants argue that Count Five (1) fails to state a claim or provide the defendants adequate notice, pursuant to Federal Rule of Criminal Procedure 12(b)(6) (Dkt. 106 at 3-6); and (2) is duplicitous, in violation of the Fifth Amendment. (*Id.* at 6-8). The defendants' first argument is addressed above in Sections I(a)(3)(i)-(iii), *supra*, and should be denied for the reasons stated therein. With respect to their second argument, Count Five is not duplicitous because it does not charge multiple crimes; rather, it charges "the commission of a [single] crime by several means." *Sturdivant*, 244 F.3d at 75.

Section 1591(b) provides for two levels of punishment for the crimes described in Section 1591(a). Under subsection (b)(1), the defendants are subject to a mandatory minimum prison term of 15 years if they used force, fraud, or coercion to cause the victim to engage in a commercial sex act. 18 U.S.C. § 1591(b)(1). Under subsection (b)(2), the defendants are subject only to a mandatory minimum prison term of 10 years if the victim was between 14 and 18 years of age. 18 U.S.C. § 1591(b)(1). However, under either theory, the Government must prove that a defendant "recruit[ted], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed]" a person who "engaged in [the] commercial sex act." 18 U.S.C. § 1591(a)(1).[17]

Count Five charges that Alon and Tal Alexander, in violation of 18 U.S.C. §§ 2, 1591(a), (b)(1), and (b)(2):

> recruited, enticed, harbored, transported, provided, obtained, and
> maintained, and aided and abetted, and willfully caused the

---

[17] Subsection (a)(2) is not relevant here because the Government is not proceeding on that theory.

> recruitment, enticement, harboring, transportation, obtaining, and maintaining of, Minor Victim-3, and caused Minor Victim-3 to engage in at least one commercial sex act, knowing and in reckless disregard of the fact that (i) force, threats of force, fraud and coercion would be used to cause Minor Victim-3 to engage in the commercial sex act, and (ii) having had a reasonable opportunity to observe Minor Victim-3, that Minor Victim-3 had not yet attained the age of 18 years and would be caused to engage in a commercial sex act.

(Indictment ¶ 11). This count charges a single crime (the "recruitment, …[etc.]" of Minor Victim-3 to engage in a commercial sex act) in two ways: (1) knowing and in reckless disregarding of the fact that force, threats of force, fraud and coercion would be used against Minor Victim-3 and (2) having had a reasonable opportunity to observe Minor Victim-3, that Minor Victim-3 had not yet attained the age of 18 years. This is entirely permissible.[18]

Courts within this jurisdiction routinely uphold indictment that charge multiple means of committing the offense. *See Corley*, 679 F. App'x at 5 (upholding Section 1591 indictment charging both means and methods in subsections (a)(1) and (a)(2)). For example, *United States v. Powell*, prosecutors charged the defendant in one count with violating § 1591(a)(1), citing both force, fraud, and coercion (§ 1591(b)(1)) and the victims' statuses as minors (§ 1591(b)(2)). *See* No. 04 Cr. 885, 2006 WL 1155947, at *1–2 (N.D. Ill. Apr. 28, 2006); Superseding Indictment, *United States v. Powell*, No. 04 cr 885, 2005 WL 6345121 (N.D. Ill. Feb. 17, 2005). The court found that the charges represented alternative means of proving a single offense and therefore

---

[18] Because the charged offense is the recruitment, enticement, etc. of Minor Victim-3 to engage in a commercial sex act, not the completion of a commercial sex act, the defendants' focus on the Indictment's allegation that the defendants "caused Minor Victim-3 to engage in *at least one* commercial sex act" wrongly is focused on the evidence the Government will use to prove the offense and not the elements of the offense itself. (*See* Dkt. 106 at 4-7).

presented no duplicity issues when asserted together in a single count.[19] *Powell*, 2006 WL 1155947, at *1. *See also United States v. Webster*, No. 3:06-cr-0096-HRH, 2007 WL 9821416, at *1–2 (D. Alaska Nov. 27, 2007) (upholding counts charging conjunctively both sex trafficking of minors and sex trafficking by force, fraud, or coercion). Accordingly, the defendants' motion should be denied.

### B.    The Defendants' Motion to Dismiss the Indictment as a Violation of the Tenth Amendment Should Be Denied.

Next, the defendants ask this Court to dismiss the Indictment as a violation of the Tenth Amendment. (Dkt. 95). To do so, the defendants minimize the scope and breadth of their multi-year, multi-jurisdictional scheme to entice women to travel in interstate commerce or otherwise affect interstate commerce to get their victims to locations where they were forcibly raped or sexually assaulted into, as they describe it, "date and party rape assault" and "social-context sexual assault" (Dkt. 95 at 2, 6) that this court should consider to be "purely local crime[s]." (*Id*. at 8). But the Indictment does not charge the defendants with "date rape" or "social-context" sexual assault—it charges them with a conspiracy to engage in sex trafficking and, between the three of them, at least six substantively charged instances of sex trafficking. This motion should be denied. Congress explicitly authorized the Trafficking Victims Protection Act to broadly prosecute this conduct and had the power to do so.

The defendants do not appear to suggest that Congress does not have the power to criminalize sex trafficking *generally* or that the passage of Section 1591 is an overextension of

---

[19] To the extent unanimity is required between the two means alleged in Count Five, a special verdict form can be used. *United States v. Paul*, 885 F.3d 1099, 1102-03 (8th Cir. 2018).

Congress's regulatory power. Nor could they. Only "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States…." U.S. Const. amend. X. Congress authorized Section 1591 using its powers pursuant to the Commerce Clause, which gives Congress the power to regulate "channels" and "instrumentalities" of interstate commerce, and "activities having a substantial relation to interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995). *See also* 18 U.S.C. § 1591(a)(1) (criminalizing sex trafficking by force, fraud, or coercion where a defendant "knowingly *in or affecting interstate or foreign commerce* ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person...") (emphasis added).

Instead, the defendants argue that they believe that Congress did not mean to regulate *their* crimes; and that *their* conduct is a "matter[] Congress left to the states." (Dkt. 95 at 1). Not so. Section 1591 authorizes the prosecution of a specific set of conduct, which the Second Circuit has instructed courts to read broadly. *See Raniere*, 55 F.4th at 361 ("[W]e observe the Congress's definition of 'commercial sex act' . . . uses the word or prefix "any" three times. Congress's repeated use of the word 'any' in its definition of 'commercial sex act' further supports an expansive understanding of the specific phrase at issue here, 'anything of value'"). As explained in Sections II(A)(3)(iii), *supra*, the defendants' conduct satisfies the elements of this crime.[20]

Congress has the power to authorize prosecution of the crimes identified Section 1591. The Indictment sufficiently alleges multiple violations of Section 1591 and, by extension, Section

---

[20] In two sentences, the defendants also ask the Court to dismiss Counts Four and Ten by stating that Congress didn't intend to criminalize "a woman tak[ing] a train from New York to New Jersey" where she is thereafter raped. (Dkt. 95 at 10). Not only is this false, it flies directly in the face of the exact words of the statute. *See* 18 U.S.C. § 2422 (criminalizing "whoever entices…an individual to travel in interstate…commerce…to engage in sexual activity for which any person can be charged for a criminal offense," which includes rape). In any event, for the same reasons discussed above, Counts Four and Ten do not violate the Tenth Amendment.

1594. *See generally* Section II(A)(3), *supra*. The Constitution thus does not require Congress to leave the defendants' crimes to the states and, as alleged, Congress did not choose to do so either. That is all that is required to defeat the defendants' Tenth Amendment claim. To the extent the defendants do not believe that the Government can establish each element of each count, that is what trials are for. But it is not a basis for a motion to dismiss.

### C. The Defendants' Motion to Dismiss the Indictment Based on Unfounded Allegations of Selective Prosecution Should Be Denied.

For similar reasons, the Court also should deny the defendants' motion to dismiss the indictment for supposed selective prosecution. Once again, the defendants attempt to recast their long-running sex trafficking conspiracy as "date rape," "party rape," and "social-context party rape" (Dkt. 95 at 12-13), here in service of an argument that the Government's decision to bring the charges in the Indictment "reflect[] a pattern of discrimination by the [U.S. Attorney's Office] against those with wealth or status." (*Id.* at 13). This is nonsense and should be swiftly rejected.

The defendants' accusations are meritless, false, and in any event fall far short of the rigorous standard required to make out a *prima facie* case of selective prosecution. The defendants were not charged because they were wealthy or prominent in their fields—they were charged because engaged in sex trafficking, induced victims to travel to engage in unlawful activity, and engaged in aggravated sex assault. This motion also should be denied.

### 1. Applicable Law

A defendant challenging the Government's decision to prosecute him bears a heavy burden. *United States v. Armstrong*, 517 U.S. 456, 463-64 (1996). Federal prosecutors "retain broad discretion to enforce the Nation's criminal laws." *Id.* at 464 (internal quotation marks omitted). "As a result, '[t]he presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their

official duties.'" *Id.* (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)); *see also, e.g.*, *Wayte v. United States*, 470 U.S. 598, 607 (1985).

Importantly, "[a] selective prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463.  To establish a claim of selective prosecution, a defendant must present "clear evidence" that the decision to prosecute not only (1) "had a discriminatory effect" but was also (2) "motivated by a discriminatory purpose." *Id.* at 465 (quoting *Chem. Found.*, 272 U.S. at 14-15; *Wayte*, 470 U.S. at 608); *see also United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003); *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992); *United States v. Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983).  When articulating this test, the Supreme Court has "taken great pains to explain that the standard [to establish selective prosecution] is a demanding one." *Armstrong*, 517 U.S. at 463.

With respect to the first of the two required prongs (*i.e.*, discriminatory effect), a defendant must establish that "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [the defendant]" and that the defendant "has been singled out" in his case.  *Fares*, 978 F.2d at 59 (quoting *Moon*, 718 F.2d at 1229) (brackets in original).

With respect to the second of the two required prongs (*i.e.*, discriminatory purpose), a defendant must establish that the Government's "selection of [the defendant] for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Id.* (internal quotation marks omitted) (quoting *Moon*, 718 F.2d at 1229) (brackets in original).  This means more than that the Government acted with an "awareness of consequences." *Wayte*, 470 U.S. at 610 (quoting

33

*Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).  Rather, it must have "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group."  *Id.* (internal quotation marks omitted).  Where a defendant "has not shown that the Government prosecuted him *because of*" his protected status or conduct, his claim fails.  *Id.* (emphasis in original).

Consistent with the presumption of regularity, the Supreme Court has explained that "the showing necessary to obtain discovery" in support of a selective prosecution claim "should itself be a significant barrier."  *Armstrong*, 517 U.S. at 464.  A defendant must meet a "rigorous standard for discovery in aid of such a claim," *id.* at 468, because "the decision to prosecute is particularly ill-suited to judicial review," and "[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy," *Wayte*, 470 U.S. at 607.  To obtain discovery, a defendant accordingly first "must show some evidence of both discriminatory effect and discriminatory intent." *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam); *see also Fares*, 978 F.2d at 59 (same).  "Mere assertions and generalized proffers on information and belief are insufficient" to meet this burden.  *Fares*, 978 F.2d at 59.

## 2. Discussion

The defendants fail to meet either prong of the required standard to support a claim of selective prosecution.  Because the defendant offers nothing more than conjecture, the motion should be denied.

### i.    The Defendants Fail to Show That Similarly Situated Individuals Were Not Prosecuted

With respect to the first required prong, the defendants must show evidence that "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against" him. *Fares*, 978 F.2d at 59. "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) (citing *Armstrong*, 517 U.S. at 465); *see also, e.g.*, *United States v. Smith*, 231 F.3d 800, 811 (11th Cir. 2000) (defendant "must establish that the government could prove beyond a reasonable doubt that someone else had engaged in the same type of conduct, committing the same crime in that or substantially the same manner"); *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) ("[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them.").

Here, the defendants have not identified a single similarly situated individual who was not prosecuted for purposes of their selective prosecution claim. Instead, the defendant relies exclusively on statistics related to the national frequency of "social context party and date rape" and intimate partner violence. (Dkt. 95 at 12). This is insufficient. *Armstrong*, 517 U.S. at 470; *Bass*, 536 U.S. at 863 ("Even assuming that the *Armstrong* requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the records of the decisionmakers in respondent's case), raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants").

Moreover, information regarding conduct that is not comparable to the charged offense is inapposite. There is absolutely no evidence that any of the reported rapes in 2010 or 2019 cited

by the defendants involved a long running, sophisticated scheme to lure victims to locations using promises of material benefits before violently raping and sexually assaulting them. Because the defendants' alleged criminal conduct both involves elements not found in typical "date rape," they have to identify any similarly situated individuals who were not charged. This too is fatal to their claim. *United States v. Parnas*, No. 19 Cr. 725 (JPO), 2021 WL 2981567, at *7 (S.D.N.Y. July 14, 2021) (defendant raising selective prosecution claim must show "that individuals outside the protected class committed roughly the same crime in roughly the same circumstances but were not prosecuted"); *Avenatti*, 433 F. Supp. 3d at 573 (denying selective prosecution motion where uncharged individual cited in defendant's motion was not similarly situated); *United States v. Smith*, 673 F. Supp. 3d 381, 405 (S.D.N.Y. 2023) (same).

Setting aside that the defendants have failed to establish that wealth is a protected class at all, *see infra* at 36, the defendants' cursory overview of rape statistics insufficiently identifies offenders "outside of the protected class." They have thus failed to identify "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against" them. *Fares*, 978 F.2d at 59. The defendants rely on "reported [rapes] to law enforcement" and "report[ed]" rapes by acquaintances. (Dkt. 95 at 12). Such "hearsay" and "anecdotal evidence" are insufficient to meet a defendant's burden even to obtain discovery on a selective prosecution claim. *Armstrong*, 517 U.S. at 470; *see also United States v. Watson*, No. 23 Cr. 82 (EK), 2024 WL 1858199, at *6 (E.D.N.Y. Apr. 29, 2024) ("The anecdotal selection of these individuals, among the millions in the Eastern District of New York, is not sufficient to demonstrate a discriminatory effect."). The defendant cannot meet his burden on a selective prosecution claim merely by making unsupported allegations about unidentified individuals and claiming that they should have been prosecuted too. *United States v. Hommosany*, 208 F.3d 204,

2000 WL 254050, at *2 (2d Cir. 2000) (unpublished table decision) ("In the absence of evidence demonstrating how many individuals the Southern District of New York prosecutor knowingly failed to prosecute, we cannot say that the District Court exceeded its allowable discretion in finding that [the defendant] did not present 'some evidence' of having been singled out."). The defendants fail to cite even a single case in which a court has ordered discovery on selective prosecution claims based on such tenuous allegations, and the Government is aware of none. The defendants have failed to offer any evidence whatsoever of a similarly situated individual to demonstrate discriminatory effect, and their motion should be denied on that basis alone.

### ii.    The Defendants Fail to Show Discriminatory Purpose

If the Court were to assume *arguendo* that the defendants had made a showing of discriminatory effect, the motion still fails on the second prong because the defendants cannot present any credible evidence that would suggest, let alone establish, that the Indictment resulted from any discriminatory purpose.

To show a discriminatory purpose, the defendants must have been selected for prosecution based on "such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Fares*, 978 F.2d at 59 (quoting *Moon*, 718 F.2d at 1229). To prevail on their claims, the defendants must show more than "discriminatory conduct" generally; they must demonstrate that the Government "in *his* case acted with discriminatory purpose." *United States v. Garcia-Pena*, No. 17 Cr. 363 (GBD), 2018 WL 6985220, at *6 (S.D.N.Y. Dec. 19, 2018) (emphasis in original) (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)); *see also United States v. Lamar*, No. 14 Cr. 726 (PGG), 2015 WL 4720282, at *6 (S.D.N.Y. Aug. 7, 2015); *United States v. Viera*, No. 14 Cr. 83 (ER), 2015 WL 3833797, at *4 (S.D.N.Y. June 19, 2015).

As a preliminary matter, the defendants' argument rests on the assertion that the Government brought the charges in the Indictment "to pursue a[n] anti-wealth agenda." (Dkt. 95

at 14).  This is false, but regardless, the motion fails because the defendants failed to make even a cursory a showing that wealth is an impermissible consideration that can support a selective prosecution defense.  It is not enough that the Government brought a claim against some defendants and not others—the defendant must establish that the "selection of [the defendant] for prosecution has been invidious or in bad faith, i.e., *based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.*"  *Fares*, 978 F.2d at 59 (internal quotation marks omitted) (quoting *Moon*, 718 F.2d at 1229) (emphasis added).

Contrary to the defendants' repeated assertions (Dkt. 95 at 11-14; 25-222, Appellant Brief, *United States v. Alon Alexander et al.*, 25-222 at 60-61 (arguing that the defendants were unfairly detained because of their wealth)), wealth is not a protected class. S*an Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28-29 (1973) ("this Court has never heretofore held that wealth discrimination alone" is a suspect class under the Fourteenth Amendment).  In the absence of an established impermissible consideration, this Court should defer to the Government's broad prosecutorial discretion, presume that Government "properly discharge[ing] their official duties" when seeking and securing the Indictment, and deny the defendants' motion.  *Armstrong*, 517 U.S at 464.

However, even if the defendants had established that wealth was an impermissible consideration warranting scrutiny, the defendants identify no actual "evidence," *Bass*, 536 U.S. at 863, as opposed to "[m]ere assertions," *Fares*, 978 F.2d at 59, that they was prosecuted "because of" their wealth. *Wayte*, 470 U.S. at 610.  Indeed, apart from speculation and conclusory assertions, the defendants cite *no* evidence to make that showing.

The defendants primarily argue that discriminatory purpose is demonstrated by the charging of Count Ten and a press conference held at the time of charging fare no better.  *First*,

the defendants claim, without evidence, that the Government decided to charge Count Ten only after hearing defense arguments at a bail hearing, and that this is evidence of discriminatory intent. (Dkt. 95 at 13). This is nonsensical. As the Government has previously stated, its investigation is ongoing. Developing evidence and bringing new charges when appropriate is simply the job of the prosecution. It is not evidence of any discriminatory motive on behalf of the Government. *Bass*, 536 U.S. at 863; *Fares*, 978 F.2d at 59.

*Second*, the defendants claim that a single press conference on December 11, 2024 is evidence that "the government has attacked the defendants for their wealth and high-profile status, revealing a prosecution driven by discriminatory motive rather than principles of justice." (Dkt. 95 at 13). Notwithstanding this conjecture, nothing about the announcement of charges in this case reflected an anti-wealth bias, not to mention a discriminatory purpose in bringing the Indictment. *See United States v. Avenatti*, 433 F. Supp. 3d 552, 567 (S.D.N.Y. 2020) (rejecting selective prosecution claim and noting "there is nothing unusual about the U.S. Attorney issuing a press release announcing an arrest" and that press conferences "are conducted with regularity" in this District). To the extent that the defendants' wealth was referenced during the press conference, it was in relation to the means and methods by which the defendants committed their crime and adhered to statements in both the Indictment and the detention letter filed by the Government on or about the same. *Compare*, *e.g.*, Indictment at ¶ 1(a): "The ALEXANDER BROTHERS used their wealth and positions to create and facilitate opportunities to rape and sexually assault female victims") *with* Press Conference, *Announcement in connection with the indictment of Alon Alexander,       Tal       Alexander,       and       Oren       Alexander*, https://www.youtube.com/watch?v=3Q77_xFuyN8 at 01:13 (Dec. 11, 2024) ("the defendants used their wealth and positions to create and facilitate opportunities to sexually assault women").

The rest of the defendants' claims of discriminatory intent are the subject of other pending pretrial motions that the Government responds to elsewhere.  As such, they fall squarely within the realm of "mere assertions" that the Governments intends to prove are false.  *Fares*, 978 F.2d at 59.  (*Compare* Dkt. 95 at 12-13 *and* Dkts. 82, 108, and 110 (various warrant suppression motions), Dkt. 103 (motion for hearing regarding privileged material), Dkt. 70 (motion for materials pursuant to the Jencks Act and *Giglio v. United States*, 405 U.S. 150 (1972)).

Unsurprisingly, the defendants do not cite a single case to support their suggestion that these vague accusations are sufficient to show discriminatory purpose.  Further undercutting his position, courts routinely reject speculative selective prosecution claims like the one raised in the Motion.  *See, e.g.*, *Watson*, 2024 WL 1858199, at *6-8; *Smith*, 673 F. Supp. 3d at 405; *Parnas*, 2021 WL 2981567, at *7-8; *United States v. Ephron*, No. 24 Cr. 418 (MMG), 2025 WL 524027, at *4-5 (S.D.N.Y. Feb. 18, 2025).  The defendants' unsupported accusation of discriminatory purpose by the prosecutors handling this case is simply a desperate attempt to shift the focus away from their own criminal conduct.  The defendants' own violent and abusive crimes resulted in their prosecution.  Nothing more.

### D.  The Defendants' Motion to Dismiss for Lack of Venue Should Be Denied

#### 1.  Background

On or about December 11, 2024, a grand jury in this District indicted the defendants for one count of engaging in a conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c) and two counts of committing sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1) (the "first superseding indictment").  (Dkt. 3).

On or about May 8, 2025, a different grand jury returned a second superseding indictment charging the defendants with the same counts as the first superseding indictment, along with four

additional counts of sex trafficking by force, fraud, or coercion[21] and two counts of inducement to travel to engage in unlawful sexual activity, in violation of 18 U.S.C. §§ 2422(a) and 2. (Dkt. 63).

On the same day, the same grand jury that returned the second superseding indictment also returned the "Indictment." (Dkt. 86). The Indictment contains the same charges as the second superseding indictment and one additional count, Count Ten, which charges Alon and Oren Alexander with aggravated sexual abuse by force or threat or intoxicant, committed in the special maritime jurisdiction of the United States, in violation of 18 U.S.C. §§ 2241(a)(1), (b)(2), 3238, 7, and 2. (Indictment ¶¶ 8–16). The Indictment was filed under seal pending the defendants' arrest on the charge in Count Ten. The Government also secured arrest warrants for Oren and Alon Alexander in relation to the new charge on or about the same day.

Arraignment for the second superseding indictment was scheduled June 10, 2025, in front of the duty magistrate judge, the Honorable Sarah Netburn, to accommodate the schedules of Florida-based defense counsel. (*See* Dkts. 65, 66). The Government proposed an earlier arraignment. (*See* Dkt. 99 at 4). On June 10, 2025, after the defendants arrived at the courthouse, law enforcement officers working for the Federal Bureau of Investigation executed the arrest warrants for both Oren and Alon Alexander. As is standard practice for arrest warrants and sealed indictments, defense counsel were not made aware of the arrest warrants or the Indictment prior to the execution of the arrest and the unsealing of the Indictment. The Indictment was then unsealed, defense counsel were notified, and the defendants were arraigned on the Indictment that afternoon.

---

[21] Count Five also charges Alon and Tal with sex trafficking of a minor.

### 2.    Applicable Law

The Government must prove that venue is proper by a preponderance of evidence. *See United States v. Naranjo*, 14 F.3d 145, 146 (2d Cir. 1994). Where venue is challenged on a pre-trial motion to dismiss, the government's burden is limited to showing that the indictment alleges facts sufficient to support venue. Fed. R. Crim. P. 12(b)(3)(A)(i); *see Bankman-Fried*, 680 F. Supp. 3d at 314-15; *United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005); *United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010). "At this stage in the proceedings, the Government need only allege with specificity that the charged acts support venue in this district, and the Court assumes as true the allegations in the Indictment." *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *16 (S.D.N.Y. Dec. 11, 2017). Courts in this District have recognized that "as long as the indictment alleges venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied." *United States v. Stein*, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006); *see also United States v. Milton*, No. 21 Cr. 478 (ER), 2021 WL 5304328, at *3 (S.D.N.Y. Nov. 15, 2021). "The question of whether there is sufficient evidence to support venue is appropriately left for trial." *Ohle*, 678 F. Supp. 2d at 231.

In relevant part, 18 U.S.C. § 3238 provides that "[t]he trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought." The "first brought" prong of this venue provision applies only to defendants extradited to the United States while already in custody. *See United States v. Catino*, 735 F.2d 718, 724 (2d Cir. 1984). The "arrested" prong provides for venue in the district "where the defendant is first restrained of his liberty *in connection with the offense charged.*" *Id.* (emphasis in original).

42

### 3.    Discussion

As a starting point, no differently than the defendants' other motions to dismiss the Indictment, the Court can deny this motion because the Indictment is facially valid and properly alleges venue.[22] *See Bankman-Fried*, 680 F. Supp. 3d at 314-15. Whether the Government can carry its burden to prove venue at the preponderance of the evidence standard must be left for trial. *Id.*

But even as to the merits of their arguments, the defendants are still wrong. The defendants do not contest the basic fact that, in the defendants' terms, "a delivery to the defendants of warrants related to the Third Superseding Indictment occurred in the courthouse," in Manhattan on June 10, 2025. (Dkt. 99 at 7). Until that moment—which was the moment the defendants were arrested on Count Ten—the defendants had not been held in custody in connection with Count Ten, which was contained only in an indictment that was until then sealed. Contrary to the defendants' alternative theories that they had been arrested for that offense in Miami in December or were arrested in Brooklyn that morning when coming to court, (*see* Dkt. 99 at 10-12 & n.4) the defendants had not been previously arrested or restrained based on arrest warrants that had not been executed, for charges that remained sealed, and for which the defendants had never appeared in court. The courthouse arrest on June 10, 2025 was the moment when the defendants were "first restrained of [their] liberty *in connection with the offense charged.*" *Catino*, 735 F.2d at 724. This happened in Manhattan, and venue is therefore appropriate in this district.

---

[22] The defendants' have styled the motion as one to dismiss the Indictment rather than to dismiss Count Ten. The substantive arguments regarding venue, and even the unsupported allegations of misconduct, have no applicability beyond Count Ten. However, there is no practical difference between a motion to dismiss Count Ten only or a motion to dismiss the Indictment (which is the S3 Superseding Indictment), since the S2 Superseding Indictment is identical to it, with the exception that the S2 Superseding Indictment does not charge Count Ten.

The defendants argue that because Count Ten is properly joined for trial with the sex trafficking offenses charged in the first superseding indictment, the Court should find the arrest on that indictment was "in connection with" Count Ten and that venue is therefore proper in the Southern District of Florida. (Dkt. 99 at 10-11). But Rule 8's permissive joinder requirements for charging multiple counts in a single indictment are broader than 18 U.S.C. § 3238's venue rules. *See United States v. Wharton*, 320 F.3d 526, 536-37 (5th Cir. 2003). In *Wharton*, the defendant was charged by complaint in the Western District of Louisiana with an insurance fraud violation related to his wife's death in Haiti and was arrested in Florida. 320 F.3d 526 at 536. After he was transferred to the Western District of Louisiana, the defendant was charged with foreign murder of his wife, which relies on 18 U.S.C. § 3238 for venue. *Id.* Citing *Catino*, the Fifth Circuit found that notwithstanding the connected nature of the insurance fraud and murder charges, venue was proper in Louisiana, even with the initial arrest on the fraud charge happening in Florida. *Id.*at 536-37.

The Ninth Circuit took a broader view than the Fifth Circuit of whether a prior arrest is in connection with a future charge in *United States v. Ghanem*, 993 F.3d 1113 (9th Cir. 2021), but that also does not support the defendants here. The Ninth Circuit found that "a reasonable juror could have found it more likely than not" that a defendant's arrest in Greece was connected to the entirety of a multi-year arms trafficking scheme for which only two substantive counts had been charged at the time of arrest. *See Ghanem*, 993 F.3d at 1128-30. But such a holding, related to a potential jury finding, confirms that the defendants cannot win pretrial dismissal based on their venue arguments. And in *United States v. Hong Vo*, 978 F. Supp. 2d 49, 59-62 (D.D.C. 2013), the court found that a prior arrest for a conspiracy offense was "in connection with" a later brought substantive charge for the same conduct. But those facts are distinct from the situation here where

44

the defendants had previously been charged and arrested in a sex trafficking conspiracy, and Count Ten charges a substantive offense of aggravated sexual abuse, not of sex trafficking.

The defendants' citation to *United States v. Provoo*, 215 F.3d 531 (2d Cir. 1954) for its language that venue exists in the district where the defendant is "taken into custody, under charges later found in the indictment," (Dkt. 99 at 11 (quoting *Provoo*, 215 F.3d at 537)), does not help the defendants either. *Provoo* held that the decision by the Army to continue to detain the defendant "solely in order to bring him to New York to be tried for treason in the District Court here," was the arrest by the federal government for the contemplated treason charge, and therefore venue was proper where the defendant was held by the Army before the transfer to New York. *Provoo*, 215 F.3d 538. This was because the Army had decided to drop its unrelated court martial charges, had "no military purpose for continuing his imprisonment" in Maryland, and transferred the detained defendant to New York "to turn him over to F.B.I. agents." *Id.* Nothing similar happened here. The U.S. Marshals did not hold the defendants in custody and transfer them to New York, only so they could be arrested in Manhattan. The defendants were in Marshals' custody pursuant to pending charges, and when the defendants were brought to court on the pending charges, they were arrested on new ones. There is no bar to that. *Catino*, 735 F.2d at 724 ("[T]he purpose of the venue statute is not to fix the place of arrest but simply to have the place of trial conform to the place of arrest." (quoting *Provoo*, 215 F.2d at 538)).

The defendants remaining arguments amount to nothing more than sound and fury. The grand jury was not used to create venue in this case. (*See* Dkt. 99 at 12-13). The grand jury did no more than what it does in every case and evaluated the evidence put before it and concluded that probable cause existed to charge the defendants. Venue was not a result of anything the grand jury did but rather resulted from the defendants' arrests in the district.

45

The fact that the indictment was returned before the defendants were arrested in the district, in anticipation of their arrests is irrelevant. (*See* Dkt. 99 at 15-16). There is nothing conceptually difficult or procedurally improper about a grand jury returning an indictment based on an expectation that at the time of trial venue can be proven under 18 U.S.C. § 3238. *See United States v. Feng*, 277 F.3d 1151, 1156 (9th Cir. 2002) ("Here, Appellants were 'first brought' to the Southern District of California. Thus, regardless of whether Appellants were "first brought" into the Southern District of California before, after, or at the same time the indictment was issued in that district, venue was proper under the first clause of 18 U.S.C. § 3238."). And at trial, the jury will be asked to assess whether the defendants were arrested for the offense in Manhattan and will not be asked to make future predictions. *See id.*

The defendants' complaints about venue manufacturing are also misplaced. (Dkt. 99 at 12-14). The Government's choice to arrest the defendants in Manhattan was contemplated by the statute and was proper. *See United States v. Slatten*, 865 F.3d 767, 788 (D.C. Cir. 2017) ("The text of the statute gives the government a choice regarding prosecution of an extraterritorial crime … the government simply exercised the choice given to it under the statute."). Using a statute as it is intended is not misconduct, and the defendants suffer no prejudice from being charged under a duly enacted law. And as a factual matter, the defendants are wrong that charging Count Ten was delayed for venue-related reasons. The Government was unaware of the conduct charged in Count Ten until after the defendants had been arrested in December 2024.

The brief sealing of the Indictment was also entirely warranted. "[K]eeping the charges secret in order to enable [the Government] to effectuate the arrest" of a defendant is a legitimate basis for sealing an indictment. *United States v. Nassimi*, No. 04 Cr. 706 (LTS), 2023 WL 3584409, at *3 (S.D.N.Y. May 22, 2023); *see also* Fed. R. Crim. P. 6(e)(4). That happened here.

Notwithstanding the defendants' prior arrests on the earlier indictment, sealing was necessary to effectuate the arrest on Count Ten. In any event, the defendants plainly overstate the marginal prejudice of the charge in Count Ten being unsealed only on the day of the defendants' arrests for the charge, which was still seven months before trial. (*See* Dkt. 99 at 15 n.6).

Finally, because the defendants have been charged in a valid indictment, returned in the normal course, that put them on notice as to the charges, particularly as relevant to this motion, how the Government will prove venue for the offense, no discovery is merited on the issue, and no hearing is needed. (*See* Dkt. 99 at 17-19). Grand jury proceedings carry "a presumption of regularity," *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994), and they are secret and closed, *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996); Fed. R. Crim. P. 6(e). Reviewing grand jury minutes is an "extraordinary act," that is unwarranted here. *See United States* v. *Jasper*, No. 00 Cr. 0825 (PKL), 2003 WL 21709447, at *7 (S.D.N.Y. July 23, 2003).

## II.    THE MOTIONS TO SUPPRESS EVIDENCE FOUND DURING THE EXECUTION OF SEARCH WARRANTS SHOULD BE DENIED

### A.    Background

The defendants were first indicted by a grand jury in December 2024 and were arrested on December 11, 2024. Prior to this initial indictment, multiple magistrate judges in the Southern District of New York authorized search warrants for online accounts belonging to and used by the defendants, including iCloud, Facebook, Instagram, and Raya accounts and for cellphone location information for the defendants' phones. After the defendants were indicted, and before they were arrested, magistrate judges in the Southern District of New York and the Southern District of Florida authorized search warrants for each of the defendants' residences. As relevant to this motion, the magistrate judges in New York and Florida issued the following warrants:

- **August 2024 iCloud Warrant:** On August 16, 2024, the Honorable Sarah L. Cave, United States Magistrate Judge for the Southern District of New York, authorized

the search of three Apple iCloud accounts—one iCloud account each that was used by the defendants (the "iCloud Warrant").

- **August 2024 Meta Warrant:** On August 29, 2024, the Honorable Stewart D. Aaron, United States Magistrate Judge for the Southern District of New York, authorized the search of three Facebook accounts and three Instagram accounts—one Facebook account and one Instagram account each that was used by the defendants (the "Meta Warrant").

- **September 2024 Raya Warrant:** On September 11, 2024, the Honorable Sarah L. Cave, United States Magistrate Judge for the Southern District of New York, authorized the search of two Raya accounts—one Raya account that was used by Alon Alexander and one Raya account that was used by Oren Alexander (the "Raya Warrant").

- **November 2024 Cellphone Location Warrants:** On or about November 27, 2024, the Honorable Barbara Moses, United States Magistrate Judge for the Southern District of New York, issued warrants to AT&T Wireless and Verizon Wireless for real-time cellphone location information for three phone numbers—one phone number that was used by each the defendants (the "Cellphone Location Warrants").

- **December 2024 Premises Warrants:** On December 8, 2024, the Honorable Henry J. Ricardo, United States Magistrate Judge for the Southern District of New York authorized the search a Manhattan apartment, including all electronic devices found within the apartment, that was believed to be Tal Alexander's residence (the "███ ████ Warrant"). On December 10, 2024, the Honorable Lisette M. Reid, United States Magistrate Judge for the Southern District of Florida issued two warrants authorizing the searches of two homes in the Miami area, including all electronic devices found within the homes, that were believed to be the residences of Alon Alexander (the "████████ Warrant") and Oren Alexander (the "███ ████ Warrant").

Each of the challenged warrants was supported by an affidavit of Special Agent Justine Atwood, a case agent assigned to the FBI New York Field Office's Child Exploitation, Human/Sex Trafficking Task Force. The affidavits contained, among other information, descriptions of evidence, principally information provided by victims; descriptions of the locations to be searched, including for electronic accounts descriptions of the types of evidence maintained by the service providers; and descriptions of why it was reasonable to believe that evidence of the subject offenses would be found during the execution of the warrants.

The affidavit submitted with the application for the iCloud Warrant (Dkt. 83 Ex. 30, the "iCloud Affidavit") described the accounts of ten victims who had been raped or sexually assaulted by one or more of the defendants between the years of ███ and 2021, in addition to two additional assaults or attempted assaults of others for which those interviewed victims had knowledge. (iCloud Aff. ¶¶ 10-19). The accounts in the affidavit described multiple instances in which one or more of the defendants worked together to assault the same victim and/or to assault multiple victims simultaneously. (iCloud Aff. ¶¶ 10, 11, 13, 14, 15, 18). ████████████████

████████████████████████████████

████████████████████████████████

████████████████ The affidavit also described the use of alcohol or drugs to enable many of the assaults. (iCloud Aff. ¶¶ 10, 11, 13, 14, 15, 18). The iCloud Affidavit also described the types of evidence likely to be found in the iCloud accounts, including, among other things, saved photos, videos, and communications, and why it was believed that those items were likely to be evidence of the subject offenses. (*See, e.g.*, iCloud Aff. ¶¶ 4(vii), 20).

The affidavit submitted with the application for the Meta Warrant (Dkt. 82 Ex 31, the "Meta Affidavit") described the same assaults as the iCloud Affidavit and included additional victim accounts. Specifically, ████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████ The affidavit also described the types of evidence likely to be found in the Meta accounts and why it was believed that those items were likely to be evidence of the subject offenses. (*See, e.g.*, Meta Aff. ¶¶ 4-5, 24-32).

The remaining warrant affidavits (Dkt. 111 Ex A, the "Raya Affidavit"; Dkt. 111 Ex. B, the "Cellphone Location Affidavit"; Dkt. 82 Ex 32, the "███████ Affidavit"; Dkt 111 Ex C, the "███████ Affidavit"; and Dkt 111 Ex D, the "███████ Affidavit") incorporated the Meta Affidavit (*See* Raya Aff. ¶ 9; Cellphone Loc. Aff. ¶ 6; ███████. Aff. ¶ 6; ███████. Aff. ¶ 6; ███████ Aff. ¶ 6) and described probable cause to believe that those locations and accounts would likewise contain evidence of the subject offenses. The residential search warrant affidavits also incorporated an indictment that charged the defendants with participating in a sex trafficking conspiracy from 2010 to 2021 and with at least one count each of substantive sex trafficking. (*See* ███████. Aff. ¶ 8; ███████ Aff. ¶ 8; ███████. Aff. ¶ 8).

With respect to each warrant, the magistrate judge who authorized the warrant found that the underlying affidavit articulated probable cause that the relevant accounts and premises would contain evidence of the subject offenses. The subject offenses listed in the warrants included, among others, racketeering conspiracy; sex trafficking; sex trafficking conspiracy; travel, or enticement to travel, with intent to engage in illegal sexual conduct; obstruction of justice; and aiding and abetting.

Tal Alexander has moved to suppress evidence obtained pursuant to the iCloud Warrant, the Meta Warrant, and the ███████ Warrant. (*See* Dkt. 82). Tal Alexander argues that the affidavits sworn in support of the warrants contained material omissions (Dkt. 82 at 9-19); that the iCloud and Meta Affidavits failed to state probable cause (Dkt. 82 at 19-23); that the warrants were allegedly overbroad and insufficiently particularized (Dkt. 82 at 23-26); and that the ███████ Affidavit improperly referenced evidence obtained pursuant to the iCloud Warrant (Dkt. 82 at 26-27).

Alon and Oren Alexander have moved to suppress evidence obtained pursuant to the iCloud Warrant. (*See* Dkt. 110). They argue the iCloud Affidavit failed to state probable cause (Dkt. 110 at 9-14); that the affidavit omitted material facts (Dkt. 110 at 14-19); that the warrant was overbroad (Dkt. 110 at 19-24); and that the execution of the warrant resulted in the seizure of attorney-client privileged materials (Dkt. 110 at 24-27). Alon and Oren Alexander further seek suppression of the Meta Warrant, Raya Warrant, the Cellphone Location Warrants, the ██████ ██████ Warrant, and the ████████ Warrant based on principally the same arguments. (*See* Dkt. 108).

### B. The Defendants Have Not Met the High Burden Required for a *Franks* Hearing Based on Purported Omissions in the Warrant Affidavits

#### 1. Applicable Law

##### i. Reviewing a Magistrate's Probable Cause Determination

The Fourth Amendment provides, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause is a "flexible, common-sense standard," *Texas v. Brown*, 460 U.S. 730, 742 (1983), requiring a case-by-case analysis of the totality of the circumstances, *see Illinois v. Gates*, 462 U.S. 213, 230 (1983). In considering a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238. Probable cause requires only a "probability or substantial chance of criminal activity"—not an actual showing of criminal activity. *United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir. 1990). The question is always whether all the available facts, "viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or

evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013).  That "an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985).

A magistrate judge's probable cause determination is afforded significant deference by reviewing courts. *See United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("[A] court reviewing a challenged warrant . . . must accord considerable deference to the probable cause determination of the issuing magistrate."); *see also United States v. Nichols*, 912 F.2d 598, 602 (2d Cir. 1990) ("A magistrate's finding of probable cause to believe that evidence of a crime would be found on a defendant's premises is entitled to substantial deference on appeal.").

### ii.    Alleged Omissions in a Search Warrant Affidavit

A search warrant affidavit is presumed reliable. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008).  "In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003).  Not every statement in a warrant affidavit must be true. *See United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000).  To invoke the *Franks* doctrine, the defendant must demonstrate that there were intentional misstatements or omissions in the search warrant affidavit and that those misstatements or omissions were material. *See Awadallah*, 349 F.3d at 64.  The defendant must establish both components—*i.e.*, intent and materiality—by a preponderance of the evidence. *See Klump*, 536 F.3d at 119.

"The *Franks* standard is a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).  To obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing" that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit *and* the statement was necessary to the judge's finding of probable cause.

*United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). This burden is a "heavy one, and such hearings are exceedingly rare." *United States v. Melendez*, No. 16 Cr. 33 (LTS), 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016); *see also United States v. Sandalo*, 70 F.4th 77, 86 (2d Cir. 2023) (describing the necessary burden as "a heavy one that requires more than a mere conclusory showing"). "Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge." *United States v. Nejad*, 436 F. Supp. 3d 707, 719 (S.D.N.Y. 2020); *see Franks*, 438 U.S. at 171 ("[T]he challenger's attack [on the affidavit] must be more than conclusory and must be supported by more than a mere desire to cross-examine.").

A motion to suppress alleging material omissions is analyzed differently than one alleging false statements. *See United States v. Ayala*, 740 F. Supp 3d 314, 339 (S.D.N.Y. 2024) ("[O]missions are not subject to the same high level of scrutiny as misstatements."). Because "all storytelling involves an element of selectivity," it is "not shocking that every affidavit will omit facts which, in retrospect, seem significant." *United States v. Vilar*, No. 05 Cr. 621 (KMK), 2007 WL 1075041, at *27 (S.D.N.Y. Apr. 4, 2007). Indeed, "[a] requirement that all potentially exculpatory evidence be included in an affidavit would severely disrupt the warrant process and place an extraordinary burden on law enforcement officers, and is not the law." *United States v. Cromitie*, No. 09 Cr. 558 (CM), 2010 WL 3025670, at *6 (S.D.N.Y. July 28, 2010). Accordingly, "[t]he mere intent to exclude information is insufficient, as an affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *United States v. Garlick*, No. 22 Cr. 540 (VEC), 2023 WL 2575664, at *7 (S.D.N.Y. Mar. 20, 2023).

A motion based on purported omissions must satisfy a strict standard. The Second Circuit has instructed reviewing courts to assess whether there is "credible and probative evidence" that the affiant's omission of material information was "designed to mislead" or "made in reckless

disregard of whether it would mislead." *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir.

2013). A search warrant affiant "does not necessarily act with reckless disregard for the truth

simply because he or she omits certain evidence that a reviewing court, in its judgment, considers

to be clearly critical." *Id.* Rather, "[t]o prove reckless disregard for the truth, the defendants must

prove that the affiant in fact entertained serious doubts as to the truth of his allegations." *Id.*

To assess an affiant's intent in the context of omissions, the Second Circuit has weighed

whether the omitted material was "clearly critical" to the probable cause determination. *See*

*Rivera*, 928 F.2d at 604 (noting that recklessness can be inferred where the omitted information

was "clearly critical"). However, the Second Circuit has clarified that, standing alone, showing

that omitted information was "clearly critical" is insufficient to establish that an affiant acted with

reckless disregard for the truth. *Rajaratnam*, 719 F.3d at 154; *see also United States v. Lahey*, 967

F. Supp. 2d 698, 709-10 (S.D.N.Y. 2013). While recklessness can be inferred based on the totality

of the circumstances, the proper inquiry assesses only the subjective intent of the affiant, not the

hypothetical steps a reasonable person may have taken. *Rajaratnam*, 719 F.3d at 154-55.

Allegations of negligence or innocent mistake are insufficient, as the relevant inquiry is not

"whether a mistake was made" but instead "on the intention behind the mistake." *Cromitie*, 2010

WL 3025670, at *2; *see also Falso*, 544 F.3d at 127-28.

"To determine if misrepresentations or omissions are material, a court corrects the errors

and then resolves de novo whether the hypothetical corrected affidavit still establishes probable

cause." *Lahey*, 967 F. Supp. 2d at 711. If a false statement is alleged, "a court should disregard

the allegedly false statements and determine whether the remaining portions of the affidavit would

support probable cause to issue the warrant." *Canfield*, 212 F.3d at 718." If a material omission

is alleged, a court should "fill in the omitted information and then conduct the same analysis to

determine whether the remaining portions of the affidavit support probable cause to issue the warrant." *United States v. Kone*, No. 19 Cr. 808 (VEC), 2022 WL 1498955, at *3 (S.D.N.Y. May 11, 2022). "The ultimate inquiry is whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." *Id.*

### 2.    Discussion

The defendants claim that the various warrant affidavits they challenge omitted facts and evidence that were known to the affiant and that were material to the probable cause analysis. They further claim that the omissions were intended to mislead the judges who evaluated the evidence and found probable cause to issue the warrants, or alternatively that the omissions were made with reckless disregard for the truth. The defendants' claims fail on both fronts. Probable cause supported each of the challenged warrants even if the alleged omissions were included in the warrant applications. And the defendants present no evidence that the warrant affidavits were intended to mislead the issuing judges or that any evidence that was omitted from the affidavits was done so with reckless disregard for the truth.

### i.    The Challenged Alleged Omissions Were Not Material

#### a.    *The Purported Omission Related to the Date of Creation for Tal Alexander's iCloud Account Was Not Material*

Tal Alexander argues that the iCloud Affidavit omitted the fact that his iCloud account was created in March 2012, and that this omission was material. (Dkt. 82 at 10-11). Tal Alexander's argument fails for at least two reasons. First, he ignores that evidence created prior to March 2012 could still be stored in the iCloud account. And second, he fails to meaningfully address the other Subject Offenses—including sex trafficking conspiracy—which involve his participation after the

creation of his iCloud account.  For those reasons, among others, inclusion of the fact that Tal Alexander's iCloud was created in March 2012 does not undermine the warrant's probable cause.

As to Tal Alexander's conduct, specifically, the iCloud Affidavit described the accounts of three victims that Tal Alexander assaulted: ███████████████████████████████████████ ████████████████████████████████████ In each of these three assaults, Tal Alexander worked with one or both of his brothers to assault the victims. Tal Alexander was also described in the affidavit as being present ██████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████

The omission of the fact that Tal Alexander's iCloud account was created in March 2012 is not material. Addressing first the pre-2012 evidence: the iCloud Affidavit provided ample basis for a reviewing judge to understand how evidence created before March 2012 could be found in a cloud storage account that was created in March 2012. As described in the affidavit, iCloud is a cloud storage service that enables the back-up, synchronization, and sharing of data across multiple devices. (iCloud Aff. ¶ 3). It did not, however, introduce the concept of storing and transferring digital files, including photos and videos. Digital files have been saved and transferred between devices—whether by storing and transferring digital photos and videos on micro-SD cards, backing up and transferring data and files on external hard drives, using iTunes to copy an iOS device, or by some other means—well before the use of cloud backups became commonplace. Accordingly, it would be reasonable for Judge Cave to conclude that some evidence from before March 2012 would likely be found in Tal Alexander's iCloud account. A reasonable inference is that the defendant, like anyone else with a computer and a digital camera before the advent of cloud storage, kept local copies of photos and videos that he later transferred to the cloud.

The defendant's arguments about the date of creation of his iCloud account are also immaterial to the probable cause that supported the warrant because the warrant was issued to search for evidence of subject offenses—including conspiracy offenses—that continued well beyond 2012, until at least 2021. (*See* iCloud Aff. ¶ 20(e)). The defendant's argument is not saved by his claim that that iCloud Affidavit "fail[ed] to present facts establishing any conspiracy," (Dkt. 82 at 11), because he is wrong. The iCloud Affidavit described accounts of three victims, spanning more than a decade, that Tal Alexander sexually assaulted, each time doing so with one or more of his brothers. (iCloud Aff. ¶¶ 11, 13, 14). The affidavit also described Tal Alexander's proximity to other assaults, ██████████████████████████████████████████ ████████████████—events for which he was a witness to the planning, execution, and/or aftermath of the assault. From this, even if the reviewing judge were to assume that Tal Alexander's personal participation in sexual assaults with his brothers had stopped after 2012 (itself an unreasonable assumption), the judge could have reasonably concluded that Tal Alexander's iCloud account was likely contain evidence of the later-in-time assaults. Moreover, communications between Tal Alexander and his brothers about any number of topics, including for example, his brothers' victims, travel to locations where his brothers' assaulted victims, or others who were present around the times of the assaults, would remain evidence of the subject offenses likely to be found in Tal Alexander's iCloud account.

The defendant has not established any basis to conclude that including the date March 2012 creation date for his iCloud account would have undermined the probable cause analysis in the iCloud Affidavit.

b.    *The Purported Omission Related to Victim-2 Was Not Material*

Among the many victim accounts described in both the iCloud Affidavit and the Meta Affidavit was the account of Victim-2. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

The defendant cites no case law requiring a search warrant affidavit to describe ████

████████████████████████████████████████████████████

████████████████████████████████████. The defendant cites *McColley v. County of Rensselaer*, 740 F.3d 817 (2d Cir. 2014), but that case involved the use of a confidential informant, and there are critical distinctions between a professional or repeat informant and a lay witness or victim that distinguish the situation here. (*See* Dkt. 82 at 10). Informants provide information to the Government in exchange for money or other tangible benefits, often repeatedly, and courts focus on the indicia of reliability for that information. *See United States v. Wagner*, 989 F.2d 69, 72-73 (2d Cir. 1993) ("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable."). As a result, search warrants relying on a confidential informant should contain facts demonstrating the informant's "proven track record for reliability or corroboration." *United States v. Harding*, 273 F. Supp. 2d 411, 418-19 (S.D.N.Y. 2003). The same requirement reasonably does not exist for victims and witnesses. *See id.* (distinguishing between information provided by victim-witnesses, for which

corroboration is unnecessary, and for professional informants); *see also United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) ("The informants described in the [] affidavit were witnesses to [the defendant's] involvement in narcotics activity.  They were not professional informants whose reliability might be suspect.  A witness to a crime need *not* be shown to have been previously reliable before the authorities may rely on his statements.").

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

        Finally, the defendant's arguments about Victim-2's ██████, in the larger context of all the evidence described in the affidavits, have a negligible impact on the probable cause analysis. The affidavits described the accounts of a dozen (the iCloud Affidavit) or more (the Meta

Affidavit) women who had been assaulted by the defendants. A reviewing magistrate judge could reasonably concluded, based primarily on the number of victim assaults, that the probable cause standard had been met.

        *c.*    *The Purported Omission Related to Victim-1 Was Not Material*

The iCloud Affidavit and the Meta Affidavit both described the assault of Victim-1 █



---

[23] A copy of this message is attached as a Government Exhibit.



### d. The Purported Omissions Related to the Victims' Lawyers are Not Material

The defendants argue that the affidavits' failure to disclose that some victims were accompanied by counsel in interviews with law enforcement was a material omissions. (Dkt. 82 at 15-16; Dkt. 110 at 16-17). This argument is both legally unsupported and nonsensical.

As described in the affidavits, the victim accounts in the iCloud Affidavit and the Meta Affidavit were primarily based on interviews conducted by the FBI. In their motions, the defendants note the unremarkable fact that many of these victims were represented by lawyers at those meetings. (*See* Dkt. 82 at 15-16; Dkt. 110 at 16-17). Without citing any case law in support of their argument, the defendants argue that the fact of a victim's representation and a lawyer's presence at an interview with law enforcement is information must be disclosed in a warrant affidavit. There is nothing improper about a victim of violent crime being represented by an attorney. Nor is there anything about a victim being represented by a lawyer that inherently bolsters, or undermines, her credibility. The defendants argue that a represented victim is contemplating a lawsuit and therefore has incentive to lie. But it is also true that a represented

victim has been vetted by her lawyer, and the lawyer has made a preliminary determination that the account is credible and worth pursuing.

As described above, ███████████████████████████████ the defendants are wrong to analogize a victim's personal account of an attack to information provided by a confidential informant working for law enforcement. (*See* Dkt. 82 at 16). Unlike confidential informants, there are no special requirements and "[i]nformation provided by a crime victim or other citizen witness may be accepted [in a warrant affidavit] even absent a proven track record of reliability or corroboration." *Harding*, 273 F. Supp. 2d at 418. The warrant affidavit requires nothing more than the affiant's description that information has been provided by a victim. Tal Alexander wrongly claims that in *United States v. Combs* the court rejected an argument about omissions in a warrant affidavit related to a victim's lawsuit "only because" the case had already been settled before the warrant was issued. (*See* Dkt. 82 at 16). Rather, the *Combs* court rejected the argument more broadly and found that the defendant wrongly analogized victims and witnesses to confidential informants, and that no similar obligation existed for the Government to provide additional information about the witnesses' credibility before relying on their information in a warrant affidavit. *See United States v. Combs*, 24 Cr. 542 (AS), 2025 WL 1361728, at *4 (S.D.N.Y. May 9, 2025) ("Again, like Victim-1, Assistant-1, and Victim-4, Designer-1 is not a confidential informant, so the affiant was under no special duty to investigate her credibility before relying on her statements.").

       e.     *The Purported Omissions Related to Minor Victim-1 are Not Material*

Tal Alexander argues that the iCloud Affidavit and Meta Affidavit wrongly include irrelevant information provided by Minor Victim-1. (Dkt. 82 at 16-17). This argument—which

alleged neither a false statement or omitted material facts—lends no support to his motion and should be rejected.

As described in the iCloud and Meta Affidavits,  The affidavits properly presented this account to the reviewing judge. Accordingly, the defendants do not (because they cannot) identify any false statement or material omission.

Equally lacking is the argument that the failure to include information from a police report that the affiant did not have was a material omission. First, it is uncontested that the affiant did not have this report at the time of the iCloud and Meta Affidavits.[24] The defendants argue instead that the affiant should have obtained a copy of the report. But of course, as is true at trial and is as equally true during the investigation, the law requires no particular investigative technique to be used. Moreover, even if the report had been obtained before submitting the affidavits and included in the affidavits, it would not have undermined probable cause.

---

[24] To the extent the defendants argue that the failure or inability of the FBI to later obtain a copy of the report is evidence of a misstatement or omission, it is not material and has no impact on the probable cause findings that the magistrate judges made.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████

        *f.*    *Additional Purported Omissions Identified by Oren and Alon Alexander are Not Material*

In addition to the purported omissions above that were identified and argued by Tal Alexander, Oren and Alon Alexander cursorily allege several additional purported omissions from the iCloud Affidavit. To the extent they identify any omissions, they are not material.

Oren and Alon Alexander first argue that the affidavit "failed to offer any explanation of how [the affiant] was interpreting commercial sex to expand beyond the case law." (Dkt. 110 at 14). As described above, in addressing the defendants' motions to dismiss the Indictment, and as found by multiple grand juries, the defendants' conduct amounted to sex trafficking and other federal offenses, notwithstanding the defendants' repeated protestations otherwise. Moreover, to the extent the defendants fault the affiant for not giving a legal conclusion, the argument is wrong and would place on the affiant, rather than the reviewing judge, the responsibility to determine the fit between the evidence and the law.

The defendants also take issue with the affidavit's referral to conduct as "rape or sexual assault" even when a victim may not have used those terms. (Dkt. 110 at 15). As described in the affidavit, the Special Agent Atwood used the terms "'rape' and 'sexual assault' … to describe conduct that, as currently understood, meets legal definitions of the terms." (*See* iCloud Aff. ¶9 fn.1). Read in context in the affidavit, these terms gave clear descriptions of the assaults the victims described. ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Next, Alon and Oren Alexander argue that the affidavit omitted the fact that "police who had investigated these matters deemed them not credible or worthy of further investigation." (Dkt. 110 at 15). ████████████████████████████████████████ ███████████████████████████████████████ But they fail to identify any specific fact known to the affiant that was omitted. Moreover, the fact that certain incidents described in the affidavits were not previously charged is irrelevant to the probable cause presented in the warrant affidavits.

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Also irrelevant is the fact that during their decades-long conspiracy, the defendants each had "gotten married and started families" and "le[ft] the dating scene." (Dkt. 110 at 117). The defendants' marital status has no relevance to the subject offenses, and the defendants' argument is built on the false premises that the assaults committed "occurred in the course of dating interactions." (Dkt. 110 at 117).

Finally, any misstatements or omissions in the context of applying for a non-disclosure order (and there were none) are irrelevant. (Dkt. 110 at 18-19). Misstatements relating only to non-disclosure and not to probable cause do nothing to undermine the validity of the resulting warrant. Relatedly, suppression is not an available remedy for any violations of 18 U.S.C. § 2705's notice provisions. *United States v. Scully*, 108 F. Supp. 3d 59, 88 (E.D.N.Y. 2015). But in any event, the affidavit accurately described the lack of public information about the nature and scope of the investigation and the potential consequences of disclosure of the warrant. Until the defendants were arrested in December 2024, there had been no public confirmation of any federal investigation into their conduct. A news article about an investigation that cited no sources in law enforcement and was unconfirmed by the FBI, did not make public the "existence and scope of this ongoing criminal investigation." The article provided some unconfirmed information about the investigation, but permitting early disclosure of the warrants would have provided far greater information about the investigation than had been reported in the *Wall Street Journal*, and as the

reviewing judges found, would have risked the destruction of evidence, flight from prosecution, and harassment or worse of victims.[25]

      ii.     **The Defendants Have Not Shown an Intent to Mislead or a Reckless Disregard for the Truth**

Setting aside the failure to satisfy the materiality requirement, the defendants' requests for suppression—or even a *Franks* hearing—fail for the additional reason that they cannot make even a preliminary showing of an intent to mislead or reckless disregard for the truth. *Sandalo*, 70 F.4th at 85. The defendants misstate the law on this prong of the test. In an attempt to circumvent the Second Circuit's well-established framework for evaluating intent, the defendants rely on their own standard for "the kind of thing the judge would wish to know"—language taken from a "but see" citation in *Rajaratnam*. (*See* Dkt. 82 at 10-11; Dkt. 110 at 14). There, the Second Circuit was highlighting the objective intent standard used by some other circuits, one that this Circuit declined to adopt. *See Rajaratnam*, 719 F.3d at 154 (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). The defendants' attempt to lower the bar to obtain a *Franks* hearing is contrary to the law of this Circuit. Rather, to obtain a hearing, they must make a substantial preliminary showing both that the omissions were material (which as described above they were not), and that the affiant acted intentionally or with reckless disregard for the truth. They cannot do this either.

In arguing that any omissions were intentionally designed to mislead or were made with reckless disregard for the truth, the defendants rely on no more than speculation. But the Second Circuit is clear that more than a defendant's "mere conclusory" showing of the affiant's subjective intent to mislead the court is required to obtain a *Franks* hearing. *Sandalo*, 70 F.4th at 86. For some of the defendants' alleged omissions, the defendants have failed to make any showing that

---

[25] The defendants claim the witness safety concern was unwarranted but offer no such argument related to flight from prosecution or the destruction of evidence. (Dkt. 110 at 18-19).

the affiant was even *aware* of the information, let alone a "substantial preliminary showing" that the affiant omitted the information in an attempt to mislead the magistrate judge. *See United States v. Rumph*, No. 23 Cr. 603 (ALC), 2024 WL 4503027, at *7 (S.D.N.Y. Oct. 16, 2024) (denying *Franks* hearing where defendant presented no evidence that affiant was aware of alleged omitted fact "at the time of the warrant affidavits."); *United States v. Almaleh*, No. 17 Cr. 25 (ER), 2022 WL 602069, at *14 (S.D.N.Y. Feb. 28, 2022) (similar); *see also United States v. Pulley*, 987 F.3d 370, 379 (4th Cir. 2021) ("An officer who does not personally know information cannot intentionally or recklessly omit it[.]").  Accordingly, even assuming *arguendo* that the defendants could demonstrate that ███████████████████████████████████████████████ ██████████████████████████████████████ were material omissions (which they cannot), the defendants could not demonstrate the intent prong of the *Franks* standard.

Moreover, any implications that the Government was reckless by failing to conduct further investigation as to ██████████████████████████████████████████ before submitting the affidavits is equally unavailing.  The Government is not aware of, and the defendant does not cite, any Second Circuit authority finding failure to conduct further investigation before obtaining a warrant to be reckless, although courts in this District have found to the contrary.  *See United States v. Perez*, 247 F. Supp. 2d 459, 480 (S.D.N.Y. 2003) (agreeing with Government position that "a failure to fully investigate is not sufficient to show reckless disregard").  As discussed above, the affiant was under no obligation to investigate these issues before obtaining a warrant, and the defendants showing falls far short of meeting the requirements of the *Franks* standard.

With respect to the purportedly omitted facts of which the affiant was potentially aware— namely, the date that Tal Alexander's iCloud account was created, the victims' representation by

attorneys, ██████████████████████████████████████████████████████

██████████████—the defendants provide no basis to conclude that this information was omitted intentionally or with reckless disregard.  As to the creation date of Tal Alexander's iCloud account, all the defendant can offer in support of his argument that the information was not included in the affidavit as a part of an intentional or reckless attempt to mislead the reviewing judge is that this "surely constitutes the kind of thing the judge would wish to know when reviewing the applications." (Dkt. 82 at 11). Whether it is or isn't, that is not the standard, and the defendant offers nothing to suggest malicious intent on the part of the affiant. Nor could he offer anything better. For many of the same reasons described above that the omitted information was not material, including that the warrant affidavit sought evidence of a conspiracy offense that continued for nearly a decade after the defendant created his account, simply omitting the account creation date from the affidavit does not suggest an intent to deceive or to act in reckless disregard of the truth.

The defendants also cannot show that any omitted information related to Victim-1 was intended to mislead the reviewing judge or that the purported omissions ████████████ ████████████████were made with reckless disregard for the truth. As before, the defendants have nothing more than their say-so to suggest any malicious intent. ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

The defendants have the same problem with their claims that ████████████████████ ████████████████████████████████████████████that some victims were represented by attorneys, and that attorneys had been with many victims during FBI interviews

were facts that were maliciously omitted from the warrant affidavits. They cannot make a "substantial preliminary showing" of any mal intent or reckless disregard for the truth. They do not argue that there is any discrepancy between ███████████████████████████████ ███████████████████████████ should have been included in the affidavit. And as for the mere fact that victims had lawyers, there is nothing noteworthy about a victim or a witness in a criminal investigation having a lawyer and having the lawyer present during an interview. It is so common that it is hardly worth mentioning, and Special Agent Atwood's choice not to include that information in the warrant affidavit, does not imply any intentional or reckless behavior.

Finally, for each of the additional purported omissions that Oren and Alon Alexander have identified, such as legal definitions, the precise terms used to describe violent sexual assaults, ██ ███████████████████████ prior determinations by prosecutors not to bring charges in isolated cases, and the defendants' marital statuses, the defendants again make no showing that omissions were intended to mislead the judge or made in reckless disregard for the truth. And each of these "omissions" is so irrelevant to probable cause that the defendants cannot carry their burden.

### C.    The Search Warrants Were Particular and Not Overbroad

#### 1.    Applicable Law

To satisfy the Fourth Amendment's particularity requirement, a warrant must (i) "identify the specific offense for which the police have established probable cause"; (ii) "describe the place to be searched"; and (iii) "specify the items to be seized by their relation to designated crimes." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). "The Fourth Amendment does not require a perfect description of the data to be searched and seized, however." *Id.* at 100. Rather, "the warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992).

"[A] search warrant does not necessarily lack particularity simply because it is broad." *Ulbricht*, 858 F.3d at 100. However, a warrant is overbroad if its "description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013).

### 2.    Discussion

The search warrants the defendants challenge were particularized and authorized the seizure of only specified categories of evidence related to the subject offenses under investigation. Each warrant (i) identified the specific offenses for which probable cause was established; (ii) described the places, accounts, or object to be searched; and (iii) specified the items to be seized by their relation to the designated crimes. *Ulbricht*, 858 F.3d at 99. Thus, each warrant plainly "satisfies the basic elements of the particularity requirement as traditionally understood." *Id.* at 101.

The defendants erroneously suggest that the iCloud Warrant gave the Government permission to "search and seize everything" in the defendants' cloud accounts (Dkt. 110 at 21), but a simple review of the warrant disproves that argument—the warrant specified in detail the evidence that was authorized to be seized from the accounts (Dkt. 83 Ex. 30 at 42-43). These evidentiary items were tied directly to "the probable cause upon which the warrant [wa]s based." *Galpin*, 720 F.3d at 446. Tal Alexander also argues the iCloud warrant impermissibly permitted the seizure of "communications, photographs, videos, documents, calendars, location data, and [evidence of the use of] other online accounts." (Dkt. 82 at 25). He acknowledges that the warrant authorized the seizure of these items only when they were "related to the commission of the Subject Offenses," but he ignores the importance of that limitation. (Dkt. 82 at 25). The limitation that seized evidence could be only that related to the subject offenses listed in the warrant ensures the proper scope and particularity of the warrant. For this reason, the defendant's reliance on *Wey*, a

case that did not specify the crimes under investigation and where the warrant set forth "expansive categories of often generic items subject to seizure . . . without, crucially, any linkage to the suspected criminal activity," is misplaced. *United States v. Wey*, 256 F. Supp. 3d 355, 384 (S.D.N.Y. 2017).

Similarly misplaced is Oren and Alon Alexander's argument that there is a problem with the categories of data produced by Apple pursuant to the iCloud Warrant. The defendants suggest that a proper warrant would have included a "content restriction," but do not suggest what a proper restriction would have entailed in this case or explain how Apple should have been asked to identify evidence of sex trafficking and related offenses and produce only that information, rather than that job falling to the law enforcement agents investigating the case. (Dkt. 110 at 21-22). This argument appears related to Tal Alexander's argument that the warrant authorization was broader than the probable cause. (*See* Dkt. 82 at 25). The upshot seems to be that the defendants believe the warrant should not have required Apple to produce all content for the iCloud accounts, which law enforcement could then search for responsive material. However, the numerous types of files and records in Apple's possession for an iCloud account were likely to provide evidence of the subject offenses, and thus their production under the warrant was permitted. For example, calendar entries and location data can be evidence of a defendant's location when the offense was committed; communications can show efforts to plan the offenses, attempts to contact victims, or discussions about offenses that have been committed; photographs and videos can depict the commission of the offenses or depict other evidence of the offenses; and data about the account and its use can establish the identity of the account user. (*See* iCloud Aff. ¶ 20). There was a reasonable probability that each category of material contained in the account would provide evidence of the subject offenses, and the production of the materials was therefore proper.

The defendants also incorrectly suggest the warrants were overboard and lacked particularity because the warrants were not time limited. This argument is in many ways the inverse of the argument they made about the date of creation of the iCloud account not being included in the warrant affidavit. As courts have recognized, "time frame is less relevant to a warrant's breadth where the criminal acts are complex and necessarily extend over a significant period of time." *United States v. Carrasco*, No. 22 Cr. 334 (CM), 2022 WL 17547431, at *4 (S.D.N.Y. Dec. 8, 2022). That principle is true here. The subject offenses, which lasted for more than two decades, extended back to before the accounts' creation. There is obviously no issue with the warrants authoring the seizure of evidence dating back to the dates of account creation. There likewise was no issue with the warrants authorizing the seizure of evidence continuing to the issuance of the warrant. A reasonable judge reviewing the warrant affidavits, faced with the defendants' decades-long pattern of conduct would have no issue finding probable cause to believe that the contents of the accounts saved up to the present would contain evidence of the subject offenses.

Finally, the defendants are also wrong insofar as they argue that the particularity requirement is heightened for warrants authoring the seizure of electronic data. (*See* Dkt. 82 at 26). The Second Circuit has clarified that its statement in *Galpin*, 720 F.3d at 447, that there is a "heightened sensitivity to the particularity requirement in the context of digital searches," was made in the context of a warrant that was "facially overbroad … [and] purported to authorize a search of Galpin's electronic equipment for evidence of *any* violations of," New York or federal law. *See* United *States v. Tompkins*, 118 F.4th 280, 289 (2d Cir. 2024). There is no different particularity requirement for searches of electronic devices or electronic storage accounts. *See id.* ("The April 2019 warrant suffers from no such infirmities [as in *Galpin*]. It specifies that forensic examination of the cellular phone and any associated electronic storage is authorized for the

purpose of identifying digital information evidencing a specific offense ….”). The challenged warrants met that standard.[26]

### D.    The Search Warrants Were Supported by Probable Cause

#### 1.    Applicable Law

As discussed above, in Section II.B.1.i, “[p]robable cause is not a high bar.” *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). It requires the judicial officer “simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.” *Gates*, 462 U.S. at 238; *accord Harris*, 568 U.S. at 244. Proof positive is not required; the “quanta of proof necessary to establish probable cause is only the probability, and not a prima facie showing,” of criminal activity and likelihood of finding evidence thereof. *Wagner*, 989 F.2d at 72 (quoting *Gates*, 462 U.S. at 235).

A court reviewing the validity of a search warrant must “accord substantial deference to the finding of an issuing judicial officer that probable cause exists, limiting [its] inquiry to whether the officer had a substantial basis for his [or her] determination.” *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022); *see also United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (“A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant.”). The issuing officer’s “finding of probable cause is itself a substantial factor tending to uphold the validity of [the] warrant.” *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).

---

[26] Oren and Alon Alexander describe the search and seizure of allegedly privileged materials from Alon Alexander’s iCloud account as an issue of overbroad execution of the warrant. (*See* Dkt. 110 at 24-27). As addressed in Section VI, *infra*, the Government implemented a proper process to ensure that privileged materials were screened by a filter team prior to review by the case team. This is not an issue of overbreadth.

## 2.    Discussion

The defendants challenge the magistrate judges' probable cause findings in two ways. Oren and Alon Alexander, repeating many of the same arguments the defendants make in their motions to dismiss the Indictment, argue that the iCloud Warrant affidavit did not describe probable cause for federal offenses, as opposed to state ones. (Dkt. 110 at 10-14). They do not argue any error in the judges' conclusions that there was probable cause to believe that evidence of crime would be found in their accounts, only that it would not be evidence of federal crimes. Tal Alexander has taken the opposite approach and argues that the judges wrongly concluded there was probable cause to believe that evidence would be in his accounts because the affidavits did not provide a sufficient connection to his accounts and described allegedly stale evidence. (Dkt. 82 at 19-23). None of the defendants' arguments provide any basis to overturn the findings of the issuing magistrate judges, whose decisions regarding probable cause are entitled to substantial deference.

### i.    There was Probable Cause to Believe the Defendants Committed the Subject Offenses

The iCloud Affidavit, which Oren and Alon Alexander challenge, described how the defendants, for years, worked together and with others to rape and sexually assault a dozen victims. The affidavit described that the defendants provided lodging and transportation to their victims to enable the attacks, used drugs to incapacitate their victims, and traveled themselves to multiple locations to carry out the attacks. The subject offenses in the iCloud Warrant—18 U.S.C. §§1962(d) (racketeering conspiracy);[27] 1591 and 1594 (sex trafficking and sex trafficking conspiracy); 2421 (transportation to engage in illegal sexual activity); and 2422 and 2423 (coercion

---

[27] Each of the substantive subject offenses is a "racketeering act." *See* 18 U.S.C. § 1961(1).

and enticement, and transportation of a minor to engage in illegal sexual activity)—hued to these facts.

██████████████████████████████████████████████████████████

███████████████████

████████████████████████████████████████████████████████

████████████████████████████████, Judge Cave was more than warranted in concluding there was a "fair probability" that the evidence in the defendants' iCloud accounts would include evidence of the subject offenses. These two incidents, however, cannot be viewed in isolation. The remaining descriptions of sexual assault in the affidavit provided additional evidence of the subject offenses, and additional reason to believe that evidence of the subject offenses would be found in the defendants' accounts. For example, the assaults that the defendants committed together, ████████████████████████████████████████████████████████ provided an additional understanding of the duration and scope of the defendants' conspiratorial agreement. That the agreement encompassed the commission of rape and sexual assaults in violation of state law, does not undermine Judge Cave's finding that it also demonstrated probable cause that evidence of sex trafficking and related federal offenses would be found on the accounts. Moreover, evidence of rapes and sexual assaults the defendants committed that do not, standing alone, violate federal law are nevertheless evidence of the assaults that did. *See* Fed. R. Evid. 413.

Oren and Alon Alexander's remaining arguments fare no better. The notion that repeated, jointly undertaken crimes, committed across multiple years does not clear the low bar of probable cause to believe there is a criminal conspiracy can be dismissed out of hand, and the defendants' self-serving characterizations of repeated assaults as "ad hoc," rather than coordinated, merits no deference. (Dkt. 110 at 12). The defendants' attacks on the strength of the evidence also do not give reason to conclude that Judge Cave's probable cause finding should be overturned. The defendants argue that ████████████████████████████████████████████████

███████████ that the affidavit in general "relied in blind faith" on the accounts of victims (*see*

Dkt. 110 at 12), but in evaluating the affidavit, Judge Cave was entitled to credit these victims and

was not required to discount the statements of victims in the way the defendants urge.

Finally, as to the conspiracy subject offenses, the defendants argue that the offenses fell

outside of the statute of limitations because the last jointly committed assault referenced in the

affidavit happened in 2017. (Dkt. 110 at 12). There are multiple reasons this argument is unhelpful

to their motion. *First*, after continuing a pattern, ████████████████████████

███████████ there is no indication that the agreement suddenly stopped in 2017, and the

defendants have provided no reason to think it would have. Oren Alexander's ██████████

████████████████████████████████████████████████

████████████████████ and certainly any finding by Judge Cave that the conspiracy

continued until at least 2021 was based on "reasonable inferences from the facts presented based

on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004).

*Second*, the defendants have provided no caselaw supporting their implicit claim that a time bar to

prosecution for a crime nullifies any warrant authoring the investigation of that crime. The Fourth

Amendment probable cause requirement and statutes of limitations serve different purposes.

Because the "[c]ommission of the crime *within the statute-of-limitations period* is not an element

of the conspiracy offense," a potential statute of limitations defense, which a defendant must raise

after being charged, does not impact the probable cause analysis for issuing a warrant. *See Smith*

*v. United States*, 568 U.S. 106, 112 (2013) (emphasis in original). *Lastly*, removing the conspiracy

subject offenses from the warrant would not alter the permissible scope of the search. Even if the

subject offenses were limited to the substantive offenses, the substantive offenses were jointly

undertaken and the evidence subject to seizure for the substantive offenses would be identical to that seized as evidence of the conspiracy offenses.

> ### ii.  There was Probable Cause to Believe that Tal Alexander's iCloud and Meta Accounts would Contain Evidence of the Subject Offenses

Tal Alexander argues that Judge Cave and Judge Aaron were wrong to conclude there was probable cause that evidence of the subject offenses would be found in his iCloud and Meta accounts because the evidence supporting the searches of his accounts was dated and/or because the evidence connecting his accounts to the offenses was attenuated. (Dkt. 82 at 19-23). The magistrate judges' findings to the contrary are supported and should not be reversed.

At its core, the staleness inquiry asks whether, at the time of the search, there remained probable cause to believe evidence of the subject offenses would be found in the location to be searched. *See United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015). There are "no bright-line rule for staleness, which must instead be evaluated on the basis of the facts of each case." *Id.* The required case-specific analysis renders nearly useless the defendant's reliance on cases arising in very different contexts. (*See* Dkt. 82 at 20-21).

Related to both his iCloud and his Meta accounts, the defendant focuses too narrowly. His personal participation in the assaults of victims ██████████████████████████ ███████ is, of course relevant, to the warrant application, but the analysis does not stop in 2012. After 2012, the conspiracy continued, and the defendant remained a member. ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████ And as described above, the affidavits provided more than a sufficient basis to conclude there was probable cause to believe that the conspiracy continued well

beyond then. The reasonable inferences from the warrant affidavits were that the subject offenses continued up to at least 2021. (*See* Meta Aff. ¶ 26).

Moreover, the nature of the iCloud and Meta accounts at issue and the types of evidence being sought created a reasonable probability that evidence of the subject offenses would be found in the accounts. For the iCloud account, records from Apple confirmed that Tal Alexander used his iCloud account to save "back-up copies of iOS devices (such as iPhones), photos, messages, notes, and contacts." (iCloud Aff. ¶ 20(c)). The affidavit also described how the files likely to be saved in these backup copies were connected to the subject offenses, (iCloud Aff. ¶ 20(d)-(h)), and that saved files that are "evidence of the criminal activity can often be found months or even years after it occurred" (iCloud Aff. ¶ 20(i)). As the defendant himself has argued, the defendant had his iCloud account for more than a decade, since at least 2012. He set it up to back up his iOS devices, photos, messages, notes, and contacts. The defendant argues it is a "stretch" to conclude he saved years' worth of data to his account. (Dkt. 82 at 21). To the contrary, the conclusion that he used his account to do the very thing it is designed to do—save copies of large volumes of data for an extended time—is an unremarkable one and certainly was a "reasonable inference from the facts presented based on common sense and experience." *Singh*, 390 F.3d at 182.

Similarly, records from Meta that were received during the investigation confirmed the existence and use of the defendant's Facebook and Instagram accounts. (Meta Aff. ¶¶ 23(c), 23(f)). The Meta Affidavit described the evidence supporting probable cause that the defendants used Facebook and Instagram to communicate with victims, document events surrounding the subject offenses, and communicate with each other and others about the offenses, (Meta Aff. ¶¶ 24-26), that evidence found in the accounts was likely to consist of evidence of the subject offenses (Meta Aff. ¶¶ 27-31), and that the evidence could be found in the account "even years" after the crimes

occurred (Meta Aff. ¶ 32). The defendant argues that the only explicit description of the use of his accounts in the Meta Affidavit related to ███████████████████████████ ███████████████, but all that was required for the warrant was probable cause to believe that evidence of the subject offenses would be found in the defendant's accounts. *Cf. United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990) ("The agents were under no obligation to establish that Riley had used the locker during the pendency of the marijuana transaction that resulted in his arrest"). It was no error for Judge Aaron to conclude there was probable cause to believe that evidence of the subject offenses would be found in Tal Alexander's accounts.

### E.    The Warrant to Search Tal Alexander's Manhattan Apartment was Valid

Tal Alexander claims that the evidence seized from his Manhattan apartment should be suppressed because the warrant affidavit relied on evidence from his iCloud account that he has argued should be suppressed. (*See* Dkt. 82 at 26-27; Dkt. 83 Ex 32 (the "███████ Affidavit")). For the reasons described above, the defendants' iCloud accounts were searched pursuant to a valid warrant, and the Court should reject the argument on this basis alone. Even if the Court were to suppress the evidence from Tal Alexander's iCloud account, however, that would not require the suppression of the evidence found during the execution of the warrant to search Tal Alexander's apartment. A warrant issued based on an affidavit that relied in part on illegally seized evidence remains valid if the untainted evidence in the affidavit supported the probable cause finding. *See United States v. Reilly*, 76 F.3d 1271, 1282 n.2 (2d Cir. 1996).

Without even considering the evidence from Tal Alexander's iCloud account that was described in the ██████ Affidavit, (*see* ██████ Aff. ¶¶ 11(a)(v) – 11(c)), Judge Ricardo had more than enough evidence to find probable cause and authorize the warrant. In addition to the victim accounts that were contained in the Meta Affidavit and incorporated into the ██

███ Affidavit (*see* ███. Aff. ¶ 6), the affidavit contained additional information that Judge Ricardo considered.

Most significantly, before Judge Ricardo issued the warrant, the defendants had been indicted. Tal Alexander specifically had been charged with one count of conspiring to commit sex trafficking, between 2010 and 2021, and two counts of substantive sex trafficking by force, fraud, or coercion, in 2011 and 2016. (*See* ███. Aff. ¶ 8). Judge Ricardo was entitled to rely on the grand jury's indictment in making his probable cause finding. *See United States v. Feng Ling Liu*, No. 12 Cr. 934 (RA), 2014 WL 101672, at *5 (S.D.N.Y. Jan. 10, 2014). Judge Ricardo was also presented with and could consider the evidence from Oren Alexander and Alon Alexander's iCloud accounts that showed the defendants using text messages to communicate with each other to commit the subject offenses. (*See* ███. Aff. ¶ 11(a)(i)-(iv)).[28] The affidavit also explicitly described numerous instances where the defendants had filmed themselves committing the subject offenses (*see* ███. Aff. ¶ 9) and described that those photos and videos were likely to be found in the residence (*see* ███. Aff. ¶ 20).

Taken together, the victim accounts described in the Meta Affidavit, the grand jury's indictment, the use of electronic communications to commit the subject offenses taken from sources other than Tal Alexander's iCloud account, and the evidence that many of the subject offenses had been recorded supplied more than sufficient evidence for Judge Ricardo to make the probable cause finding and issue the warrant to search of Tal Alexander's apartment.

---

[28] Tal Alexander lacks standing to challenge the seizure of evidence from his co-defendants' iCloud accounts, and he has not argued otherwise. *See United States v. Ray*, 541 F. Supp. 3d 355, 380 (S.D.N.Y. 2021).

### F.    Oren and Alon Alexander's Challenges to Other Warrants Fail

Without developing the arguments, Oren and Alon Alexander have also moved to suppress (1) evidence seized from their Raya and Meta accounts, pursuant to search warrants; (2) evidence acquired from cellphone location warrants; and (3) evidence seized from their residences, pursuant to search warrants. (*See* Dkt. 108). The Court can quickly reject each motion.

For the searches of their Raya and Meta accounts, the defendants principally "adopt and incorporate arguments raised in their motion to suppress the iCloud warrant," and the motion can be rejected for the same reason their iCloud motion failed. (Dkt. 108 at 2). Their arguments about the addition of a subject offense for obstruction of justice, in violation of 18 U.S.C. § 1591(d), does no more than repeat arguments about an alleged seizure of privileged materials and can be rejected for the same reasons described below in section V. Additionally, the defendants claim that the affidavits contain "the most horrendous of the false allegations made in the warrant applications," which resulted from a purported failure to investigate (Dkt. 108 at 3). The defendants do not even attempt to meet the two prongs of the *Franks* standard with respect to this claim.  These new allegations were properly included, did not require that the Government fully investigate them before seeking the warrant, and do not undermine the probable cause of the Meta Affidavit.

The entirety of defendants' argument to suppress cellphone location information is an allegation of a "false claim that there was a need for a cell site locator throughout 2024." (Dkt 108 at 4). The affidavit in support of that warrant clearly described that the evidence would "provide evidence of the movements and travel of the Alexander Brothers, which is likely to be evidence of the Subject Offenses," would provide evidence of the defendants current locations that would "enable the Investigating Agency to obtain and successfully execute warrants to seize the Target Cellphones and search them for additional evidence of the Subject Offenses," and "lead to the

identification of the residences of the Alexander Brothers, which in turn is likely to lead to the discovery of additional evidence of the Subject Offenses." (*See* Cellphone Location Aff. ¶¶ 12-14). Judge Moses properly found that that warrant too was backed by probable cause.

The defendants argue that defects with the warrants to search their homes stemmed from a "privilege violation, compounded by the fruits of prior illegal search warrants." (Dkt 108 at 4). The alleged privilege violation merits no suppression, as discussed below, but in any event, removing the allegedly privileged material from the warrant affidavits has almost no impact on the probable cause analysis. (*See* ███████. Aff. ¶ 13; ███████. Aff. ¶ 13). And as described above, excising evidence obtained from the iCloud warrants from the premises warrant applications does not defeat probable cause.

### G.  Law Enforcement Executed the Search Warrants in Good Faith

#### 1.  Applicable Law

Suppression of evidence is an "extraordinary remedy," *United States v. Ganias*, 824 F.3d 199, 221 (2d Cir. 2016) (en banc), which the Supreme Court has explained "has always been our last resort, not our first impulse," *Herring v. United States*, 555 U.S. 135, 140 (2009). Under the good faith exception, the exclusionary rule and its remedy of suppression do not apply to "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" because suppression can have no deterrent effect on law enforcement officers who relied on a judicial officer's *ex ante* approval of their conduct. *United States v. Leon*, 468 U.S. 897, 918-20, 922 (1984). If the officer's reliance on the warrant was objectively reasonable, suppression is not warranted. *See, e.g.*, *Singh*, 390 F.3d at 183. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. The

exclusionary rule is appropriate only where law enforcement "exhibit[s] deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Raymonda*, 780 F.3d at 117-18.

Where a search warrant has been issued by a judicial officer, the pivotal question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. In such circumstances, the good faith exception applies unless one of the following situations exists:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992).

### 2.    Discussion

Even if there had been a defect in any of the challenged warrants, the executing agents' reliance upon the warrants was objectively reasonable, rendering suppression inappropriate. *See, e.g.*, *Clark*, 638 F.3d at 100. Here, there is no evidence that any law enforcement officer had knowledge that the warrants were not supported by probable cause, lacked particularity, or were overbroad—as discussed above, the warrants were based on probable cause, were particularized, and the items to be seized were tied to the probable cause set out in the affidavits. *See Leon*, 468 U.S. at 919 ("[E]vidence obtained from a search should be suppressed only if . . . the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional."). Therefore, evidence obtained pursuant to the warrants should not be suppressed.

Moreover, the exceptions to the good faith rule do not apply here. The defendants do not argue that the magistrate judges issuing each of the contested warrants "wholly abandoned [their] judicial role[s]," and, as set forth in response to the *Franks* challenges, the magistrate judges were

not "knowingly misled." *Clark*, 638 F.3d at 100. The Affidavits supporting the warrants contained detailed recitations of evidence from numerous sources—a blunt contrast to warrants "so lacking in indicia of probable cause as to render reliance upon [them] unreasonable." *Id.* Indeed, five different magistrate judges in two districts agreed that there was sufficient evidence of probable cause and authorized the warrants. Finally, for all the reasons set forth above, plainly none of the contested warrants were "so facially deficient that reliance upon [them was] unreasonable." *Id.* Accordingly, suppression is not appropriate even if the warrants were defective—which they were not.

## III.    THE MOTION TO PRECLUDE VICTIMS FROM IDENTIFYING THEIR ATTACKERS IN COURT SHOULD BE DENIED WITHOUT A HEARING

The defendants ask the court to preclude victims from making in-court identifications of their attackers because the defendants allege that identifications at trial would be tainted by allegedly suggestive photo book identification procedures during investigative interviews. (*See* Dkt. 82 at 27-30; Dkt 108 at 1-2). Because the identification procedures were not suggestive and because any witness identifications of the defendants at trial would be reliable, the defendants' motion should be denied.

### A.    Applicable Law

Although "due process can sometimes prevent a witness who identified a defendant before trial from identifying the defendant at trial," those "circumstances are scarce," and a pre-trial identification will be excluded "only if it was *both* produced through an unnecessarily suggestive procedure *and* unreliable." *United States v. Gershman*, 31 F.4th 80, 92 (2d Cir. 2022) (emphases in original); *see also Jarrett v. Headley*, 802 F.2d 34, 40-41 (2d Cir. 1986) (pretrial photographic identification procedures violate due process only if the procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.").

The first step requires the court to "determine whether the pretrial identification procedures were unduly suggestive of the suspect's guilt." *Gershman*, 31 F.4th at 92. In other words, a court must consider "whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator." *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). In the context of a photo array, examples of unduly suggestive characteristics include "the use of a very small number of photographs," "the use of suggestive comments," or displaying the accused's photograph in a way that "so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) (quotation marks and alterations omitted). If a court finds the pretrial identification procedure not to be unduly suggestive, "there is no reason to undertake the second step of the inquiry" that assesses whether the witness's identification is independently reliable. *Kelly*, 257 F.3d at 133. In this circumstance, "any question as to the reliability of the witness's [in-trial] identification goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.3d 934, 973 (2d Cir. 1990).

Even if the pretrial identification procedure was unduly suggestive, however, "exclusion of the eyewitness's identification is not automatic." *United States v. Rivera*, No. 19 Cr. 131 (PAE), 2019 WL 6497504, at *3 (S.D.N.Y. Dec. 3, 2019). Rather, the court considers whether the in-court identification is independently reliable by considering the five *Biggers* factors: "(1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification." *United States v. Arroyo*, 600 F. App'x 11, 14-15 (2d Cir. 2015); *see also Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). If the "indicia of reliability are strong enough to outweigh

the corrupting influences of the police-arranged suggestive circumstances, the identification evidence will be admitted, and the jury will ultimately determine its worth." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012); *United States v. Fernandez*, 456 F.2d 638, 642 (2d Cir. 1972) (declining to suppress identification despite suggestive photo array based on independent reliability of witness identification).

### B.    Discussion

### 1.    The Photo Book Procedure Was Not Unduly Suggestive

The photo book identification procedure in this case, which involved the sequential display of between approximately seven and twenty individual photographs to witnesses who had already identified their attackers by name, (*see* Dkt. 83 ¶ 23), is like those routinely upheld by courts and easily passes constitutional muster. *See Maldonado-Rivera*, 922 F.2d at 974 ("The size of the array, nine photographs, was not so small as to cause undue focus."); *United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 112 (2d Cir. 2020) ("We have also held that an array of nine, or even as few as six, photographs was not so small as to suggest the identification of the suspect . . . ."); *United States v. Jiminez*, No. 20 Cr. 122 (LTS), 2020 WL 7231062, at *2 (S.D.N.Y. Dec. 8, 2020) ("[C]ourts in this circuit have held that identification procedures consisting of the display of a single photograph to a witness who states that the witness already knows the perpetrator, in order to confirm the perpetrator's identity, are not unduly suggestive."); *Rivera*, 2019 WL 6497504, at *4 (finding "not, at all, suggestive," a photo book that was "merely a sequential compilation of dozens of photographs," of "men and women of diverse races," each a "frontal shot of the subject's face and/or face and upper body" without "identifying language or other 'signposts'"); *United States v. Hall*, No. 14 Cr. 105 (VM), 2014 WL 2464943, at *2 (S.D.N.Y. 2014) ("[C]ourts have found that photo arrays are less suggestive when shown one-by-one.").

Tal Alexander argues that the "composition of the photo books was highly unusual and unduly suggestive" because the photo books included photos only of "individuals that had some role in the Government's investigation," lacked "fillers," and did not include "individuals that resembled Tal." (Dkt. 82 at 28). He argues that the inclusion of only photos related to the investigation "strays far from the common photo book procedure that courts have upheld," and cites to *United States v. Rivera* in support of this argument. (Dkt. 82 at 28). In *Rivera*, however, Judge Engelmayer found the use of photo books that "never contained so-called 'dummy' or 'filler' photographs—*i.e.*, photographs of individuals who were entirely unconnected to the investigation," was not unduly suggestive. *Rivera*, 2019 WL 6497504, at *2, 4-5. The defendant also cites to *United States v. Reed*, No. 11 Cr. 487 (RJS), 2012 WL 205358 (S.D.N.Y. June 6, 2012), in support of the argument that the photo book procedure was unduly suggestive. (Dkt. 82 at 28-29). But *Reed* likewise is no help to the defendant. The principal issue in *Reed* that led Judge Sullivan to find an unduly suggestive photo identification was that almost two years before the photo book identification procedure, law enforcement officers conducted essentially a single-photo identification with the witness. *See Reed*, 2012 WL 205358, at *5-6. The court took issue with the photo book procedure too, namely that the third, unidentified perpetrator was grouped with the two known perpetrators, *see id.* at *6, but none of the issues present in *Reed*—a single-photo identification or suggestive grouping—exist in this case.

As to the claim that the photo book contained too few "photos resembling Tal," this too is easily dispatched. (*See* Dkt. 82 at 28). To start, "the identification procedure here was not prompted by a witness's identification of an as-yet unidentified perpetrator with a particular characteristic or characteristics," and was an investigative tool that was "used across the board, with the question put merely being whether the witness recognized anybody in the book, for any reason." *Rivera*,

2019 WL 6497504, at *4 n.1. As such, there was no requirement that the photo books have any additional photos resembling Tal Alexander or his brothers. *See id.* But in any event, the photo books consisted mostly of young, white men with short and medium-length brown hair, including the defendants, who are, of course, siblings. This was more than sufficient. *Cf. Fernandez*, 456 F.2d at 641 ("[T]he Government cannot be expected to produce photographs of persons identical with the accused except in minor details . . . ."). For similar reasons, the additional claim by Oren and Alon Alexander regarding their close physical resemblance does not change the analysis. (*See* Dkt. 108 at 1-2). Nothing about the fact that brothers and twins are charged together made the identification procedure more suggestive. To the contrary, the inclusion of a defendant's brother and/or twin in the photo book lessened the risk that the photo book identification would be unduly suggestive.

## 2.    The Victims' Pretrial Identifications Are Independently Reliable

Because the pretrial identification procedures were not unduly suggestive, the Court need not reach the second step of the inquiry—that is, whether the identifications were independently reliable.  Regardless, the *Biggers* factors counsel in favor of finding that they were. The victims in this case met and interacted with the defendants for, at a minimum, hours, and often longer, leading up to, and in the aftermath of the assaults. *See United States v. Salameh*, 152 F.3d 88, 126-27 (2d Cir. 1998) (per curiam) (finding in-court identification independently reliable where the witness's only in-person interaction with the defendants was "when he pumped gas for them" on the morning of the crime); *United States v. Stanley*, No. 09 Cr. 141 (NGG), 2009 WL 5066864, at *7 (E.D.N.Y. Dec. 22, 2009) ("[E]ven brief glimpses and short conversations may support a finding of independent reliability . . . ."). These accounts and identifications are corroborated, including in many instances by communications between the defendants and their victims around the times of the assaults or by photographs of the defendants and the victims around the times of the assaults.

The defendants drugged many of their victims before they assaulted them (*see* Dkt. 82 at 29-30), and while this will be a basis for cross-examination about the victims' identifications of the defendants, "identification evidence is for the jury to weigh." *Gershman*, 31 F. 4th at 93.

Because the defendants have not demonstrated that the photo books were unduly suggestive and because the identifications are independently reliable, the defendants' motion should be denied and the Court should reject the defendants' request for an evidentiary hearing. *See e.g., Rivera*, 2019 WL 6497504, at *6 (declining request for a hearing based on failure to allege sufficient facts and collecting cases).

## IV.    THE MOTION FOR SEVERANCE SHOULD BE DENIED

Oren Alexander, joined in part by Alon Alexander,[29] moves for severance, asking the Court to try him separately from his codefendants.  (*See* Dkt. 102).  The motion should be denied.

### A.    Applicable Law

There is a "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see* Fed. R. Crim. P. 8(b). "Joint trials play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). They promote efficiency and "generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit." *Id.* at 210. When defendants have been properly joined under Federal Rule of Criminal Procedure 8, a defendant seeking severance under Federal Rule of Criminal Procedure 14 shoulders a "heavy burden of showing that joinder will result in

---

[29] It appears that Alon Alexander is only moving for severance from Oren Alexander and is not seeking to be tried separately from Tal Alexander.

substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks and citation omitted).

The presumption in favor of joint trials is so strong that the Second Circuit has stated that the "principles that guide the district court's consideration of a motion for severance usually counsel denial." *Rosa*, 11 F.3d at 341. Therefore, it is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]." *Zafiro*, 506 U.S. at 540. Rather, a district court should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539; *see also United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials"). Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (citing *Richardson*, 481 U.S. at 211).

The presumption in favor of joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." *Salameh*, 152 F.3d at 115. "[T]he cases are legion that there is a strong public interest in joint trials where, as here, the defendants are . . . charged in the same conspiracy." *United States v. Pirro*, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999) (collecting cases).

Even where some evidence is admissible against only one defendant in a multi-defendant case, severance is not automatically granted. The Second Circuit has repeatedly recognized that "the fact that evidence may be admissible against one defendant but not against another does not necessarily require a severance." *United States v. Carson*, 702 F.2d 351, 367 (2d Cir. 1983); *see*

*also United States v. Losada*, 674 F.2d 167, 171 (2d Cir. 1982). Any spillover prejudice that may

occur as a result of trying defendants jointly—even those who are not charged with the same

offenses—is generally corrected by the Court's instruction that the jury consider the guilt of each

defendant individually, an instruction that jurors are presumed to be able to follow. *United States*

*v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984); *see also Zafiro*, 506 U.S. at 540-41.

Among the factors considered by courts in determining whether severance is warranted

are: (1) the number of defendants and the number of counts; (2) the complexity of the Indictment;

(3) the estimated length of the trial; (4) disparities in the degrees of involvement by defendants in

the overall scheme; (5) possible conflict between various defense theories; and (6) prejudice

resulting from evidence admissible as to some defendants, but not others. *See United States v.*

*Santiago*, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001).

## B.    Discussion

Oren Alexander moves for severance on the grounds that while his codefendants Alon

Alexander and Tal Alexander are both charged in Count Five with sex trafficking of a minor by

force, fraud, or coercion, he is not charged in a substantive count relating to a minor. Joined by

his twin brother Alon Alexander, Oren Alexander also moves for severance on the basis that they

will be prejudiced if both twins are tried together. Neither defendant has come anywhere near the

"heavy burden" required to show that a joint trial would cause them substantial prejudice.

First, it is well settled that "[w]here a defendant is a member of a conspiracy, all the

evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-

defendants, is admissible against the defendant." *Salameh*, 152 F.3d at 111. "And even if it were

not, the fact that the jury may hear evidence that would be otherwise inadmissible in a trial of a

single defendant does not, by itself, warrant severance." *United States v. Washington*, No. 21-CR-

603 (VEC), 2023 WL 6219203, at *6 (S.D.N.Y. Sept. 22, 2023). Here, each of the defendants is

charged in the same sex trafficking conspiracy, which includes the sex trafficking of a minor committed by Alon Alexander and Tal Alexander.[30]  As a result, there will be significant overlap between the evidence introduced at trial against Oren Alexander and against Alon Alexander and Tal Alexander.  For example, the Government expects that many of the same witnesses, including victims, will testify regarding each of the defendants' participation in the conspiracy.  Requiring victims to testify at multiple trials would be unnecessarily traumatizing and burdensome, as well as an inefficient use of judicial resources.  *See id.* ("Finally, considerations of judicial economy counsel in favor of joinder. Proof of the charges will involve overlapping evidence as to facts and participants, and severance would require the Court to preside over duplicative trials and force witnesses to testify twice.").

Second, Oren Alexander's argument that the jury will find the fact that his brothers are charged with sex trafficking a minor to be so much more prejudicial than the other conduct is mere conjecture. "It is well established that 'differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.'" *United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (quoting *Carson*, 702 F.2d at 366-67). Here, the evidence at trial will show that Oren Alexander conspired with his brothers to sex traffic, sexually assault, and rape dozens of women.  The defendants worked together to identify potential victims, lure them to particular vacation destinations with the promise of material benefits, then violently sexually assault and rape the victims, often after drugging them, frequently with one or more of his codefendants. The argument that Oren Alexander will be prejudiced by evidence of a particular instance of sex trafficking committed by his codefendants is without merit. Distinctions

---

[30] For the reasons outlined in Section I(A)(3)(i) and (ii), *supra*, Oren Alexander is simply incorrect that Count One charges multiple conspiracies.

in the circumstances surrounding certain instances of sex trafficking, sexual assaults, or rapes, are not grounds for severance. *See e.g.*, *United States v. Robles*, No. 04 Cr. 1036 (GEL), 2005 WL 957338, at *2 (S.D.N.Y. Apr. 22, 2005) ("Severance will rarely be appropriate simply because one defendant is charged with fewer or less culpable acts than his co-defendants, or because there is less evidence against him.").

Oren Alexander and Alon Alexander's argument that severance should be granted because they are twins is similarly unavailing. Even if Oren Alexander and Alon Alexander seek to raise misidentification defenses, severance is not necessary because mutually antagonistic defenses do not require severance. *See Zafiro*, 506 U.S. at 538–39 ("Mutually antagonistic defenses are not prejudicial *per se*. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."). "To obtain a severance on the ground of antagonistic defenses, a defendant must show that the conflict is so irreconcilable that acceptance of one defendant's defense requires that the testimony offered on behalf of a codefendant be disbelieved." *United States v. Tutino*, 883 F.2d 1125, 1130 (2d Cir. 1989). Such a conflict is simply not present here, particularly where the defendants worked together to carry out the charged conduct—Alon Alexander and Oren Alexander cannot plausibly argue, as they "must to succeed on an inconsistent-defenses argument, that if the jury were to accept [one defendant's] defense, it would necessarily convict [the other]." *Washington*, 2023 WL 6219203 at *6. Indeed, the Government expects multiple victims to testify that Oren Alexander and Alon Alexander took turns raping and sexually assaulting them on the same occasion, rendering any misidentification argument utterly irrelevant. And on occasions when only one of the twins participated in a particular attack, defense counsel will have the opportunity to cross examine the Victims on the issue of the identity of their attacker.

Oren Alexander's reliance on a district court case from Arizona, *United States v. Monge*, Cr-10-863-TUC-RCC (CRP), 2011 WL 13176072 (D. Ariz. July 14, 2011), does not compel otherwise.  In *Monge*, the magistrate judge recommended severing the trial of two identical twin sisters charged with participating in a marijuana distribution conspiracy. *See id.* at \*2.  The *Monge* court focused on the similarity of the sisters' names—Frances and Mary Francis—particularly given that numerous witnesses identified the defendants only by their first names. *Id.*  Further, it is clear that the defendants in *Monge* had each committed to arguing that the other was the sole perpetrator of the crime; here, Alon Alexander and Oren Alexander have merely said that they may generally argue misidentification.  Notably, it appears that none of the witnesses in *Monge* were going to testify about specific criminal activity undertaken by both twins, in contrast to this case.  Here, we anticipate introducing substantial evidence at trial demonstrating that both twins were active participants in specific criminal activity together, undercutting any argument that a misidentification defense provides a basis for severance.

Finally, any spillover prejudice that may otherwise be at risk will be corrected by the Court's instruction that the jury consider the guilt of each defendant individually. *Potamitis*, 739 F.2d at 790; *see also United States v. Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992) ("The district court countered any possible spillover with specific instructions to the jury . . . that the jury should consider the evidence separately against each defendant."); *Feng Ling Liu*, 2014 WL 917048, at \*2 ("The Court is confident that instructing the jury 'to consider the defendants individually' will mitigate any prejudice to [the defendant] attributable to the allegedly disproportionate amount of evidence against her alleged coconspirators.") (quoting *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003)).

## V.     THE MOTIONS FOR AN EVIDENTIARY HEARING BASED ON VIOLATION OF ATTORNEY-CLIENT PRIVILEGE SHOULD BE DENIED

Alon Alexander, joined by Oren Alexander and Tal Alexander, moves for an evidentiary hearing to "address and remedy the violation of attorney-client privileged nature of digital communications." (Dkt. 103 at 1). The motion concerns the Government's brief access to records (that had been cleared by the Government's filter team) that the defendants now claim were compiled for the purposes of sharing the materials with counsel. Because the defendants have not even attempted to make the requisite showing to obtain a hearing, the motion should be denied.

### A.     Background

In the course of its investigation into the Alexander Brothers, the Government obtained a search warrant for each of the defendants' iCloud accounts on or about August 16, 2024. After receiving the account data from Apple and prior to review by any member of the team responsible for investigating, charging, and trying the present case (the "Case Team"), a separate team conducted a review of each of the accounts for potentially privileged material (the "Filter Team"). The Filter Team is comprised of FBI agents and support personnel from or contracted by the SDNY coordinated by an Assistant United States Attorney, none of whom are or ever will be part of the Case Team. Since the start of the investigation, the Government has employed the Filter Team to review material that may contain attorney-client communications or work product. The Filter Team then either (1) sends material that is not identified as privileged "over the wall" to the Case Team, or (2) segregates potentially privileged material from the Case Team entirely. The Filter Team completed their privilege review of the iCloud accounts in November 2024. Until the defendants were arrested on December 11, 2024, the Government's investigation was covert and

all privilege reviews were necessarily done without input from defense counsel.[31]  To facilitate the privilege review, the Case Team provided the Filter Team with a list of attorneys known to be involved in the Alexander Brothers' civil lawsuits.  The Filter Team also implemented other review techniques, including searching for legal generics, to identify potentially privileged material that would not hit on known attorneys, including work product and communications involving lawyers other than those provided by the Case Team.  The Filter Team segregated potentially privileged material before providing any remaining data to the Case Team.

After the Filter Team completed its review, the Case Team began to review the content of each of the iCloud Accounts that the Filter Team had released, including Alon Alexander's iCloud Account.  During that review, the Case Team saw several screenshots of what appeared to be publicly available information, such as news articles and social media profiles, along with several photographs relating to victims (the "Screenshots and Photographs"), including some victims who had sued or publicly spoken out against one or more of the Alexander Brothers.  After finding the Screenshots and Photographs, a member of the Case Team viewed the folder structure that showed where the Screenshots and Photographs had been saved in Alon Alexander's iCloud account and

---

[31] After the investigation became overt, the Case Team invited defense counsel to provide a list of attorneys and to directly advise the Filter Team of any additional information that could assist the Filter Team in segregating any privileged material that would not be easily discovered in attorney-client communications.  Defense counsel provided an updated counsel list, advised that the defendants have a joint defense agreement in connection with both the civil lawsuits and the criminal case, and asserted claims of marital privilege over communications with each defendant's spouse.  It is the Case Team's understanding that defense counsel have not contacted the Filter Team to alert them to the location of any particular privileged material.  Out of an abundance of caution, after receiving this information from defense counsel, the Filter Team conducted a supplemental privilege review of each of the defendants' iCloud accounts to ensure that all potentially privileged information had been segregated.  The Case Team stopped reviewing each of the iCloud accounts while the supplemental reviews were conducted.  The supplemental privilege review of Alon Alexander's iCloud account is ongoing and the Filter Team will segregate the contents of "The Case" folder from the Case Team.

noted that the Screenshots and Photographs were within a folder entitled "The Case."  The Case Team did not encounter any communications with counsel, notes of conversations with counsel, or anything that appeared to have been drafted by the defendants or their counsel in the course of its review of Alon Alexander's iCloud.  The Case Team did not rely upon the Screenshots or Photographs to obtain any legal process in connection with the investigation.

At Alon Alexander's detention in the Southern District of Florida hearing following his arrest in Miami, the Government referenced the compilation of the Screenshots and Photographs relating to particular victims.  Alon Alexander's counsel asserted that the Screenshots and Photographs were privileged, stating that Alon Alexander[32] had collected the materials to provide to his counsel for the purpose of obtaining legal advice.  Following that proceeding, while not conceding that the Screenshots and Photographs were privileged, the Case Team put that material aside to allow the Filter Team to conduct a second privilege review.  The Case Team has not accessed the Screenshots and Photographs since Alon Alexander's detention hearing on December 30, 2024, and at this time is not litigating whether such materials are admissible at trial.

## B.    Applicable Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. amend. VI.  The Sixth Amendment is violated when the Government intentionally interferes with the attorney-client relationship.  *See United States v. Schwimmer*, 924 F.2d 443, 447 (2d Cir. 1991).  In cases in which the Government has intentionally intruded on the attorney-client privilege, such conduct "warrants careful scrutiny."  *Id.*  "Such an exacting degree of scrutiny is not required, however, in cases

---

[32] While Alon Alexander is a lawyer, the Government has no information indicating that he has ever practiced law, and at the time of the Government's investigation, Alon Alexander's bar admission in New York was delinquent.

where 'the government's intrusion into territory protected by [the defendant's] attorney client privilege *cannot be characterized as intentional*.'" *United States v. Tourant*, No. 22 Cr. 276 (LTS), 2023 WL 5276776, at *13 (S.D.N.Y. Aug. 15, 2023) (emphasis in original) (quoting *United States v. Weissman*, No. 94 Cr. 760 (CSH), 1996 WL 751386, at 12 (S.D.N.Y. Dec. 26, 1996)). Furthermore, absent a government intrusion into the attorney-client relationship that is "manifestly and avowedly corrupt," a defendant must demonstrate prejudice stemming from the government's conduct. *United States v. Landji*, No. 18 Cr. 601 (PGG), 2021 WL 5402288, at *23 (S.D.N.Y. Nov. 18, 2021) (quotation omitted). Indeed, "[w]here the intrusion upon an attorney-client communication is unintentional or justified there can be no violation of the Sixth Amendment without a showing that the intercepted communication was somehow used against the defendant to the defendant's prejudice." *United States v. Sattar*, No. 02 Cr. 0395 (JGK), 2002 WL 1836755, at *6 (S.D.N.Y. Aug. 12, 2002).

In order to be entitled to a hearing pursuant to *Kastigar v. United States*, 406 U.S. 441 (1972) "to determine whether the prosecution was tainted by exposure to privileged information . . . [d]efendants have the burden of showing a 'factual relationship' between the privileged information and the prosecution." *United States v. Sharma*, 18 Cr. 340 (LGS), 2019 WL 3802223, at *5 (S.D.N.Y. Aug. 13, 2019) (denying a hearing where potentially privileged search warrant returns were inadvertently provided to the trial team; collecting cases). In other words, a defendant is required to show that privileged materials have an "apparent bearing on what are likely to be the issues in the case" and would "give the Government [an] unfair 'tactical advantage' and insight into Defendants' 'means of defeating the charges.'" *Id*. It is the defendant's burden to "show 'a distinct, as opposed to speculative, possibility of taint.'" *United States v. Hoey*, 15 Cr. 229 (PAE), 2016 WL 270871, at *4 (S.D.N.Y. Jan. 21, 2016), *aff'd*, 725 F. App'x 58, 61 (2d Cir. 2018)

(quoting *United States v. Helmsley*, 726 F. Supp. 929, 933 (S.D.N.Y. 1989)). "Failure to show the requisite factual relationship is sufficient to end the inquiry." *Sharma*, 2019 WL 3802223, at *5 (quoting *United States v. Blau*, 159 F.3d 68, 72 (2d Cir. 1998)).

Where certain privileged material passes to the prosecution team, "[t]he general remedy for violation of the attorney-client privilege is to suppress introduction of the privileged information at trial,' not to order wholesale suppression" of other, non-privileged materials. *United States v. Lumiere*, 16 Cr. 483 (JSR), 2016 WL 7188149, at *6 (S.D.N.Y. Nov. 29, 2016) (quoting *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1047 (D. Nev. 2006)); *see also United States v. Schulte*, 17 Cr. 548 (PAC), 2019 WL 5287994, at *2 (S.D.N.Y. Oct. 18, 2019) (same); *United States v. Patel*, 16 Cr. 798 (KBF), 2017 WL 3394607, at *6 (S.D.N.Y. Aug. 8, 2017) (same).

### C.    Discussion

#### 1.    The Defendants' Request for an Evidentiary Hearing Based on Attorney-Client Privilege Should Be Denied

As a threshold matter, the Screenshots and Photographs viewed by the Case Team are not privileged.  From the brief time that the Case Team had access to the Screenshots and Photographs, the Case Team does not recall viewing anything besides publicly available nonprivileged information or photographs taken years before any civil or criminal litigation was contemplated. Even if the defendants sent the Screenshots and Photographs to counsel for the purpose of obtaining legal advice, it is black-letter law that "[a]lthough an attorney-client communication is privileged and may not be divulged, the underlying information or substance of the communication is not . . . so privileged." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 945 (2d Cir. 1992).  Courts have routinely held that nonprivileged materials do not become privileged merely because they are provided to an attorney to obtain legal advice. *See Fisher v. United States*, 425 U.S. 391, 403-404

(1976); *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962) ("pre-existing documents and . . . records not prepared by the [client] for the purpose of communicating with their lawyers in confidence . . . acquired no special protection from the simple fact of being turned over to an attorney."); *see also United States v. Walker*, 243 F. App'x 621, 623-24 (2d Cir. 2007) ("putting otherwise non-privileged business records . . . in the hands of an attorney . . . does not render the documents privileged or work product" (citing *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170-71 (2d Cir. 2003))). "Any other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney." *Colton*, 306 F.2d at 639; *see also Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1165 (2d Cir. 1992) (attorney-client privilege did not apply to phone records "given by the client to his attorney in the course of seeking legal advice" because "[t]hose documents, though transmitted to [counsel], are not the client's confidential communications, are not within the privilege, and did not become exempt from discovery by that transmission" (citing *Fisher*, 425 U.S. at 403-04; *Hickman v. Taylor*, 329 U.S. 495, 508 (1947) ("the protective cloak of [attorney-client] privilege does not extend to information which an attorney secures from a witness")))).

Even assuming *arguendo* that the defendants have met their burden of demonstrating that the Screenshots and Photographs were privileged, the Court should not hold an evidentiary hearing.

The defendants cannot make out a Sixth Amendment violation. The Case Team's access to any privileged material in the Screenshots and Photographs cannot be described as an intentional violation of the attorney-client relationship, let alone an intrusion that is "manifestly and avowedly corrupt." Indeed, the Case Team took steps to avoid any intrusion in the defendants' attorney-client relationships by providing the iCloud accounts to the Filter Team to conduct a privilege

review prior to any review by the Case Team. Where the Government has obtained potentially privileged material, use of a filter team "constitutes an action respectful of, rather than injurious to, the protection of privilege." *United States v. Avenatti*, 559 F. Supp. 3d 274, 282 (S.D.N.Y. 2021) (quoting *In re Grand Jury Subpoenas*, 454 F.3d 511, 522-23 (6th Cir. 2006)). Indeed, the use of a filter team has been deemed adequate protection of potentially privileged material obtained by the Government—pursuant to a search warrant or otherwise—time and again in cases in this District. *See Avenatti*, 559 F. Supp. 3d at 282 (noting that the use of a filter team "is a common procedure in this District and has been deemed adequate in numerous cases to protect attorney-client communications" and citing multiple cases).

The Case Team acted entirely appropriately and in good faith when it directed that the Filter Team review the iCloud accounts before providing any materials to the Case Team. The Case Team's use of the Filter Team demonstrates its good faith efforts to *avoid* coming into contact with privileged material. And even if the Filter Team inadvertently released privileged material, the Case Team's use of the Filter Team in the first place negates a finding of intentional intrusion on the attorney-client privilege. *See Tourant*, 2023 WL 5276776, at *15 ("[I]n determining whether the government has intruded upon privilege, courts often consider whether the prosecution took reasonable precautions to avoid exposure to privileged materials."); *Sharma*, 2019 WL 3802223, at *3 (finding no intentional intrusion on the attorney-client privilege when Government used filter protocol for materials that it knew may contain privileged communications and the filter protocol was effective as to all but 21 documents). Even in cases in which the case team did *not* employ a filter team to review potentially privileged material, courts in this District have declined to find constitutional violations. *See Landji*, 2021 WL 5402288, at *23-24 (finding no "reckless

disregard" for the defendants' Sixth Amendment rights after case agents' "cursory review" of privileged material).

Because the defendants cannot demonstrate a "manifestly and avowedly corrupt" intrusion into the defendant's attorney-client relationship, to make out a violation of the Sixth Amendment, they must show that they were prejudiced. *See Schwimmer*, 924 F.2d at 447. After Alon Alexander first raised a privilege claim about the Screenshots and Photographs, the Case Team did not review them further. Nor did the Government rely upon the Screenshots and Photographs in any legal process or in any litigation before this Court. Unless and until the Court determines that the materials are not privileged, the Case Team will not access the Screenshots and Photographs and is not presently seeking to introduce them at trial. Thus, even if the Screenshots and Photographs that the Case Team received were privileged, because the defendants cannot demonstrate prejudice, their Sixth Amendment violation claim fails. *See United States v. Dien*, 609 F.2d 1038, 1043 (2d Cir. 1979) ("[T]o establish a Sixth Amendment violation . . . defendants were required to establish that privileged information had been passed to the government or that the government had intentionally invaded the attorney client relationship, and resulting prejudice."). And the defendants cannot show that viewing the Screenshots and Photographs provided the Government with any insight into the defendants' trial strategy. At the time that they were compiled, the Government's investigation was covert, and any such collection was in connection with the civil lawsuits. While the defense claims to have known about the federal investigation since the summer of 2024, the existence of such an investigation was at best hypothetical, based on unconfirmed reporting of an FBI investigation. Regardless, the generic strategy of collecting cross examination material on anticipated witnesses is employed by nearly every criminal defendant in this District, and is virtually guaranteed in a case that will involve victim testimony. *Cf. Landji*, 2021 WL

5402288, at *27 (refusing to presume prejudice even when Government had access to "highly sensitive, attorney work product material" laying out proposed trial strategy for defendant); *see also United States v. Neill*, 952 F. Supp. 834, 841-42 (D.D.C. 1997) (no prejudice when case team reviewed potentially privileged materials identifying entities and persons but not trial strategy). Any suggestion to the contrary is "wholly conjectural and insubstantial," and cannot support a finding of prejudice. *See Schwimmer*, 924 F.2d at 445-46 (holding that although the Government had "intentionally obtained . . . information protected by the attorney-client privilege," "any influence on the government's case . . . was 'wholly conjectural and insubstantial'").

Further, the defendants are not entitled to a *Kastigar* hearing. *First*, prior to any hearing, the Court would first need to find that the Screenshots were, in fact, privileged. *Second*, even if the Court were to find that the Screenshots were privileged, a *Kastigar* hearing would not be appropriate because the defendant has not raised a "distinct, non-speculative possibility of taint." *Helmsley*, 726 F. Supp. at 933-34. Indeed, the defendants offer no concrete examples of taint, nor do they present a "factual relationship" between the privileged information and the present prosecution. Instead, they ask for a *Kastigar* hearing to conduct what is effectively a fishing expedition into the Government's investigation and an improper attempt to review grand jury materials. This is plainly not the purpose of a *Kastigar* hearing, and the defendants have not satisfied their burden to demonstrate that they is entitled to such a hearing. *See Sharma*, 2019 WL 3802223, at *5 ("To warrant a [*Kastigar*] taint hearing," a defendant has "the burden of showing a factual relationship between the privileged information and the prosecution." (citation omitted)); *United States v. Connolly*, No. 16 Cr. 0370 (CM), 2019 WL 2120523, at *19 (S.D.N.Y. May 2, 2019) ("'An insubstantial and speculative possibility of taint' does not trigger *Kastigar*." (citation omitted)); *Hoey*, 725 F. App'x at 61 (defendant must show a "factual connection

between" the content of "the allegedly privileged information and the charges in [the] case" to warrant hearing).

### 2.    The Defendants' Request to Review Grand Jury Materials Should Be Denied

Grand jury proceedings carry "a presumption of regularity," *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994) (internal citation omitted), and they are secret and closed, *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996); Fed. R. Crim. P. 6(e). "There is a tradition in the United States, a tradition that is older than our Nation itself, that proceedings before a grand jury shall generally remain secret." *In re Petition of Craig*, 131 F.3d 99, 101 (2d Cir. 1997) (internal quotation marks and citation omitted). Although Rule 6(e) permits disclosure of grand jury minutes in some situations, because of the significant need to maintain the secrecy of grand jury proceedings, such disclosure should only be ordered where there is a "compelling necessity" that is "shown with particularity." *See United States* v. *Proctor & Gamble, Co.*, 356 U.S. 677, 682 (1958). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States* v. *Torres*, 901 F.2d 205, 233 (2d Cir. 1990) *abrogated on other grounds by United States* v. *Marcus*, 628 F.36 36, 41 (2d Cir. 2010). Reviewing grand jury minutes is an "extraordinary act." *See United States* v. *Jasper*, No. 00 Cr. 0825 (PKL), 2003 WL 21709447, at *7 (S.D.N.Y. July 23, 2003).

The defendants' request falls well short of a "compelling necessity," and does not include the specific factual allegations required for establishing the need for access to the grand jury proceedings. Instead, the defendants merely request "production of grand jury proceedings tainted by the violation of the attorney-client privilege" without including any specific factual allegations at all. (Dkt. 103 at 5). Contrary to the defendants' assertion, no attorney-client privileged material was presented to the grand jury and they were not shown any of the Screenshots and Photographs.

Because there was no privileged material presented to the grand jury, the entire request is moot and the request should be denied.

## VI.    THE MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED

The defendants seek a bill of particulars regarding the "vague charges" outlined in the S3 Indictment, claiming that "there has never before been a sex trafficking conspiracy prosecution of this nature nature—a nonprostitution, nonprofit sex trafficking conspiracy involving disparate and largely unspecified incidents and circumstances." (Dkt. 74 at 3-4). These defendants, like all defendants, are entitled to sufficient information to understand the charges against them, to prepare a defense, and to protect against double jeopardy. However, the Government has provided such information, and much more, in the Indictment, extensive discovery, and various pretrial filings, including this memorandum. The defendants will also receive trial exhibits, a witness list, and Jencks Act material reasonably in advance of trial. As such, they have not established an entitlement to a bill of particulars under well-established governing law.

### A.    Applicable Law

The proper scope and function of a bill of particulars is to provide sufficient information about the nature of the charge to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense. Fed. R. Crim. P. 7(f); 901 F.2d at 234 (abrogated on other grounds by *Marcus*, 628 F.3d at 41); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam). "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *Torres*, 901 F.2d at 234.

If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," no bill of particulars is required. *Bortnovsky*, 820 F.2d at 574. In exercising its broad discretion to determine whether the charges are "so general" that they require

supplementing, the Court should consider not just the text of the Indictment, but also the discovery and other filings by the Government. *See, e.g.*, *United States v. Kazarian,* No. 10 Cr. 895 (PGG), 2012 WL 1810214, at *25 (S.D.N.Y. May 18, 2012) (noting the "enormous amount of discovery material" which "provide [the defendant] with much of the information sought in the request for a bill of particulars"); *United States v. Pierre-Louis*, No. 16 Cr. 541 (CM), 2018 WL 4043140, at *7 (S.D.N.Y. Aug. 9, 2018) (denying request for bill of particulars where indictment charged sex trafficking conspiracy spanning two decades because indictment and discovery "would suggest that defendant has enough information to apprise him of the charges with enough precision to enable him to prepare a defense, avoid unfair surprise at trial, and preclude a second prosecution for the same offense"); *United States v. Monserrate*, No. 10 Cr. 965 (CM), 2011 WL 3480957, at *4 (S.D.N.Y. Aug. 4, 2011) (denying request for bill of particulars where discovery materials and indictment were "sufficient to apprise the defendant of the charge against him" and to allow him to prepare for trial); *United States v. Samsonov*, No. 07 Cr. 1198 (CM), 2009 WL 176721, at *4 (S.D.N.Y. Jan. 23, 2009) (denying bill of particulars request where indictment, discovery letters, and discovery materials gave defendant adequate information to prepare for trial).

In other words, the defense cannot use a bill of particulars as a general investigative tool, *United States v. Morales*, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003), or as a device to compel disclosure of the Government's evidence prior to trial. *United States v. Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (citing *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974)); *see also United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995). Supplying evidentiary detail is not the function of the bill of particulars. *Torres*, 901 F.2d at 234. Accordingly, the Government is not required to: (a) "particularize all of its evidence," *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991); (b) disclose the precise

manner in which the crimes charged in the indictment were committed, *see Torres*, 901 F.2d at 233-34; or (c) provide the defendant with a preview of the Government's case or legal theory. *United States v. Skelos*, No. 15 Cr. 317 (KMW), 2015 WL 6159326, at *13 (S.D.N.Y. Oct. 20, 2015) ("[A] defendant is not entitled to disclosure of the manner in which the government will attempt to prove the charge, the precise manner in which the government will allege the defendant committed the crimes charged, or a preview of the government's evidence or legal theories."). The ultimate test is whether the information sought is *necessary*, not whether it is helpful. *See United States v. Conley*, No. 00 Cr. 0816 (DAB), 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001); *United States v. Taylor*, 707 F. Supp. 696, 699 (S.D.N.Y. 1989); *United States v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985).

There are good reasons why bills of particulars are warranted only where the allegations in an indictment, as supplemented by discovery and otherwise, are so general as to render it impossible to prepare a defense. Because a bill of particulars "confines the Government's proof to particulars furnished," it can "restrict unduly the Government's ability to present its case," *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), or be used impermissibly to "lock the government into its proof," *United States v. Rigas*, 258 F. Supp. 2d 299, 304 (S.D.N.Y. 2003). "The [G]overnment's presentation of evidence at trial is limited to the particulars contained in the bill, so care must be taken not to overly restrict the government's proof while still protecting the defendant from unfair surprise." *United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014); *see also Samsonov*, 2009 WL 176721, at *3 (bill of particulars "must not be misused . . . to foreclose the Government from using proof it may develop as the trial approaches").

Moreover, the Government's provision of particulars tantamount to an itemized preview of its proof creates the very real danger that a defendant will "tailor [] testimony to explain away the Government's case." *United States Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (citing *United States v. Cimino*, 31 F.R.D. 277, 279 (S.D.N.Y. 1962)); *United States v. Sindone*, No. 01 Cr. 517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("The stakes in a criminal case are high, and temptations of perjury, subornation and intimidation are ever present. Accordingly, the government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented.").

When a defendant seeks victim identities through a bill of particulars, courts generally "deny disclosure if the government sets forth specific reasons why such a request should be denied." *United States v. Kelly*, 19 Cr. 286 (AMD), 2020 WL 473613, at *1 (E.D.N.Y. Jan. 29, 2020) (quoting *United States v. Antico*, 08 Cr. 559 (CBA), 2010 WL 2425991, at *1 (E.D.N.Y. June 11, 2010)). Courts also routinely deny requests for bills of particulars containing victim names on the basis that these requests are, in reality, a backdoor attempt to obtain "a list of the witnesses whom the Government intends to call at trial." *United States v. Kevin*, 97 Cr. 763 (JGK), 1999 WL 194749, at *12 (S.D.N.Y. Apr. 7, 1999); *see United States v. Castro*, 08 Cr. 268 (NRB), 2008 WL 5062724, at *3 (S.D.N.Y. Nov. 25, 2008).

Applying these principles, courts in this district routinely deny motions for bills of particulars that are, at bottom, demands for additional details of the manner in which the offense was committed or how the Government intends to prove its case at trial. *See, e.g.*, *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (denying request for bill of particulars identifying "each act of 'fraud, neglect, connivance, misconduct, and violation of law' upon which

the Government will base its case," and noting that Government may not be compelled to disclose manner in which it will prove charges, manner in which defendant committed the crime charged, or a preview of Government's evidence or legal theories); *United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977) (rejecting request for bill of particulars regarding the names, dates and places for the entire case as "an attempt to discover the minutia of the Government's case").

### B.    Discussion

There is no basis for a bill of particulars in this case.  As is apparent from the 15-page S3 Indictment, the charges concern the three defendants' participation in a sex trafficking conspiracy from at least 2009 through at least 2021, as well as charging one or more of the defendants in nine substantive counts of sex trafficking, inducement to travel to engage in an unlawful sex act, and aggravated sexual abuse on particular occasions.  The charged time periods are made plain in each count, as is the statute the defendants are accused of violating.

The Indictment is a speaking indictment, which goes above and beyond a mere recitation of the elements of each offense by detailing the charged conspiracy.  Among other things, it explains the nature of the criminal conduct the defendants' engaged in, including how they lured female victims to particular locations by offering them material benefits (*see e.g.* Indictment at ¶¶ 5(a)-(c)), the methods by which the defendants' caused victims to travel or transported them across state lines (*id.* at ¶¶ 5(d)-(e)), before drugging and forcibly raping or sexually assaulting the female victims (*id.* at ¶¶ 5(f)-(h).  Simply put, this is not a case in which the allegations in the Indictment "are so general that they do not advise the defendant of the specific acts of which he is accused." *Walsh*, 194 F.3d at 47 (internal quotation mark omitted) (quoting *Torres*, 901 F.2d at 234).  Rather, the Indictment itself provides a sufficient basis to deny the defendants' motion in its entirety.  *See, e.g.*, *United States v. Bonventre*, 646 F App'x 73, 79 (2d Cir. 2016) ("'[E]videntiary detail is not the function of the bill of particulars.'  Particulars are necessary only where indictment

charges are 'so general that they do not advise the defendant of the specific acts of which he is accused.'" (internal citation omitted) (quoting *Torres*, 901 F.2d at 234; *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004))); *United States v. Wedd*, No. 15 Cr. 616 (KBF), 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016) (denying motion for bill of particulars where "the Indictment is a 'speaking' Indictment that provides a significant amount of detail as to the Government's theory of the case and the nature of the proof that will underlie the charges at trial").

While the additional particularity requested in the defendants' 95-item list (many with additional sub-questions) (*see* Dkt. 74 at 5-12), might be helpful for the defendants, that is not the appropriate standard and the information sought far exceeds the proper scope and function of a bill of particulars.  Instead, the inquiry is properly focused on whether the information already available to the defendants is so general that a bill of particulars is *necessary* to the preparation of their defense.  Plainly it is not.  In addition to the speaking Indictment, the Government has produced substantial discovery in this case, including iCloud accounts for each defendant containing tens of thousands of the defendants' text messages, photographs, and videos; social media accounts for each defendant; phones and electronic devices seized from the defendants; and over 400,000 pages of the defendants' emails.  Much of this data is text searchable and the time periods to which it relates is readily apparent.  Where defense counsel have had questions about the discovery materials, they have reached out to the Government and the Government will continue to work with the defense to answer such questions as their review continues.

In other words, the discovery provides the defendants with more than sufficient information to permit them to prepare for trial.  Any remaining detail regarding the specifics of particular trips, interactions, and specific rapes or other sexual assaults will come from witness testimony.  Further, to the extent the Government intends to introduce any evidence of criminal acts other than those

114

alleged in the Indictment, such evidence will not be sprung on the defendants at trial. As the Government has stated in emails to defense counsel, the Government is willing to discuss with defense counsel reasonable dates for early pretrial disclosure of witness statements and notice under Rules 404(b) and 413. *See United States v. Barrera*, 950 F. Supp. 2d 461, 479 (E.D.N.Y. 2013). Given the information the defendant already has from the discovery, the Indictment, and the Government's court filings (including this memorandum), any additional detail would essentially serve as early Jencks Act production. The discovery gives the defense ample information to assist in its investigation and preparation for trial. *See United States v. Starks*, 24 Cr. 126 (JLR), 2024 WL 4528169, at *5 (S.D.N.Y. Oct. 18, 2024) (finding bill of particulars not warranted where, among other things, "the Government has stated that it will provide Starks with Section 3500 materials sufficiently in advance of trial to prevent any prejudicial surprise, along with a list of trial exhibits and a witness list"); *United States v. Chambers*, 17 Cr. 396 (WHP), 2018 WL 1726239, at *2 (S.D.N.Y. Apr. 9, 2018) (denying request for bill of particulars where "this Court will require production of Jencks Act material in advance of trial to apprise the defendant of the essential facts"). There is thus no reasonable risk that the defendants will suffer unfair surprise at trial.

The majority of the defendants' questions in their motion boil down to an attempt to obtain the names of victims—information to which they are simply not entitled at this stage. *See United States v. Sterritt*, 678 F. Supp. 3d 317, 331-32 (E.D.N.Y. 2023) (rejecting request for identities of the victims where "[t]he government has already spelled out enough"); *Barrera*, 950 F. Supp. 2d at 478 ("[T]he Government need not disclose the names of the [] conspiracy's intended victims in order for [the defendant] to be adequately apprised of the specific crimes of which he is accused."). Particularly in cases involving sexual abuse and sexual violence, courts in this District do not

require the Government to identify victims this far in advance of trial. In *United States v. Maxwell,*
the defendant sought to dismiss Mann Act counts for vagueness or in the alternative to require a
bill of particulars to include, among other details, the names of the alleged victims. Denying the
defendant's motion, Judge Nathan concluded that there was "no basis" to require that the alleged
victims' names be included in the indictment or disclosed as part of a bill of particulars, where the
Government had already provided discovery on the victims and agreed to disclose their names
prior to trial. *Maxwell*, 534 F. Supp. at 318. Even if victims' names were important, Judge Nathan
continued, they generally need not appear in the indictment unless their omission would seriously
prejudice the defendant. *Id.* (citing *Stringer*, 730 F.3d at 127; *United States v. Kidd*, 386 F. Supp.
3d 364, 369 (S.D.N.Y. 2019).

Beyond the fact that they are simply not entitled to victim identities at this stage of the
cases, early disclosure poses serious risks of obstruction of justice and witness intimidation.
"Discovery in criminal proceedings is not comparable to discovery in civil [proceedings] because
of the nature of the issues, the danger of intimidation of witnesses, and the greater danger of perjury
and subornation of perjury." *United States v. Malinsky,* 19 F.R.D. 426, 428 (S.D.N.Y. 1956).
Indeed, there have already been multiple attempts to tamper with witnesses and obstruct these very
proceedings. On July 15, 2025, law enforcement agents seized the cellphone ██████████████
███████████████████████ after obtaining evidence demonstrating that ███████████████
was sending threatening messages to multiple individuals ██ believed to be victims in this case,
threatening them with public exposure should they speak out. The Government's investigation
into this obstructive conduct is ongoing. As a result, the Government has serious concerns about
witness tampering if a list of victim names were provided to the defendants.

Together, the discovery productions, briefing in which the Government has described aspects of its evidence and theory (*see, e.g.*, Dkts. 4, 26), the contents of this memorandum, and the details contained in the Indictment more than adequately inform the defendant of the charges against her. This is simply not a case where the "relevance of key events [are] shrouded in mystery." *See Bortnovsky*, 820 F.2d at 574. Accordingly, the Court should deny the motion for a bill of particulars.

## VII.      THE BRADY MOTION SHOULD BE DENIED

The defendants ask the Court to compel the Government to provide a long list of information that they claim is *Brady* material.  (*See* Dkt. 70).

*First*, the Government acknowledges and takes seriously its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny and has and will continue to comply fully with those obligations.  In accordance with its obligations under *Brady*, the Government will provide all *Brady* material in the possession of the prosecution team or that is otherwise known to the Government in a timely manner.  The Government has made substantial discovery productions to date and is continuing to produce discovery.  The Government's own review of that data is ongoing and if that review identifies any potential *Brady* material, the Government will make such material available to the defense promptly after it is discovered.

Courts in this Circuit routinely deny specific requests for *Brady* material where, as here, the Government has made a good-faith representation to the Court and defense counsel that it recognizes, is complying, and will continue to comply with its disclosure obligations under *Brady*. *See, e.g.*, *United States v. Gallo*, No. 98 Cr. 338 (JGK), 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying defendant's motion to compel production of purported *Brady* material based on Government's representations that "it is aware of its obligations under *Brady* . . . and will produce any *Brady* material to the defense well before trial"); *United States v. Perez*, 940 F. Supp. 540, 553

(S.D.N.Y. 1996) (same); *United States v. Campo Flores*, No. 15 Cr. 765 (PAC), 2016 WL 5946472, at *11 (S.D.N.Y. Oct. 12, 2016) ("The Government represents that it is aware of its obligation under *Brady*; that it has complied; and will continue to comply . . . That is sufficient to deny Defendants' motion for *Brady* relief." (internal citations omitted)). The defendants' motion to compel production of *Brady* material should therefore be denied.

Further, many of the requests for exculpatory material outlined in the motion do not, in fact, seek exculpatory material but are rather, at bottom, directed at obtaining early disclosure of impeachment or Section 3500 materials. (*See* Dkt. 70 at 2 (asking the Court to order the Government to produce all "FBI 302 reports and other reports relating to the allegations made persons alleged to have been subjected to sexual conduct or intended to be so subjected" in order to determine whether those materials contain information relevant to their list of questions); Dkt. 70 at 4 ("any evidence of accusers' dishonesty; shifting stories; or inconsistencies in accounts of events"). As the Second Circuit has held, the Government need not produce such material upon a defendant's demand. *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001). Instead, it should be disclosed "with enough time for its effective use by the defense at trial" or other proceeding. *United States v. Rodriguez,* No. 19 Cr. 779 (AKH), 2020 WL 5819503, at *10 (S.D.N.Y. Sept. 30, 2020); *see also United States* v. *Nixon*, 418 U.S. 683, 701 (1974) (finding that the "need for evidence to impeach witnesses is insufficient to require its production in advance of trial"). Accordingly, the production of *Giglio* material "shortly prior to the commencement of trial" is "customary in this district." *United States v. Miller*, No. 12 Cr. 368 (PAC), 2012 WL 4791992, at *2 (S.D.N.Y. Oct. 9, 2012); *see also Viera*, 2015 WL 171848, at *6 (approving the Government's proposed disclosure of *Giglio* material for confidential source one week before trial). There are sound reasons for this rule. For example, unlike discovery, "impeachment material has a more

narrow, specific use—to attack the credibility of a witness on cross-examination.  No extended pretrial investigation and preparation of such material is necessary for its effective use." *United States v. Velasquez*, No. 96 Cr. 126 (JFK), 1997 WL 414132, at *6 (S.D.N.Y. July 23, 1997); *see also United States v. Jacques Dessange, Inc.*, No. 99 Cr. 1182 (DLC), 2000 WL 280050, at *9 (S.D.N.Y. Mar. 14, 2000) (impeachment material "does not ordinarily require any independent investigation in order to use it effectively at trial").  Following the usual practice in this District, the Government will produce impeachment material to the defendant when it produces prior statements of a witness pursuant to 18 U.S.C. § 3500, both of which will be made available to the defendant sufficiently in advance of trial.

The defendants also demand documentation of the absence of broad categories of evidence that they appear to believe are necessary for conviction.  (Dkt. 70 at 2 ("absence of corroborating evidence that might support any one or all of the allegations"); Dkt. 70 at 3 ("the absence of any other informal or formal complaints as to any incident alleged"), Dkt. 70 at 3("the absence … of evidence to support the government's claim of 'sex trafficking'"); and Dkt. 70 at 5 ("the absence of evidence of any purchase of drugs by the defendants or any alleged coconspirator")).  While the absence of particular pieces of evidence or corroboration may be an argument defendants choose to advance at trial, it is not *Brady* material.  Contrary to the defendants' assertion, "failing to corroborate lone-witness accusers" has in fact *not* been "universally" recognized as *Brady* material, (*see* Dkt. 70 at 6), and neither *Giglio v. United States*, 405 U.S. 150 (1972) nor *United States v. Marcus*, 2006 WL 8446893 (E.D.N.Y. Dec. 6, 2006) support such a proposition.  *See Giglio*, 405 U.S. at 154-155 (reversing a judgment of conviction because the Government failed to produce impeachment material); *Marcus*, 2006 WL 8446893 at *3 (directing the Government

to conduct a review of psychiatric files in its possession and disclose any information material evidence favorable to the defendant).

And the defendants' baffling characterization of victim identities as somehow exculpatory and warranting disclosure under *Brady* is similarly baseless and they cite no authority to support their argument.  The reasons why premature disclosure of victim identities is not warranted in this case is discussed in more detail above in section VI.B of this memorandum but nothing in defendants' *Brady* motion changes that analysis and the motion should be denied.

## CONCLUSION

For the foregoing reasons, the defendants' motions should be denied.

Dated: July 18, 2025                      Respectfully submitted,
       New York, New York

                                          JAY CLAYTON
                                          United States Attorney for the
                                          Southern District of New York

                                   By:    ___/s/_____
                                          Kaiya Arroyo
                                          Elizabeth A. Espinosa
                                          Andrew Jones
                                          Madison Reddick Smyser
                                          Assistant United States Attorneys