# AGNIFILO INTRATER

December 30, 2025

**VIA ECF**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 20C
New York, NY 10007

      Re:    United States v. Alon Alexander, Oren Alexander & Tal Alexander,
              24 Cr. 676 (VEC)

Dear Judge Caproni:

      We write for three reasons. First, the Court should reject the government's December 29, 2025 letter requesting the Court reconsider its earlier ruling regarding alleged Victim-6's and alleged Victim-20's pseudonyms. Second, we raise another issue regarding one of the government's proposed pseudonyms – that of alleged Victim-13. Third, we request the Court preclude the government from introducing nameplates of alleged victims that prominently display them wearing crosses.

    **1.**    **The Court Should Deny the Government's Request for Reconsideration of its Ruling Regarding Full Pseudonyms for Victim-6 and Victim-20**

      This Court should deny the Government's motion for reconsideration, as the supporting affirmations for alleged Victim-6 and alleged Victim-20 fail to "demonstrate a compelling need for a witness to testify using a … full pseudonym." (ECF 252, p.2). The government's arguments are speculative, conclusory, and do not present new information sufficient to warrant a departure from the Court's prior ruling. Alleged Victim-6 and alleged Victim-20 will already be testifying under partial pseudonyms. The affirmations attached to the government's motion do not establish a legitimate interest compelling enough to further infringe upon the defendants' constitutional rights to a public trial and confrontation.

          A.    <u>Alleged Victim-6</u>

      The affirmation submitted by Ms. Hood on behalf of Victim-6 does not articulate a specific, credible harm that would result from testifying under her true first name. <u>First</u>, the affirmation's central premise—that the name ▇▇▇▇▇▇ is uncommon enough to make her easily identifiable—is contradicted by the affirmation itself. Counsel states that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ placing it in the top 100 most common names.

      <u>Second</u>, it is not easy to identify alleged Victim-6 through a Google search ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇ (12/29/25 Ltr. Ex. A ¶ 8.) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▮▮▮▮▮▮▮▮▮▮ This fails to meet the high bar of demonstrating that the use of her first name would inevitably lead to her public identification.

Finally, the affirmation vaguely references risks to alleged Victim-6's "privacy, safety, reputation and career" without explaining how using her first name would cause such harms. This argument is particularly weak given that alleged Victim-6 has previously and voluntarily publicly revealed her full name, her profession ▮▮▮▮▮▮▮▮▮▮ Her prior decision to seek public attention using her full name and personal information directly undermines her current claim that she requires the protection of a full pseudonym to avoid public exposure.

### B. Alleged Victim-20

Similarly, the affirmation for alleged Victim-20 fails to demonstrate a compelling need for a full pseudonym, largely by repeating arguments the Court has already considered and rejected.

*First*, the information regarding alleged Victim-20's ▮▮▮▮▮▮ is not new. The government previously raised these concerns in its December 7, 2025 letter. (*See* 12/7/25 Ltr. at 8-9.) The Court was aware of this information when it ruled that alleged Victim-20 must testify using her real first name. The affirmation offers no new facts that would justify a reconsideration of that ruling.

*Second*, the affirmation's claims of potential professional harm are speculative. It fails to establish a credible link between the use of her first name at trial and adverse consequences in her ▮▮▮▮▮▮ The assertion that ▮▮▮▮▮▮ would identify her from media coverage of this trial and that such identification would result in professional harm is a tenuous and unsubstantiated chain of assumptions with no actual evidentiary support.

Furthermore, the argument that her first name, ▮▮▮▮ is uncommon is overstated. Indeed, alleged Victim-20's friend who she will also discuss in her testimony's name is ▮▮▮▮. And the use of a pseudonymous last name provides substantial protection for both these individuals. The affirmation does not adequately explain why this measure, already granted by the Court, is insufficient.

### 2. The Court Should Order that the Government Choose Pseudonyms That Do Not Sound Exactly the Same as Another Witness' Name

The defendants must also raise a second issue relating to pseudonyms. We have conferred with the government on several of the pseudonyms it plans to use for the alleged victims and have resolved our issues, but have unfortunately been unable to reach agreement as to the pseudonym for alleged Victim-13. ▮▮▮▮▮▮▮▮▮▮"

During the parties' discussions, we told the government that this naming convention is unnecessarily confusing. The government responded that ▮ is the name that alleged Victim-13 requested and they "will not be changing it. . . People often have the same name, and they will be referred to in court by their last names."

Respectfully, we disagree. ▮ is doubtful that the additional witnesses will refer to the alleged victims by their last name. Though Counsel understands that we will be speaking to witnesses with their last name, it is unreasonable to expect that witnesses who know each other socially will refer to one another by their last names. Additionally, though "people often have the same name," ▮ The government is inviting confusion where there does not need to be any.

Accordingly, we respectfully request that this Court order that the government chose a pseudonym for Victim-13 ▮

### 3. The Court Should Require that the Government Use Face Plates Without Religious Imagery

On December 19, 2025, the government produced additional discovery material related to alleged victims. The production contained two photographs – one of Victim 6 and one of Victim 14. (See GX 5B-106, GX 5B-114.) The photographs are intended as faceplates.

These images prominently feature each alleged victim wearing a cross around their neck – a universally understood symbol of Christianity, symbolizing the crucifixion of Jesus. Such a display is highly prejudicial, intended to taint the jury's view of the alleged victims and the evidence and will ultimately prejudice the defendants. We have conferred with the government and asked them to select different photos, which they declined to do.

Pursuant to Fed. R. Evid. 403, we respectfully request that the Court order the government to select alternative images of the alleged victims or, in the alternative, allow the defense to admit photos that accurately depict how the alleged victims portray themselves publicly on social media and otherwise.

<u>First</u>, the images in question have no probative value whatsoever relevant to any essential element in the case. See <u>DeJesus v. Royce</u>, No. 22-CV-7212 (JMF), 2025 WL 20305, at *4 (S.D.N.Y. Jan. 2, 2025) (citing <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir. 1998)) ("Where the prejudicial evidence is probative of an essential element in the case, its admission does not violate the defendant's right to due process."). The government's proffered use of this evidence is unrelated to any element of any charge.

Hon. Valerie E. Caproni
December 30, 2025
Page 4 of 5

    <u>Second</u>, the potential for prejudice by the admission of these images is significant. By selecting these images of the alleged victims to display for the jury, the government is injecting religious overtones into the case to try to elicit an emotional response from the jury.

    The risk of prejudice is particularly heightened where, as here, there will likely be evidence concerning the defendants' Jewish religion.[1] The intentional and completely unnecessary insertion of Christian imagery into the alleged victims' faceplates serves only to create an impression that the Jewish defendants committed a crime against good Christian women. The proposed admission of these images also seeks to misleadingly portray the alleged victims as pious, modest, and virtuous. But unless the Court would allow counsel to admit images showing the immodest displays these women repeatedly post for the world to see, the same standard should be applied to the government's efforts to achieve the opposite result here. <u>See</u> Ex. 2           Ex. 3 (Instagram Photo of Victim 14).

    This is not an instance, for example, where the government is seeking to admit one-of-a-kind photographs of a victim's injuries, a crime scene, or something else central to the facts of the case and elements of the charge. But even if they were, courts have found that the display of irrelevant, inflammatory, and prejudicial symbols or objects in photographs can and should be precluded or otherwise redacted. <u>See</u>, <u>e.g.</u>, <u>United States v. Robertson</u>, 489 F. Supp. 3d 1264, 1266–67 (D.N.M. 2020) (in a crime scene photograph related to a shooting, the Court found that the display of a car seat in the image was "irrelevant and carrie[d] the potential for unfair prejudice" thereby requiring its redaction); <u>United States v. Sampson</u>, 335 F. Supp. 2d 166, 183 (D. Mass. 2004) (in a murder crime scene photograph which depicted a "crucifix hung on the wall," the Court found that the crucifix "had little or no probative value," that its inclusion "could have been seen as providing religious overtones" to the crime and "would have run the risk of affecting one or more jurors in an unpredictable, but unfairly prejudicial way" and ordered its redaction). The same concerns surrounding irrelevance, limited probative value, and unfair prejudice warrant redaction or the use of alternative images here.

    The photographs at issue are supposed to provide generic headshots of alleged victims, meant to give the jury a picture to remember their testimony by. Any alternative images would be no less effective in aiding the jury in keeping track of and identifying alleged victims in the case. They would do so, however, without running the risk of prejudice that the proposed images create.

    For all of the foregoing reasons, we respectfully request the Court order the use of alternative images, or allow the defense to admit additional photographs of the alleged victims.

---

[1] The government has produced exhibits that show one or more of the defendants traveling to Tel Aviv, attending AIPAC, and generally discussing their Jewish faith.

4

Hon. Valerie E. Caproni
December 30, 2025
Page 5 of 5

      Thank you for your consideration.

                                                              Respectfully submitted,

                                                              Marc Agnifilo
                                                              Teny Geragos
                                                              Zach Intrater

                                                              *Attorneys for Oren Alexander*

                                                              Howard Srebnick
                                                              Jackie Perczek

                                                              *Attorneys for Alon Alexander*

                                                              Milton L. Williams
                                                              Alex Kahn
                                                              Deanna Paul

                                                              *Attorneys for Tal Alexander*

cc:      All counsel (via email and ECF)