

Office: 305.371.6421
HSrebnick@royblack.com

January 26, 2026

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *United States v. Alon Alexander et al.*, 24 Cr. 676 (VEC)
             MV-3's Motion to Quash Rule 17(c) Subpoena

Dear Judge Caproni,

      Defendants Alon, Oren, and Tal Alexander submit this letter in opposition to MV-3's motion to quash the subpoena issued pursuant to Federal Rule of Criminal Procedure 17(c). The subpoena to Alleged Minor Victim 3 ("MV-3") for testimony at trial requests a narrow category of electronic communications and social media content that MV-3 previously discussed with law enforcement. The information bears directly on the trafficking counts against Defendants as well as MV-3's credibility, motive and bias and is well within the scope of permissible impeachment. Because the materials are either directly relevant to the charged conduct or for impeachment, they are not untimely, and there is nothing unreasonable or oppressive about Defendants' request. Accordingly, MV-3's motion to quash should be denied.

      **A. The Subpoena is to Testify at Trial, Not Produce Documents Pretrial, and therefore is Timely under the Rule.**

      MV-3 first argues that the subpoena must be quashed because "its timing renders compliance unreasonable and oppressive" as the return date of the subpoena is scheduled for January 20, 2026, the first day of trial in this case, "leav[ing] the witness with no meaningful opportunity to evaluate the scope of the requests, consult with counsel, or seek judicial review prior to compliance."[1] Most of the arguments asserted by MV-3 on this

---

[1] Undersigned discussed the return date with opposing counsel when the subpoena was served, and explained that the return date of January 20, 2026 was selected because the subpoena required a specific date, and January 20, 2026 is the first day of trial, but pursuant to applicable case law, the requested documents need not be produced until MV-3 is called to testify.

point apply to pretrial subpoenas for documents, not trial subpoenas for testimony and impeachment materials. Accordingly, the motion should be denied on this basis.

The subpoena to MV-3 is a trial subpoena compelling her testimony at trial, not a pretrial subpoena requiring the production of documents, information, or objects. Rule 17(c) authorizes service of subpoenas that are returnable at trial ("trial subpoenas") to obtain impeachment material. *See United States v. Percoco*, No. 16-CR-776 (VEC), 2018 WL 9539131, at *1 (S.D.N.Y. June 14, 2018) (collecting cases). Unlike subpoenas that are returnable prior to trial, subpoenas for impeachment material are only returnable "if and when the witness who has made the statement takes the stand and testifies. The defendant only then is entitled to inspect these statements." *United States v. James*, No. 02-CV-0778 (SJ) (CLP), 2007 WL 914242, at *29 (E.D.N.Y. Mar. 21, 2007) (cleaned up) (quoting *United States v. Palermo*, 21 F.R.D. 11, 13 (S.D.N.Y. 1957)). As the parties do not at this point know the exact date MV-3 will take the stand, undersigned counsel included the first day of trial as the return date. To the extent that it is returnable once MV-3 testifies, the Court may modify the subpoena to instead indicate that it is returnable on the date MV-3 is called to testify at the trial. Fed. R. Crim. P. 17(c)(2) ("On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."); *United States v. Donziger*, No. 11-CV-691 (LAK), 2021 WL 1865376, at *5 (S.D.N.Y. May 10, 2021) ("The subpoenas must be modified to be returnable at such time as [the witness] testifies").

MV-3 argues that allowing production "later if the victim testifies" does not cure the "timing defect" because "Rule 17(c) does not permit compelled production first with admissibility and judicial review deferred until later." MV-3 is wrong: the case law in this district requires exactly that. Impeachment evidence—such as "[e]vidence showing a witness's motive to cooperate, showing bias, or containing prior inconsistent statements"—"does not become relevant until the witness testifies." *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018). Accordingly, subpoenas for impeachment material are returnable only after a witness takes the stand, not prior to trial or even on the first day of trial. *See United States v. Avenatti*, No. (S1) 19 Cr. 373 (PGG), 2020 WL 508682, at *4-5 (S.D.N.Y. Jan. 31, 2020).

As the Court has previously remarked, this is a "common sense rule. Unless the witness about whom impeachment material is sought actually testifies (or [her] statements are admitted under circumstances making [her] subject to impeachment pursuant to Rule 806), the evidence is not admissible." *Percoco*, 2018 WL 9539131, at *1; *United States v. Giampa*, No. S 92 CR 437 (PKL), 1992 WL 296440, at *3 (S.D.N.Y. Oct. 7, 1992) ("[T]he rationale behind the well-established rule that impeachment materials are generally not subject to pretrial production applies with equal force to a request that such documents be produced on the first day of trial. Impeachment statements are generally not subject to



pretrial production under Rule 17(c) because such statements ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial.") (internal citations and quotation marks omitted). Thus, requiring production of the requested documents once MV-3 takes the stand is not "oppressive" or "unreasonable," but would fully comply with the law in this Circuit.

MV-3 also asks the Court to quash the subpoena because it was served "last minute." To the contrary, it was timely under the case law. "[I]mpeachment statements, although subject to subpoena under rule 17(c), generally are not subject to production and inspection by the moving party *prior to trial*." *James*, 2007 WL 914242, at *29 (citing *United States v. Cuthbertson,* 630 F.2d 139, 144 (3d Cir. 1980) (emphasis added)). The case cited by MV-3, *United States v. Ashburn*, is inapplicable here because *Ashburn* concerned subpoenas for documents and records, not subpoenas for testimony at trial, that were served well into the government's case in chief. No. 11-CR-0303 NGG, 2015 WL 1033063, at *3 (E.D.N.Y. Mar. 6, 2015). Moreover, the subpoenas at issue in *Ashburn* were overly broad and burdensome, because they sought "all information and records" from the BOP related to the defendant, who had been in custody for three years, and sought documents immaterial to the defendant's defense. *Id*. at *2. But here, the subpoenas were timely served to MV-3 more than a week before the government is scheduled to call its first witness, allowing MV-3 sufficient time to review and comply with the requests for production before she is called to testify at trial (which, we are told, is not until the second week of trial, at the earliest). And, as explained in more detail below, the subpoenas are narrowly drafted to obtain materials that the witness herself told the government existed, which are directly relevant to her anticipated testimony. In sum, the trial subpoena is not untimely and should not be quashed on this basis.

### B. The Subpoena is Narrowly Tailored and Complies with the Requirements of *U.S. v. Nixon*, 418 U.S. 683 (1974).

MV-3's argument that the subpoena must be quashed because it "seeks impermissible impeachment material" fails on its face in light of the above case law. As explained *supra*, Rule 17(c) permits a defendant to subpoena materials that may be used to impeach a witness for the prosecution. *James*, 2007 WL 914242, at *29. Moreover, the materials sought in Request No. 2 are directly relevant to the charged conduct as well as impeachment evidence. Indeed, MV-3 does not argue in the Motion that the materials sought in this request are "untethered" to the charged conduct.

MV-3's claim that the subpoena "constitutes an impermissible fishing expedition" also fails. As MV-3 acknowledges, the subpoena "identif[ies] particular platforms, time periods, and individuals." All four requests seek materials that were specifically referenced by MV-3 during meetings with law enforcement in 2025. As a threshold matter, the



_____

requirements set forth in *United States v. Nixon*, 418 U.S. 683 (1974), do not apply because the requested subpoena was issued by Defendants to a third party and is returnable at trial.[2] *See United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008); *United States v. Weigand*, 520 F. Supp. 3d 609, 613 (S.D.N.Y. 2021); *cf. Nixon*, 418 U.S. at 701 ("[T]he need for evidence to impeach witnesses is insufficient to require its production in advance of trial.") (emphasis added). However, even under the *Nixon* framework, the defense has met its requirements. The requested materials are relevant, admissible, and specific. The requests are carefully worded and narrowly tailored, and limited to communications that were *specifically* referenced by MV-3 to law enforcement in various interviews. There is no "expedition" here, as Defendants merely request the communications that MV-3 acknowledges took place. Each request is described in more detail below:

- **Request for Production No. 1.**

RFP No. 1 seeks an email sent by MV-3 to an individual identified as "Rom" on or about December 31, 2009, which MV-3 referenced specifically during an October 23, 2025 meeting with federal law enforcement. The email is directly relevant to MV-3's claims. MV-3 alleges that she was assaulted by multiple individuals in the Hamptons during

_____

[2] There is a split within the Circuit as to whether the *Nixon* standard should apply to subpoenas issued by a criminal defendant to a non-party on the eve of trial.

This Court and others within the Second Circuit have held that *Nixon* applies to trial subpoenas issued by a defendant for impeachment materials. *Percoco*, 2018 WL 9539131, at *2; *see also United States v. Barnes*, 2008 WL 9359654, at *3 (S.D.N.Y. April 2, 2008) ("[A]ll district courts within the Second Circuit, aside from the *Tucker* court, have applied the *Nixon* analysis to third-party subpoenas issued by the defense."). Others have cast doubt on its application in this setting. *See, e.g.*, *Tucker*, 249 F.R.D. at 64-66 (*Nixon* standard "is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense."); *Weigand*, 520 F. Supp. 3d at 613 ("Permitting issuance of reasonable third-party subpoenas to take discovery, even when a defendant cannot demonstrate in advance that the sought-after evidence is admissible appropriately aligns criminal discovery more closely with modern principles of liberal discovery and better balances the discovery powers of Government and defense."); *United States v. Akhavan*, No. 20-CR-188-2 (JSR), 2021 WL 1251893, at *1 (S.D.N.Y. 2021) ("This Court joins those who have expressed doubt about the imbalance created by the *Nixon* standard.").

Defendants assert that the *Tucker* standard is the correct standard; regardless, here, *Nixon's* heightened requirements have been met.



Memorial Day Weekend 2009. Immediately after the alleged assault, MV-3 went clubbing and then went to stay at the home of an individual named "Rom" in Sag Harbor. During an October 23, 2025, meeting with the Government, MV-3 said that she told Rom about the alleged assault while at his home. After disclosing her assault, MV-3 claims that Rom attempted to assault her. Several months later, on New Year's Eve 2009, MV-3 was supposed to see Rom. Instead, she apparently sent him an email sharing how his actions following the disclosure made her feel.

This request does not constitute a "fishing expedition," but rather seeks a specific, identified document whose existence and subject matter have been confirmed by the witness. The email is highly probative as it contains a contemporaneous record of MV-3's state of mind and her perception of her relationship with an individual she confided in immediately after the alleged assault. Its contents are necessary to test the credibility of her testimony regarding the immediate aftermath of the events in the Hamptons and her characterization of her interactions with "Rom," which she herself raised with the government.

- **Request for Production No. 2**

RFP No. 2. Seeks Facebook and text messages exchanged between MV-3 and Matt Lipman between May 16, 2009, and May 22, 2009. In addition to being relevant impeachment evidence, these messages are directly relevant to the charged conduct because they constitute the very invitation that precipitated MV-3's presence in the Hamptons. In the November 11, 2025 meeting, MV-3 stated unequivocally that Mr. Lipman "contacted her about MDW over either text or fb message, not in person." These communications are not speculative but are specific evidentiary items that directly address the central element of enticement in the sex trafficking charges. The content of these messages is necessary to determine what representations were made to MV-3, what her expectations were for the weekend, and whether the nature of the invitation was for a party or for another purpose. This evidence is narrowly tailored to a specific temporal period right before the alleged assault, and is critical for impeaching the witness's testimony regarding the circumstances of her travel to the Hamptons and is admissible to challenge the government's narrative of how and why she was recruited.

- **Request for Production No. 3**

Withdrawn.



Honorable Valerie E. Caproni
January 26, 2026
Page 6

_____

- **Request for Production No. 4**

RFP No. 4 seeks posts made by MV-3 on social networking sites regarding the October 7, 2023 attacks in Israel. These messages were referenced by MV-3 during an interview with law enforcement. These messages are relevant to MV-3's possible biases against the Israeli people and the Defendants, who are of Israeli descent, and Defendants are entitled to question MV-3 about these biases and her personal motivations at trial. *See, e.g., Donziger*, 2021 WL 1865376, at *8 (billing records "may not bear on the substantive charges" but could "provide impeachment fodder that will allow Mr. Donziger to probe the Partners' potential biases, including any financial motivations the Partners might have for testifying against him…If any of the Partners takes the stand, billing records will be relevant.").

For the foregoing reasons, the Court should deny the motion to quash, modify the return date to the date MV-3 will testify at trial, and otherwise direct MV-3 to comply with the subpoena requests if and when she is called to testify at trial.

Respectfully submitted,

*/s/ Howard Srebnick*
Howard Srebnick
Jackie Perczek

*Attorneys for Alon Alexander*

Marc Agnifilo
Zach Intrater
Teny Geragos

*Attorneys for Oren Alexander*

Milton L. Williams
Deanna M. Paul
Alexander Kahn
*Attorneys for Tal Alexander*

