**Black Srebnick**
CIVIL | CRIMINAL

Office: 305.371.6421
HSrebnick@RoyBlack.com

December 3, 2025

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    **RE:** *United States v. Alon Alexander*, 24 Cr. 676 (VEC)

Dear Judge Caproni,

    Alon Alexander submits this "letter briefing … setting forth his legal argument regarding whether/how Alon Alexander's marriage constitutes withdrawal from the alleged conspiracy." Order, ECF#210:3.

    Count 1 charges a conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c). Such offense has a five-year statute of limitations. 18 U.S.C. §3282(a). Even if a jury were to believe the accusers' allegations of a sex trafficking conspiracy (which Alon denies), the evidence would still require that the jury acquit Alon, because the conspiracy charged in Count 1 is time-barred: Alon withdrew from the alleged conspiracy at least five years before the original indictment was returned on December 6, 2024, by taking sufficient, affirmative and overt steps inconsistent with the objectives of the alleged conspiracy no later than March 2019, when he abandoned the "single-life" and publicly announced his engagement to his future-wife Shani.

    In 2018, Alon entered into an exclusive relationship with his then-girlfriend, Shani. In March of 2019, Alon asked for Shani's hand in marriage and marked the occasion with a celebration attended by his brothers, other family members, and friends, during which Alon announced his intention to maintain a monogamous relationship with Shani. Alon's brothers acknowledged this commitment. Alon and Shani married in 2020 and later had two children. The S4 Indictment does not allege

that Alon partook in sexual activity with anyone else since 2018. Nor does the government identify any other act by Alon in furtherance of the alleged conspiracy—or any other criminal conduct, for that matter—since 2018.

Alon intends to call Shani, family members and friends to testify that they witnessed Alon communicate his monogamous intentions to his brothers more than five years before the indictment. If brothers Oren and Tal testify, they will confirm Alon's dissociation from the single life. As well, Alon intends to present exhibits demonstrating that he notified the world of his engagement through multiple posts on social media.

In *Smith v. United States*, 568 U.S. 106 (2013), the Supreme Court explained that withdrawal from a conspiracy triggers the relevant statute of limitations and, when a defendant withdraws outside the limitations period, the withdrawal provides a complete defense to prosecution. To be sure, the statute of limitations is not an element of the offense that the government must prove; rather the burden is on the defendant to raise and establish withdrawal by a preponderance of the evidence:

> Passive nonparticipation in the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy. To avert a continuing criminality there must be affirmative action … to disavow or defeat the purpose of the conspiracy. The defendant knows what steps, if any, he took to dissociate from his confederates. He can testify to his act of withdrawal *or direct the court to other evidence substantiating his claim*.

*Id.* at 112-13 (cleaned up, emphasis added). As the Second Circuit has explained:

> Mere cessation of activity is not enough to start the running of the statute; there must also be affirmative action, either the making of a clean breast to the authorities, or *communication of the abandonment in a manner reasonably calculated to reach co-conspirators*. And the burden of establishing withdrawal lies on the defendant.



*United States v. Borelli*, 336 F.2d 376, 388 (2d Cir. 1964) (citations omitted, emphasis added).

The Second Circuit applied this test in *United States v. Nerlinger*, 862 F.2d 967 (2d Cir. 1988), to determine the admissibility under Rule 801(d)(2)(E), Fed. R. Evid., of co-conspirator statements. The Second Circuit analyzed whether (and decided that) the defendant's "affirmative action to disavow or defeat the purpose of the conspiracy," *id.* at 974, was sufficient to constitute "withdrawal," thus rendering inadmissible the post-withdrawal statement of a former co-conspirator.

*Nerlinger* involved the head commodities trader at First Commodity Corporation of Boston, Inc. ("FCCB"), who diverted commodity-futures trades into sham accounts opened by FCCB salesmen, including defendant Nerlinger. Among other fraudulent conduct, the head trader "busted" winning trades out of legitimate customer accounts and reassigned them to fraudulent ones, like Nerlinger's, whose fiancée opened the account using bogus financial information. The trader diverted profitable "busted" trades into Nerlinger's fraudulent account, and the two split the substantial returns. Nerlinger eventually closed the account, resigned from FCCB, and discontinued any further criminal activity—which Nerlinger claimed constituted withdrawal. *Id.* The Second Circuit held that it did:

> According to the indictment, the principal objective of the conspiracy was to defraud legitimate customers of FCCB by assigning profitable trades to the salesmen's accounts. Nerlinger's role in that scheme was to open and maintain an account at FCCB into which [the head trader] could direct trades in exchange for fifty percent of the profits. By closing his FCCB account, Nerlinger foreclosed his continuing in that role and relinquished any claim to subsequent profits.
>
> The only question is whether his closing of the account constitutes an "affirmative action" in light of the rules that mere cessation of conspiratorial activity is not enough, and that withdrawal must be accompanied by a "communication of the abandonment in a manner



Honorable Valerie E. Caproni
December 3, 2025
Page 4

_____

> reasonably calculated to reach co-conspirators." *Id.* Nerlinger's closing of the account does satisfy this standard because it disabled him from further participation and made that disability known to [the head trader]. That is enough.

*Id.* at 974. The court rejected the argument that a defendant must give formal notice to all co-conspirators. *Id.* "Nothing in *Borelli* or any other case requires the hiring of a calligrapher to print formal notices of withdrawal to be served upon coconspirators." *Id.*

In *United States v. Goldberg*, 401 F.2d 644 (2d Cir. 1968), the Second Circuit reversed a defendant's conspiracy conviction and entered a judgment of acquittal because the undisputed evidence established his withdrawal outside the limitations period. Charged with conspiracy to commit mail, wire and securities fraud in connection with his employment in a company running a "boiler room operation," *id.* at 677, the evidence established at trial that the defendant "left its employment," more than five years before the indictment.

> Upon his resignation, the National Association of Securities Dealers, which had licensed him as a registered representative, was notified, and [the company] sent letters to all his customers, informing them of his departure. There is no question that his co-conspirators knew of his withdrawal from [the company's] operations.

*Id.* at 648. Quoting *Borelli,* the Court concluded that "there is uncontroverted, affirmative evidence that [the defendant] abandoned the illegal enterprise 'in a manner reasonably calculated to reach co-conspirators.'" *Id.* at 649. "Under these circumstances, we hold that [the defendant]'s withdrawal from the conspiracy [more than five years before the indictment], *entitled him to an acquittal* under the statute of limitations as a matter of law." *Id.* (emphasis added).



Here, as in *Nerlinger* and *Goldberg*, Alon took affirmative steps that provided direct and constructive notice to his brothers that he abandoned any involvement in an alleged conspiracy. Alon, for the duration of the five-year statutory limitations period, was engaged or married to Shani, not pursuing other women for sex. Alon's publicly-announced engagement to Shani was affirmative conduct that was inconsistent with participation in the alleged conspiracy. Although Alon did not then hire "a calligrapher to print formal notices of withdrawal to be served upon coconspirators," *Nerlinger,* 862 F.2d at 974, he did arrange for a rabbi to officiate his wedding in 2020, where he signed a "ketubah" (a Jewish marriage contract adorned with Hebrew calligraphy) and took a formal (and public) vow of monogamy, confirming his earlier dissociation from the conduct that the government alleges constituted sex trafficking. Under Second Circuit law, Alon's public disavowal of sexual liaisons with other women more than five years ago—and his adherence to that vow of monogamy since—sufficed to constitute a withdrawal from his alleged participation in the sex trafficking conspiracy charged in Count 1.

Based on this undisputed evidence, Alon is "entitled [ ] to an acquittal [as to Count 1] under the statute of limitations as a matter of law." *Goldberg*, 401 F.2d at 649. At a minimum, the Court should admit such evidence and deliver Alon's proposed jury instruction on the statute of limitations defense.

Respectfully submitted,

Howard Srebnick

**BlackSrebnick**
CIVIL | CRIMINAL