**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 8, 2025

**BY ECF**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**Re: *United States v. Alon Alexander, Oren Alexander, and Tal Alexander,* S3 24 Cr. 676 (VEC)**

Dear Judge Caproni:

The Government respectfully writes in response to defendant Alon Alexander's letter regarding an alleged withdrawal defense based on his engagement and marriage to his wife Shani. (Dkt. 226). Alon has failed to meet his burden of demonstrating withdrawal from the conspiracy. To the extent the evidence Alon has outlined is even admissible, his engagement announcement and subsequent marriage are not synonymous with leading a law-abiding, or even monogamous, life. The Court should preclude Alon from arguing withdrawal to the jury.

"It is well established that where the government has shown that a conspiracy existed and that a given defendant was a member of it, his membership is presumed to continue until the last overt act by any of the coconspirators, unless the defendant proves that the conspiracy was terminated or that he took affirmative steps to withdraw." *United States v. Flaharty*, 295 F.3d 182, 192 (2d Cir. 2002). Withdrawal is an affirmative defense to a conspiracy charge when "the withdrawal occurs outside of the statute-of-limitations period," though such withdrawal "does not render [the defendant's] underlying conduct noncriminal" (and in fact, "presupposes that the defendant committed the offense"). *Smith v. United States*, 568 U.S. 106, 111 (2013); *see also Flaharty*, 295 F.3d at 182. It is the defendant's burden to demonstrate that he withdrew from a conspiracy. *Smith*, 568 U.S. at 112. "[M]ere cessation of conspiratorial activity is not sufficient to constitute withdrawal from a conspiracy." *United States v. Leslie*, 658 F.3d 140, 143 (2d Cir. 2011). Instead, the defendant arguing withdrawal must show he took "some definite, decisive, and affirmative action to disavow himself from the conspiracy or to defeat the goal or purpose of the conspiracy." *United States v. Jones*, 27 F.3d 50, 51 (2d Cir. 1994) (approving of jury instruction to this effect). This can include "either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." *Leslie*, 658 F.3d at 143 (quoting *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008)). The defendant also "'must not take any subsequent acts to promote the conspiracy' or 'receive any additional benefits from the conspiracy.'" *Eppolito*, 543 F.3d at 49 (quoting *United States v. Berger*, 224 F.3d 107, 118 (2d Cir. 2000)).

Alon faces an uphill battle in attempting to argue withdrawal, and his letter falls far short of carrying his burden. Alon cites both his March 2019 engagement and his 2020 wedding as evidence of withdrawal, but the Court should only consider the engagement, which took place prior to the statute of limitations period that began on or about December 11, 2019, rather than the wedding, which occurred during that period. Alon falsely equates his engagement with withdrawal from the conspiracy, and the Court should reject this argument for multiple reasons.

*First*, Alon's contention that he intended to be faithful to his fiancé is irrelevant to the charged conspiracy. Being unfaithful to one's partner is not a crime, and Alon's faithfulness, or lack thereof, is not why he is on trial. As a result, Alon's statements in March 2019 regarding his alleged intent to remain monogamous and his engagement posts have no bearing on his guilt as to Count One and should be precluded.

*Second*, Alon's engagement announcement alone does not prove monogamy—and it certainly does not prove cessation of his participation in an illegal sex trafficking conspiracy. As the Court pointed out, it is quite common for men to get married and cheat on their wives, let alone to do so prior to the public vow they take during a marriage ceremony. *See* Nov. 24, 2025 Conf. Tr. at 88 ("The number of men who get married and still have extramarital sex [. . .] I think I can take judicial notice that happens."); *see also* Wendy Wang, "Who Cheats More? The Demographics of Infidelity in America," Institute for Family Studies (Jan. 10, 2018), https://ifstudies.org/blog/who-cheats-more-the-demographics-of-cheating-in-america (noting that General Social Survey data from 2010-2016 indicated that 20% of men reported having sex with someone other than their spouse while married). Indeed, Shani—Alon's wife and one of his proposed witnesses to his vow of monogamy—accused him of cheating on her as recently as in or about June 2023, well within the statue-of-limitations period.

*Third*, even if Alon could prove cessation of his own personal practice of drugging and raping women by introducing evidence of his engagement, cessation is the extent of what his proffered evidence could possibly demonstrate. It is black-letter law that mere cessation does not rise to the level of withdrawal. *See Leslie*, 658 F.3d at 143. Alon has not shown a "definite, decisive, and affirmative action to disavow himself from the conspiracy" and certainly did not act in a way that would frustrate the aims of the conspiracy. *Jones*, 27 F.3d at 51. From the proffered evidence, the jury has no basis to conclude, for example, that even if Alon—during his engagement party in March 2019—actually intended that he himself be monogamous, he also intended to stop assisting his brothers from their activities with women. As a result, his engagement alone cannot rise to the level of withdrawal. *Cf. Leslie*, 658 F.3d at 144 (holding that mere fact of incarceration was insufficient to show defendant withdrew from conspiracy); *Berger*, 224 F.3d at 118 (holding that resignation from a criminal enterprise was insufficient to show defendant withdrew from conspiracy).

The main cases Alon relies on in support of his withdrawal argument, *United States v. Nerlinger*, 862 F.2d 967 (2d Cir. 1988), and *United States v. Goldberg*, 401 F.2d 644 (2d Cir. 1968), are not to the contrary. In *Nerlinger*, the defendant's role in a fraud scheme was to open and maintain an account at a trading corporation, where his co-conspirator could direct trades in exchange for fifty percent of the profits. 862 F.2d at 974. The defendant then closed the account, relinquishing his role and any claim to subsequent profits. *Id.* The Second Circuit held that the defendant's closure of the account was not mere cessation of conspiratorial activity but rather

constituted withdrawal because "it disabled him from further participation and made that disability known to" his co-conspirator. *Id.* Similarly, in *Goldberg*, the defendant participated in a boiler room scheme to defraud customers of the stock brokerage scheme where he worked. 401 F.2d at 646-47. The Second Circuit held that the defendant withdrew from the conspiracy when he left his employment and letters were sent to all of his customers informing them of his departure, and he did not engage in any subsequent acts in furtherance of the conspiracy. *See id.* at 648-49.

An engagement, unlike the closing of the account in *Nerlinger* or the leaving of the employer in *Goldberg*, did not disable Alon from being able to participate in the conspiracy. As explained above, even after his engagement, nothing actually prevented Alon from cheating on his fiancé, or at the very least, from assisting his brothers in the conspiracy.

*Finally*, even if Alon had presented evidence that could give rise to a withdrawal defense, much of the evidence proffered by Alon is likely not admissible. The default rule is that "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see also*, *e.g.*, *United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) (similar); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1987) (per curiam) ("[D]efense counsel wished to place [the defendant's] statement . . . before the jury without subjecting [the defendant] to cross-examination, precisely what the hearsay rule forbids."). The crux of his withdrawal defense appears to rely on the testimony of "Shani, family members, and friends" whom he expects will "testify that they witnessed Alon communicate his monogamous intentions to his brothers more than five years before the indictment" apparently during an engagement celebration in March 2019. (Dkt. 226 at 1-2). This is a statement of the defendant's offered by the defendant, which would ordinarily be precluded.

Nor does Rule 803(3) or any other hearsay exception assist the defendant. At most, if the Court found the defendant's statement at the engagement party to be a statement of future intent, it would solely demonstrate Alon's intent in that singular moment in March 2019. It says nothing of his intent throughout remainder of the conspiracy. *See United States v. Farhane*, 634 F.3d 127, 173 (2d Cir. 2011) (Raggi, J., concurring) (explaining that "[w]hether a statement is part of a continuous mental process and therefore admissible under the present state of mind exception" is "a question for the trial court," and involves an analysis of all factors, including potential bad faith or reliability issues) (quoting *United States v. Cardascia*, 951 F.2d 474, 488 (2d Cir. 1991)). And the probative value of Alon's intent on one day in March 2019 is far outweighed by the confusion and waste of time that would result from a trial within a trial about Alon's faithfulness to his wife—a collateral issue to whether he participated in a criminal conspiracy.

For all of these reasons, the Court should preclude Alon from arguing withdrawal to the jury.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: ___/s________________________
Kaiya Arroyo
Elizabeth A. Espinosa
Andrew W. Jones
Madison Reddick Smyser
Assistant United States Attorneys
(212) 637-2226/-2216/-2249/-2381