# AGNIFILO
# INTRATER

---

March 3, 2026

**VIA ECF**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *United States v. Alon Alexander, Oren Alexander & Tal Alexander*,
      24 Cr. 676 (VEC)

Dear Judge Caproni:

  We write on behalf of all defendants regarding modifications to the Court's March 2, 2026 draft jury charge.

  We make six requests:

  <u>First</u>, that the language of Count 12 accurately reflect the statutory language and the requirements of the case law that the defendant act with the dominant purpose of producing a visual depiction.

  <u>Second</u>, that the Court include, and define, all of the terms in Section 1591.

  <u>Third</u>, that the venue instruction accurately reflect the requirement that an essential element of the offense take place in the Southern District of New York; for the enticement counts, this means that either the enticement happened in this District, or that the alleged victim traveled to this District for the purpose of engaging in the unlawful sexual activity.

  <u>Fourth</u>, that the Court define what a "reasonable opportunity to observe" is in the context of Counts Four and Nine.

  <u>Fifth</u>, that the Court eschew a <u>Pinkerton</u> charge – the very one that the Court defined as "cheating" during the charge conference.

  <u>Sixth</u>, that the Court instruct the jury there is no way to "recklessly disregard" entering a conspiracy.

  **I. Count 12**

  The Court's original proposal tracks the clear statutory language, Sand's model charge, and the parties' original requests. *See* Dkt. 219 at Request No. 10; Dkt. 222 at Request Nos. 34, 36.

The Honorable Valerie E. Caproni
March 3, 2026
Page 2 of 8

18 U.S.C. § 2251(a) is a specific intent statute. And the specific intent the government is required to prove is clearly described by the statute's plain language. Section 2251(a) prohibits a person from using, persuading, inducing, or enticing any minor to engage in sexually explicit conduct, "with the intent that such minor engage in any sexually explicit conduct *for the purpose of* producing any visual depiction of such conduct *or for the purpose* of transmitting a live visual depiction of such conduct." 18 U.S.C. § 2251(a) (emphasis added). The text is clear. The defendant must carry out the prohibited conduct—using, persuading, inducing, or enticing the minor to engage in sexually explicit conduct—"for the purpose of" achieving a specified prohibited object—here, producing a visual depiction of such conduct. No lesser intent suffices.

The choice of statutory language is significant. Section 2251 does not criminalize the mere act of producing a visual depiction of sexually explicit conduct. Rather, the statute "criminalizes the act of exploitation for photography." *United States v. Torres*, 894 F.3d 305, 325-26 (D.C. Cir. 2018) (Williams, J., concurring in part and dissenting in part); *see United States v. Broxmeyer*, 616 F.3d 120, 125 (2d Cir. 2010) ("These are words of causation; the statute punishes the cause when it brings about the effect."). "In the scheme of § 2251(a)," then, the "sexual contacts [must be] *aimed at generating* [the] photography." *Torres*, 894 F.3d at 326 (emphasis in original).

Courts and jurists have accordingly observed that Section 2251(a) "requires the government to prove that creating a visual depiction was 'the purpose' of an accused for engaging in sexual conduct, not merely 'a purpose' that may happen to arise at the same instant as the conduct." *United States v. McCauley*, 983 F.3d 690, 695 (4th Cir. 2020); *United States v. Palomino-Coronado*, 805 F.3d 127 (4th Cir. 2015) (holding that evidence must be sufficient to prove defendant engaged in sexual relations "to take a picture"). And "the statute's requirement that the government prove that the defendant carried on the activity with '*the* purpose of producing' a visual depiction means that the government must establish that purpose as the defendant's *dominant* purpose (singular)." *Torres*, 894 F.3d at 326 (Williams, J., concurring in part and dissenting in part) (emphasis in original).[1]

The simplest description of the purpose requirement is the description prescribed by Congress: the statutory text. That is the formulation in Sand's model charge, which, like the Court's initial draft charge, accurately captures the statute's requirements. *See* S3 Modern Federal Jury Instructions-Criminal 20.18. The Court should not now deviate.

The Court's March 2 draft charge water down the legal requirements below what the statute demands and will only confuse the jury and introduce error into the charge.

For starters, the current charge seeks to impermissibly broaden the statute's requirements. Congress's choice of language in Section 2251(a) was intentional, as evidenced by its choice of words in other similar statutes, where it explicitly adopted more expansive language. For example, the 2018 amendment to the child transportation statute, 18 U.S.C. § 2423(b), loosened that statute's

---

[1] The majority in *Torres* had "no cause to decide how prominent the purpose to create an image must be among a defendant's possible motives" and assumed on the government's concession for purposes of the appeal "that the government must show that the purpose of producing a visual image was a defendant's dominant motive for using, inducing, or coercing a minor's sexual conduct." 894 F.3d at 312.

2

The Honorable Valerie E. Caproni
March 3, 2026
Page 3 of 8

"for the purpose of" language through an amendment that criminalized travel carried out "with a motivating purpose of engaging in any illicit sexual conduct." That change was designed to "lower[] the government's burden of proof for conviction." *United States v. Flucas*, 22 F.4th 1149, 1177 (9th Cir. 2022) (Bybee, J., dissenting). That statute was amended again in 2023 to criminalize travel carried out "with intent to engage in any illicit sexual conduct." Section 2251(a)'s narrower purpose requirement persists. And while Congress has attempted to amend 18 U.S.C. 2251(a)'s "purpose" requirement to add the breadth it has introduced in other similar statutes, it has not so amended the statute. *See* H. Rep. 115-137 (describing the PROTECTING AGAINST CHILD EXPLOITATION ACT OF 2017). Against that backdrop, courts should be particularly hesitant to add additional unsanctioned gloss to the statute's text.

The Court's current draft charge, that "[p]roducing the visual depiction need not be the Defendant's only purpose for engaging in sexually explicit conduct with Ms. Rosen; it must, however, be one of the dominant motives," waters down these requirements and is also vague and confusing, employing broadening language without any sensible guardrails.

"[C]ourts turn handsprings trying to define 'dominant' as if it were a statutory term, *see, e.g.*, *United States v. Miller,* 148 F.3d 207, 212-13 (2d Cir.1998), which it is not." *United States v. McGuire*, 627 F.3d 622, 625 (7th Cir. 2010). In *Miller*, for example, the Second Circuit stated that "'dominant' simply means that these motivations predominate over other, less powerful motivations for conduct." *United States v. Miller*, 148 F.3d 207, 212 (2d Cir. 1998); *accord United States v. Jass*, 331 F. App'x 850, 853 (2d Cir. 2009). But the current draft charge does not even clearly encompass that description of "dominant."

Nor is it even accurate to suggest a defendant can have multiple "dominant" purposes. Indeed, in interpreting identical "for the purpose of" language in the Mann Act, the Supreme Court itself instructed that the phrase means the statute's proscribed object "must be ***the*** dominant motive," and that the proscribed activity "must be designed to bring about such result." *Mortensen v. United States*, 322 U.S. 369, 374, (1944); *accord United States v. McConney*, 329 F.2d 467, 469 (2d Cir. 1964) (citing *Mortensen*'s "the dominant motive" language). The Court has since reiterated that the phrase "for the purpose of" requires a singular "dominant purpose"—a "prime motivation." *Hawkins v. United States*, 358 U.S. 74, 79 (1958); *Cleveland v. United States*, 329 U.S. 14, 20 (1946) ("***the*** dominant motive") (emphasis added).

The draft charge would further confuse the jury because it ignores Section 2251(a)'s temporal requirement. Should the Court adopt any variation of the government's proposal—to be clear, it should not—it should further instruct that the defendant must formulate the required purpose to produce the visual depiction prior to engaging in the at-issue conduct. *See McCauley*, 983 F.3d at 696 (stating "§ 2251(a) does not criminalize a spontaneous decision to create a visual depiction," and "[a]dducing 'a purpose' arising only at the moment the depiction is created erroneously allows the fact of taking an explicit video of a minor to stand in for the motivation that animated the decision to do so."); *Broxmeyer*, 616 F.3d at 125 ("Sequence is therefore critical.").

Accordingly, we request the Court charge the jury using the following language:

The Honorable Valerie E. Caproni
March 3, 2026
Page 4 of 8

> The second element that the Government must prove is that the Defendant employed, used, persuaded, induced, enticed, or coerced Ms. Rosen to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. Producing the visual depiction need not be the Defendant's only purpose for engaging in sexually explicit conduct with Ms. Rosen; it must, however, be the dominant motive. Dominant means the most important; such that the motivation to produce the visual depiction predominates over other, less powerful motivations for the conduct. Producing the visual depiction cannot merely be incidental to the conduct.

In addition, the government took it upon itself to include that the alleged victim was "incapacitated" at the time of the charged conduct. Since the government has chosen to add that language, they must prove it, and the Court should define the term "incapacitated" in the same way that the Court has defined it in Count 11, Sexual Abuse of a Physically Incapacitated Person – that is: "meaning that she was physically incapable of declining to participate in, or to communicate an unwillingness to engage in, that sexual act." *See* Mar. 2, 2026 Draft Charge at 37:2-4.

Finally, it is possible that the Government included the allegation that the alleged victim was "incapacitated" because the sexual activity was otherwise legal in New York in 2009 (where the age of consent is 17). Accordingly, under *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), the Government should have to prove that Oren Alexander knew the age of the alleged victim. In *X-Citement Video*, a case brought pursuant to 18 U.S.C. § 2252, the Supreme Court held that "the term 'knowingly' in § 2252 extends both to the sexually explicit nature of the material and to the age of the performers." *Id.* at 472. So too here.

Criminal statutes are generally construed to include mens rea requirements. *See Staples v. United States*, 511 U.S. 600, 605–06 (1994); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437–38 (1978). But that presumption does not apply to sex crimes against minors, *see Morissette v. United States*, 342 U.S. 246, 251 n. 8 (1952), unless the perpetrator is engaged in "otherwise innocent conduct," *X–Citement Video, Inc.*, 513 U.S. at 72. Because the sexual interaction with Ms. Rosen was otherwise lawful under New York state law, the *mens rea* requirement should apply here, and we believe this is why the government chose to add that Mr. Rosen was "incapacitated" at the time. This indicates that the government knows something more is required. The "more" is a *mens rea* requirement that Oren Alexander knew Ms. Rosen was otherwise unable to consent.

## II. 1591 Statutory Terms

We request, respectfully, that the Court define all of the verbs in Section 1591. Currently, the Court's charge only defines "recruited, enticed, harbored, transported, provided, obtained, or maintained." *See* Mar. 2, 2026 Draft Charge at 21:7. We believe that the Court should define all of the verbs, including the following definitions for "advertise," "patronize," and "solicit":

> "'Advertise' means to make something publicly and generally known."

> "'Patronize' means to be a frequent or regular customer or client of."

4

"'Solicit' means to offer to engage in sex acts and especially sexual intercourse with someone in exchange for pay."

These additions come straight from the Merriam-Webster definitions of these words and should be non-controversial.

### III.     Venue Instructions

The current draft venue charge has no less than three formulations of what conduct must occur in the SDNY — "some act pertaining to an essential element"; "any part of an essential element"; and "some act in furtherance of an essential element". These formulations are each overbroad and water down the standard required by law.

"Venue is proper only where the acts constituting the offense – the crime's 'essential conduct elements' – took place." *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005); *accord United States v. Purcell*, 967 F.3d 159, 186 (2d Cir. 2020). This means "conduct constituting the" offense and/or its essential elements, *id.* at 188, not any acts pertaining to, part of, or in furtherance of an essential element. Moreover, venue is "not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense." *Id.* at 186. The language in the Court's current proposed charge would permit the jury to find venue based on facts that would not satisfy the governing legal tests.

We request the Court replace the overbroad formulations identified above with language such as "acts constituting an essential element" or "conduct constituting an essential element." And it should instruct that the conduct in question cannot merely be preparatory to the essential elements.

Venue is not satisfied merely by "some act involving" enticement or travel. Rather, *Purcell*, which the government cites for its proposed instruction, establishes a higher standard. Travel in the district, for example, must be "for the specific purpose of facilitating" the prohibited sexual conduct. *Purcell*, 967 F.3d at 188. Such travel cannot merely be "preparatory to the offense." *Id.* And *Purcell* used various formulations to describe these requirements, including that the victim "actually or necessarily set foot in the Southern District in connection with" the sexual activity, or that the "travel was related to [the] performance" of the sexual activity. *Id.* at 189. *Purcell* further observed that "merely board[ing] an airplane flight in the relevant jurisdiction, en route to a meeting" where the offense is committed, does not suffice, and that mere "passage by Purcell through the Southern District of New York on his way to Charlotte ... does not by itself establish a basis for venue." *Id.* at 190. Instead, the travel itself must be designed to facilitate the offense.

The same is true for enticement. The conduct taking place within the SDNY cannot merely be some act involving enticement, it must be the enticement itself or attempted enticement designed to further the unlawful sexual activity.

We propose the following modification:

5

> For the enticement counts, the government must prove by a preponderance of the evidence either that the defendant's enticement took place in the SDNY, or that the victim traveled in the SDNY for the specific purpose of engaging in the unlawful sexual activity.

### IV.    Reasonable Opportunity to Observe:  Sex Trafficking of a Minor

The defense has a minor request regarding "reasonable opportunity to observe" as a basis for knowing that the alleged victim was a minor.  The charge currently states that "[y]ou may find that the Defendant had a reasonable opportunity to observe the victim if the Defendant had face-to-face interaction with the victim."  *See* Mar. 2, 2026 Draft Charge at 27:18-20.

But without more, a "face-to-face interaction" could simply be an "opportunity to observe." Rather, there must be a "reasonable" opportunity to observe, and therefore the defense requests that the Court include the word "meaningful" before "face-to-face."  Otherwise, the word "reasonable" is written out of the charge.

This is consistent with the Second Circuit's decision in *United States v. Concepcion*, 139 F.4th 242 (2d Cir. 2025).  In *Concepcion*, the court further referenced its prior holding that the statute requires an "in person ... interaction[] enabl[ing one] to form h[is] own assessment of [a victim's] age," further confirming that the interaction must be a meaningful one.  *Id.* at 249.

It is also consistent with *United States v. Robinson*, 702 F.3d 22, 32 (2d Cir. 2012), which quoted *X-Citement Video*, 513 U.S. at 72 n. 2, in holding that "reasonable opportunity to observe" means situations where the "perpetrator confronts the underage victim personally."  *Id.* at 32.  To "confront" means more than to have a face-to-face interaction, it indicates a meaningful interaction.

### V.    Pinkerton

At the charge conference the Court stated, "And I kind of feel like it's cheating. That's really -- that's my view. It's cheating. If they're guilty of the substantive offense, they'll be convicted of the substantive offense. I'll give you aiding and abetting and conscious avoidance, but Pinkerton to me is cheating."  *See* Feb. 27, 2026 Tr. at 164:20-24.

The Court was right.  These are precisely the reasons why *Pinkerton* charges are disfavored by the Second Circuit and therefore are not included in the Second Circuit pattern jury instructions. Moreover, the key to a Pinkerton charge is that the conduct be "reasonably foreseeable" to the charged defendant – otherwise the defendant can be convicted precisely because of "guilt by association," which the Court, in the instruction just before the Pinkerton charge, says is improper.

As the Second Circuit has explained, "[t]he Pinkerton theory permits criminal liability of a conspirator 'for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes.'"  *United States v. Bala*, 236 F.3d 87, 95 (2d Cir. 2000) (quoting *United States v. Romero*, 897 F.2d 47, 51 (2d Cir. 1990)); *see also United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007) (holding that, with respect to *Pinkerton*,

The Honorable Valerie E. Caproni
March 3, 2026
Page 7 of 8

"'a defendant who does not directly commit a substantive offense may nevertheless be liable if the commission of the conspiracy was reasonably foreseeable to the defendant as a consequence of their agreement' ") (quoting *Cephas v. Nash*, 328 F.3d 98, 101 n. 3 (2d Cir. 2003)); accord *United States v. Wiley*, 846 F.2d 150 (2d Cir.1988). "Whether a particular substantive crime is foreseeable and in furtherance of the conspiracy is a factual question to be determined by the jury." *United States v. Bruno*, 873 F.2d 555, 560 (2d Cir.1989).

The charge is not appropriate at all, but the Court's current charge does not even define what reasonable foreseeability is.

### VI. Entering Into a Conspiracy Cannot be Based on Reckless Indifference

Conspiracy is a specific intent crime. Thus, "for proof of membership in a conspiracy, specific intent must be proven." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1196 (2d. Cir. 1989) ("intent comprises both knowledge and purpose," and knowing participation "requires specific intent"); *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008) (a defendant must "knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy").

Because membership in a conspiracy requires that a conspirator join the conspiracy intentionally with knowledge and willfulness, membership cannot be proved on a "recklessly disregarding" theory through reckless indifference. As the Second Circuit has held in analyzing the related concept of conscious avoidance, "How can a person consciously *avoid* participating in a conspiracy and also be a member of the conspiracy? The two notions are obviously mutually exclusive." *United States v. Mankani*, 738 F.2d 538, 547 n.1 (2d Cir. 1984). This is because "it is logically impossible to intend and agree to join a conspiracy if a defendant does not know of its existence." *United States v. Reyes,* 302 F.3d 48, 55 (2d Cir. 2002) (citing *Mankani*, 738 F.2d at 547 n.1); *see also United States v. Ferrarini*, 219 F.3d 145, 154 (2000) (it was an error to instruct the jury that it could find that defendant knew of the unlawful object of the conspiracy if it found the defendant "deliberately closed his eyes to what otherwise would have been obvious"); *United States v. Miller*, 800 F. App'x 39, 42 (2d Cir. 2020) (summary order) (approving jury instruction stating that "merely knowing or acquiescing without participation in the unlawful plan is not sufficient" to support a conviction (internal alterations omitted)).

We accordingly request that the Court instruct the jury that membership in a conspiracy requires intentional and knowing conduct and cannot be based on reckless indifference.

7

The Honorable Valerie E. Caproni
March 3, 2026
Page 8 of 8

      Thank you for your consideration.

                                              Respectfully,

                                              _____
                                              Marc Agnifilo
                                              Zach Intrater
                                              Teny Geragos

                                              *Attorneys for Oren Alexander*

                                              Howard Srebnick
                                              Jackie Perczek

                                              *Attorneys for Alon Alexander*

                                              Milton L. Williams
                                              Alexander V. Kahn
                                              Deanna Paul

                                              *Attorneys for Tal Alexander*

cc:       All counsel (via ECF)