**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 14, 2026

**BY ECF**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**Re: *United States v. Alon Alexander, Oren Alexander, and Tal Alexander,* S6 24 Cr. 676 (VEC)**

Dear Judge Caproni:

The Government respectfully submits this letter in response to arguments raised by the defendants in their sentencing submission concerning contested issues about which the parties exchanged exhibits. (*See* Dkt. 519).

*Victim-4 and Victim-5*

Victim-4 and Victim-5 were trafficked by the defendants to 88 Peconic in late June 2009 where they were drugged and assaulted by Alon and Oren Alexander. (*See* PSR ¶¶ 73-74 (Alon/Oren); Gov't Mem. at 26-27, 46-52). These victims have recounted being assaulted to law enforcement, and their accounts are mutually corroborating and corroborated by their consistency with the accounts of other victims who were trafficked by the defendants. The defendants attempt to counter the credible and harrowing accounts of these victims with four arguments; each fails.

*First*, the defendants argue that the victims' accounts are inconsistent, (Def. Mem. at 62), but none of these alleged inconsistencies undermine their descriptions of rape. The first supposed inconsistency is that Victim-4 remembers being raped by Alon in the hot tub, and Victim-5 remembers seeing Victim-4 being assaulted by both Alon and Oren in a bedroom where Victim-4 asked Victim-5 to help her. This fact does not help the defendants; it makes the matter much worse for them. Soon after Alon raped the drugged Victim-4 in the hot tub, Victim-4 blacked out and came to the next morning. (*See* 3514-009 at 3-4). Victim-4 does not know what happened to her in the interim, but Victim-5's recollection fills in the gaps: while Victim-4 was blacked out, she was assaulted again, this time by both Alon and Oren, who assaulted Victim-4 in the same way they did to Rhonda Stone on the Groove Cruise two-and-a-half years later. The defendants also argue that Victim-5 is not credible because she cannot describe precisely how she was assaulted. Victim-5 was drugged by the defendants, and she has been clear in interviews about the limits of her memory because of this. (3544-002 at 2; 3544-009 at 3). But Victim-5 knew she had been assaulted by at least one of the defendants, which was confirmed by her memories of Tal and

Mathew Lipman calling her a "slut" and suggesting she had slept with multiple people that night. (*See* 3544-009 at 3). Moreover, Victim-5's limited recollection shows she is not stretching to say more than she can, which only strengthens her credibility and is entirely inconsistent with the defendants' claim that she is making up a story for financial reasons. Instead, the defendants seem intent, as they did throughout the trial, on weaponizing their use of sedative drugs to attack the memories—or lack thereof—of their victims. Finally, the defendants claim that Victim-4 and Victim-5 were not drugged. However, their statements, which are corroborated by the pattern of other victims, describe symptoms consistent with being drugged and inconsistent with drinking only alcohol. (*See* 3514-001 at 2; 3514-009 at 3-4; 3544-002 at 1-2; 3544-009 at 2-3, 7).

*Second*, the defendants claim that Victim-4 and Victim-5's post-assault conduct is inconsistent with being assaulted. (Def. Mem. at 63). The defendants have raised this argument for every victim who has been brave enough to speak out. There is nothing new to this iteration of an argument that has been deployed and rejected by the jury repeatedly.

*Third*, the defendants claim to have an alibi for the assaults. (Def. Mem. at 63). The Government addressed the fatal problems with this argument in its submission. (Gov't Mem. at 48-50). The defendants claimed that a witness would say they were in Manhattan on June 26, 2009, but they have never called or provided notes of interviews with such a witness. All they have is a photo that was purportedly posted to Facebook on June 26, 2009, without any evidence that the photo was taken the same day it was posted. And Victim-5 has identified the woman in that photograph as being in the Hamptons on the day of the assault, further undercutting this supposed alibi based on a Facebook post. (*See* 3544-002 at 3; 3544-009 at 6).

*Fourth*, the defendants argue that Victim-4 and Victim-5 misidentified a photo of one of the individuals at the house that weekend, and therefore, their accounts of being raped are unreliable. (Def. Mem. at 64-65). The logical leap imbedded in this argument is vast and not dissimilar from the failed attack on Lindsey Acree for her misidentification of a non-defendant. (*See* Tr. 2328-29, 5010-11). The defendants' recycling of a failed cross-examination tactic is no reason to discount the trafficking of Victim-4 and Victim-5. *See United States v. Broxmeyer*, 699 F.3d 265, 280 (2d Cir. 2012) (finding no procedural error where district court considered untried assault accusations at sentencing when defendant had opportunity to cross-examine victims of other assaults at trial "to no apparent effect" and did not identify any additional lines of potential cross-examination as to the new victims). Moreover, while the defendants spill much ink about the picture the victims identified, both victims described someone named "Jordan" (which Victim-4 remembered as "Jordan B." (*see* 3514-010 at 1)) as a close friend of the defendants' who was at the house that weekend. And in fact, the defendants were close friends with a "Jordan B." (*See* Tr. 4681). Victim-4 and Victim-5's description of who was present is therefore consistent with other evidence—including multiple sexual videos saved to the hard drive found in Tal's apartment that depict the defendants' close friend "Jordan B," which the Government can provide on request.

*Finally*, the defendants also argue that Victim-5 (who they incorrectly describe as Victim-4) had a "financial motive to fabricate." (Def. Mem. at 65).[1] The defendants' shame and money attack on victims was tried and rejected. Beyond the general weakness of that attack, the

[1] Victim-4 has never sued and is not seeking restitution for the attack she suffered.

defendants face specific problems—as the defendants acknowledge, Victim-5 partially settled her civil claims prior to trial, lessening any financial incentive to lie, (Def. Mem. at 61 n.10), and Victim-5's account includes gaps in her memory that ultimately are not useful for her civil claim.

*Rachel Stevens (Victim-9)*

Oren sexually assaulted Rachel Stevens in Aspen in January 2017, after Oren and Alon drugged Stevens and her two high school friends, Maylen Gehret and Kayley Brown. (PSR ¶¶ 85-90 (Alon/Oren); Gov't Mem. at 22-24). Although Stevens did not testify at trial, multiple witnesses testified about her drugging and sexual assault. (*See* Gov't Mem. at 52-53). The defense encourages the Court to disregard Oren's assault of Stevens because she texted with Oren after the incident. (Def. Mem. at 66). But the defense argued multiple times at trial that victims' testimony—including Gehret and Brown's—should be set aside as a result of post-assault communications between the victims and the defendants, which the jury rejected. (*See* Tr. 1994-98, 2517-20, 4907; *see also* Tr. 5017-18 (same as to Maya Miller), 5140-41 (same as to Stone)); *Broxmeyer*, 699 F.3d 265 at 280. The Court should do the same here.

In arguing that the Court should set aside Stevens' assault, the defendants rely on her statements to law enforcement about her post-assault communications with Oren, despite not having provided these interview notes to the Court and Government on October 2, 2026, pursuant to the Court's order. (*See* Def. Mem. at 66 (citing 3552-003)). The Government did not initially provide Stevens' 3500 material to the Court because the trial record is sufficient to demonstrate that Oren drugged and sexually assaulted Stevens using force. However, if the Court looks at Stevens' 3500 material, as the defense encourages it to, it should look at Stevens' full account to the FBI and Government, which provides even more evidence of her assault.[2] [redacted] Accordingly, Stevens' statements to law enforcement, which are consistent with the testimony of Brown and Gehret and are in no way undermined by her communications with Oren, serve only to provide additional evidence of Oren's forcible assault of Stevens.

*Victim-29*

Tal Alexander sexually assaulted Victim-29 in August 2016 at 26 On The Bluff—the same mansion where he trafficked Maya Miller and Bela Koval. (PSR ¶¶ 58, 66, 106 (Tal); Gov't Mem. at 90-92, 110-11). Her account of the assault is described in the Government's submission and is

---

[2] In conjunction with this filing, the Government is providing the Court with Stevens' substantive 3500 material, which the Government respectfully requests be filed and maintained under seal.

corroborated by photos, text messages, a receipt, and by her mother, who remembers that Victim-29 called her the next day saying she had gotten in "a bad situation." (GX C-133, IT-103-TR, IT-104-TR, IT-106-08, IT-109-TR). This is more than sufficient to prove the assault. The defendants ask the Court to disregard Victim-29 by rehashing old arguments already rejected by the jury as to other victims, none of which provide a reason to discredit Victim-29's account.

*First*, the defendants argue that Victim-29 was not assaulted because she initially pursued, or was at least romantically interested in, Tal. (Def. Mem. at 66-67). They advanced the same argument at trial about Isa Brooks, Kelly Hudson and Ava Wells, (*see* Tr. 3078-79, 3324-31, 3336-38, 3347, 4002-05, 4913-15). But, as the jury determined with those victims—as is true in any ordinary social interaction—initial romantic interest does not create some form of "pre-consent" that negates a later assault.

*Second*, the defendants claim that Victim-29 could not have been sexually assaulted because Victim-29 could have opened the locked door from the inside. (Def. Mem. at 67). Not only have the defendants previously made this argument to the jury to no avail, (*see* Tr. 1961-62, 1970-71, 1983-84 (cross-examination of Gehret)), the suggestion that Victim-29 was not assaulted because she could have unlocked the door is preposterous. Tal locked the door, either to make sure no one came in or to make it more difficult for Victim-29 to leave, before placing himself "between [Victim-29] and the door," (3658-009 at 2), stalking her back and forth from the window to the corner of the bed, (3658-009 at 3), and ultimately "push[ing] her on the bed," (3658-001 at 2), and assaulting her.

*Third*, the defendants argue that Victim-29 is lying about the nature of her encounter with Tal because she did not disclose every detail of her assault in her initial interviews with law enforcement. (Def. Mem. at 67). In other words, the defense argues that because Victim-29 described that Tal held her down and masturbated onto her face and chest when she refused to have sex with him in an initial phone call with an FBI agent, (*see* 3658-001 at 2), that it could not also be true, as she later described in a face-to-face interview, that Tal manipulated her hands into a position that allowed him to thrust himself between her breasts, and that she had to "keep her hand there for a bit to keep him from getting more violent," (3658-016 at 3). There is no inconsistency between these two statements. However, to the extent the defense has identified one, that Victim-29 disclosed that she did not move her hands away immediately to prevent further violence only when she was able to meet with the Government in person is understandable because, as Dr. Rocchio explained, far from being an indication that a victim is lying, it is common for sexual assault victims to "hold back those details that . . . they're most ashamed of." (Tr. 2792).

*Finally*, the defendants fault Victim-29 for not sharing details of her assault with friends earlier. (Def. Mem. at 67). Victim-29's account is heavily corroborated by other evidence, and this argument, which the defendants levied unsuccessfully with other victims, including Stone, Hudson, and Acree (*see* Tr.1450-51, 2309-14, 4040, 4966), does not undercut her account.

<u>*Amber Davis (Victim-30)*</u>

In May 2017, Oren admitted in text messages that he assaulted Amber Davis by penetrating her with his fingers and penis while she slept. (Gov't Mem. at 24; PSR ¶ 93 (Oren)). The defense asks the Court to ignore this assault because the Government did not interview Davis. (Def. Mem.

at 68). But a victim's testimony is not required for the Court to find a victim was assaulted at sentencing. (*See* Gov. Mem. at 46-47, 50-51 (collecting cases)). And here, the Court already has all the evidence it needs: Oren's own admission of guilt, texted to Davis *mere hours* after the assault. These texts are a direct, unfiltered account of Oren's conduct and state of mind on the day of the assault. The defense's attempt to divert attention away from the assault by focusing on Davis's post-assault conduct, including her texts with Oren—yet another argument that the jury rejected when offered against other victims—does not change that.

*Use of a Computer Enhancement for Isa Brooks (Minor Victim-3)*

As described in the Government's submission, the § 2A3.1(b)(6)(B) enhancement is appropriate because Lipman, a party promoter who was renting 88 Peconic with the defendants and working with them to invite women to the house, invited Brooks via text message for Memorial Day weekend and facilitated her travel. (Gov't Mem. at 76-81). The defendants object that they did not directly communicate with Brooks and that Lipman claimed the "Alexanders did not pay him, [and his] job was to promote the clubs not the brothers." (Def. Mem. at 37-38 (citing 3569-002 at 5)).[3] But the enhancement does not require that the defendants themselves use the electronic device to communicate with the minor. (*See* Gov't Mem. at 78-79). And even accepting Lipman's statements as true, the fact that the defendants did not pay him does not mean he was not working with them to bring women and girls to 88 Peconic. (*See* GX 1008). In addition, it is unsurprising that Lipman, who invited a sixteen-year-old girl to the Hamptons for Memorial Day weekend [redacted] prior to her being drugged and raped by the defendants, would attempt to distance himself in a proffer from the defendants, who at the time were charged with serious sex trafficking offenses alleged to have occurred that very weekend.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: /s
Kaiya Arroyo, Elizabeth A. Espinosa
Andrew Jones, Madison Reddick Smyser
Assistant United States Attorneys
(212) 637-2226/-2216/-2249/-2381

---

[3] Defendants made additional, never-before-raised objections to the enhancement in their October 13 filing, which the Court had ordered be limited to the defendants' objections to victims speaking at sentencing. (Dkt. 511). Although the defense claims these late arguments are based on the Government's disclosure, at the defense's request, of a December 19, 2025 letter to the Court, which the defense received three days before filing its sentencing submission, that is a red herring. The defendants' new substantive arguments about the computer enhancement are based on the trial record, and the defendants provide no legitimate reason as to why these arguments could not have been made in their submission. (*See* Def. Oct. 13 Ltr. at 5-8). To the extent necessary, the Government intends to address these improperly raised arguments in its anticipated October 16 reply to the defendants' objections. (*See* Dkt. 511).